**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Bennett Sapia, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Board of Education of the City of Chicago; | ) | Judge |
| a body politic and corporate, | ) | Magistrate |
| | ) | |
| Defendant | ) | JURY DEMANDED |

<u>**COMPLAINT**</u>

**Introduction**

1.      In violation of the Due Process Clause of the Fourteenth Amendment of the

United States Constitution, defendant Board of Education of the City of Chicago and its officers

("BOE" or "defendant"), unlawfully dismissed Bennett Sapia ("Mr. Sapia"), a tenured teacher,

for cause without offering him notice and an opportunity for a hearing to challenge the basis of

his termination.

2.      Defendant's actions deprived Mr. Sapia of his property rights in continued

employment and in doing so, circumvented mandatory Illinois process and laws guaranteeing

tenured teachers a right to notice and a dismissal hearing and dismissal only for cause. See, 105

ILCS 5/34-85.

3.      Since at least 2010, Defendant has perpetrated a policy of dismissals "for cause"

under the disguise of "layoffs" or "reductions in force", including but not limited to claimed

economic exigencies and drops in student enrollment.  While publicly stating that positions have

been closed for budgetary and demographic reasons, Defendants have utilized a "layoff policy"

based upon alleged shortcomings and deficiencies in a teacher's performance when determining the particular teachers to be discharged, effectively resulting in a "for cause" dismissal.

4.      Mr. Sapia (and other similarly situated teachers who were terminated pursuant to defendant's disguised for cause "layoff policy,") has a permanent black mark on his record. Defendant's policy has effectively ended his career as a tenured teacher while at the same time, denying him the statutorily mandated opportunity to remediate his performance or the chance to challenge Defendant's accusations regarding his performance.

5.      Under 42 U.S.C. § 1983, Plaintiff Sapia brings this action to assert his constitutional rights to Due Process.   Mr. Sapia has been stripped of his opportunity to correct any alleged performance deficiencies, was denied notice of potential termination and pre or post-termination hearings, or any other procedural due process protections required by the Fourteenth Amendment.  Accordingly, Plaintiff seeks relief from the Court to make him whole for his loss in a property interest granted by the Illinois School Code, and a determination as to whether he is entitled to return to his position with an opportunity to complete the remediation process.

6.      Finally, in addition to make whole relief, Plaintiff also seeks a declaratory judgment finding Defendant's "layoff policy" in violation of the Due Process clause of the 14th Amendment of the United States Constitution, both on its face and as applied to Mr. Sapia.

**Parties**

7.      Mr. Sapia is an Illinois Resident.   He has a Masters of Arts in Education degree from St. Xavier University and Bachelor of Fine Arts degrees from the University of Illinois at Chicago.  Mr. Sapia has been an art teacher since 1992.  He was employed as an art teacher at John F. Kennedy High School by Defendant from September 1996 through October 10, 2012, when he was terminated from his position.

2

8.     At all relevant times, Mr. Sapia was a member of the Chicago Teachers Union ("CTU").

9.     Defendant BOE is an educational employer within the meaning of Section 2(a) of the Illinois Educational Labor Relations Act, 115 ILCS 5/2(a).  BOE is the entity charged by law with maintaining a free school system within the city of Chicago.

**Jurisdiction and Venue**

10.     This Court has federal question jurisdiction over Count I under, 28 U.S.C. § 1331, as well as under 28 U.S.C. § 1343(a)(3)-(4) for claims arising under 42 U.S.C. § 1983, the Civil Rights Act of 1871, and under 28 U.S.C. § 2201, the Declaratory Judgment Act.

11.     This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a).  Count II arises under the laws of the State of Illinois and claims that the defendant Board has unlawfully deprived plaintiff of his tenure rights guaranteed under 105 ILCS 5/34-84.

12.     Venue is proper under 28 U.S.C. § 1391(b) as all defendants reside in this judicial district and a substantial part of the events involved occurred within this judicial district.

**Facts**

A.     *Plaintiff's Termination*

13.     Mr. Sapia began teaching Art at Kennedy High School in September 1996.

14.     Pursuant to Collective Bargaining Agreements (CBA) in effect from 1996 - 2010, between Defendant BOE and the CTU, tenured teachers are formally evaluated every two years.

15.     Between 1998 and 2010, plaintiff's ratings were all excellent or superior, except for one rating of "satisfactory" in 2002.

16.     Beginning in October 2011, and continuing through October 2012, Mr. Sapia was outspoken about problems with the working conditions at Kennedy High School and advocated publically for the termination of the Principal, George Szkapiak.

17.     On or about February 1, 2012, Mr. Szkapiak observed Mr. Sapia's classroom for the purpose of rating his teaching performance. Mr. Szkapiak held a post-observation conference with Mr. Sapia and alleged the following observations of his performance:

    a.  Mr. Sapia did not provide lesson plans to the students
    b.  Mr. Sapia did not establish the learning objectives during his lesson
    c.  Mr. Sapia's lesson was at an inappropriate grade level for high school students
    d.  Mr. Sapia did not enforce school rules requiring students to wear I.D. badges
    e.  Mr. Sapia responded to a student's request for supplies in a "monotone voice."
    f.  Mr. Sapia lacked enthusiasm.

18.     On or about March 15, 2012, Mr. Szkapiak issued Mr. Sapia an E-1 notice, "Report of Lowering Teacher's Efficiency Rating."  See Exhibit A, attached.   The notice stated that Mr. Sapia's rating would be lowered from a "Superior" to "Unsatisfactory."  Defendant's performance-based justification for Mr. Sapia's lowered rating stated: "Currently Mr. Sapia has demonstrated poor instructional efficacy, poor lesson planning and low expectations for his students.  He does not establish relevance for students and shows no enthusiasm for teaching. Mr. Sapia also has poor classroom management."

19.     The E-1 notice also provided several performance-based suggestions on how Mr. Sapia could improve his ratings, set forth as follows: "Mr. Sapia must plan more effectively for instruction, raise his level of expectations for student and increase his ability to manage a classroom.  Mr. Sapia needs to deliver lessons at the appropriate level of rigor for students in his classes.  Ms. Sapia also needs to show students how exciting Art can be through his actions in his classroom."  Exhibit A.

20.     On or about April 17, 2012, Mr. Szkapiak held a post-observation conference

with Mr. Sapia and made the following observations of his performance:

   a.   Mr. Sapia did not provide lesson plans to students
   b.   Mr. Sapia did not showcase examples of the assigned project to students
   c.   Mr. Sapia did not state a valid objective for the lesson to his students
   d.   Mr. Sapia's lesson was not at the appropriate grade level for the students because
        it did not create a sense of urgency in the students
   e.   Mr. Sapia did not provide students with a grading rubric for the lesson
   f.   Mr. Sapia was not able to control the volume of the students in his classroom
   g.   Mr. Sapia was not able to control the topic of conversation amongst the students
        for the entire class period
   h.   Mr. Sapia was not able to control the pace at which students finished the lesson
   i.   Mr. Sapia did not adequately compliment students or sufficiently acknowledge
        exemplary work.

21.      On or about June, 2012, Mr. Skzapiak formally issued Mr. Sapia an

"Unsatisfactory" rating for the 2012 school year, the first such rating in Mr. Sapia's 14+ year

career as a teacher.

22.     On or about October 10, 2012, Defendant issued Mr. Sapia a layoff notice.

Exhibit B.

23.     On or about October 10, 2012, Defendant issued Mr. Sapia a letter stating that the

reason he was terminated was "low enrollment."

24.     Mr. Sapia had 35 students in each of his classes at the time he received the layoff

notice.

25.     On or about November 19, 2012, Defendant published its database of open

positions, including a job posting for an art position at Kennedy High School, and subsequently

hired an art teacher to replace Mr. Sapia.

26.     On or about June 5, 2012, Mr. Sapia filed a union grievance against defendant,

alleging violations of the effective CBA as a result of his selection for layoff, despite less senior

teachers being retained.

5

27.     The effective CBA between Defendant Board of Education and the Chicago Teachers Union states that layoffs are to occur in order of seniority.

28.     On or about February 25, 2013, Defendant denied Mr. Sapia's grievance, stating "In determining the order of layoffs, the CEO or the CEO's designee shall take performance ratings into account."

29.     Since his termination from Kennedy High School, and despite having submitted applications for numerous open positions, Mr. Sapia has not been appointed to a permanent teaching position within CPS.

30.     Likewise, since his termination from Kennedy High School, and despite having submitted applications to numerous open positions, Mr. Sapia has not been appointed to an open teacher position in any other school district.

B.      *Basis of Tenure Status*

        *1. Statutory*

31.     Teachers are initially employed by the City of Chicago on a probationary basis. These "probationary appointed teachers" (PATs) are not guaranteed employment from year-to-year, regardless of their performance.  105 ILCS 5/34-84.

32.     Teachers employed on a probationary basis may have their contracts non-renewed at the end of any of their first three years of service, resulting in the teacher being automatically dismissed from service.

33.     Once a teacher has completed the three year probationary period s/he is tenured and "appointments of the teacher shall become permanent, subject to removal for cause in the manner provided by Section 34-85" of the school code."  105 ILCS 5/34-84.

34.     A tenured teacher employed by Defendants may *not* "be removed except for cause."  105 ILCS 5/34-85.

2.      *Collective Bargaining Agreement*

35.     The controlling CBA, between the parties expressly recognizes "tenured teacher[s]" as "full-time certified teacher[s] who ha[ve] successfully completed the probationary period proscribed in 105 ILCS 5/34-84 or Art. 23-2.1" of the CBA. Art. 23-2.1.

C.      *Rights Afforded to tenured teachers in 2010*

1.      *Cannot be terminated unless "for cause"*

a.      *Ratings, E-3 Process and Remediation*

36.     The "for cause" dismissal of tenure teacher includes dismissal of the teacher on the basis of inadequate performance.

37.     In order to dismiss a tenured teacher on the basis of inadequate performance Illinois School Code mandates that the teacher first be rated as "unsatisfactory."  105 ILCS 5/24A-5(b)(i).

38.     The controlling CBA between the CTU and Defendants establishes that a tenured teacher cannot be rated as "unsatisfactory" until he or she has received two formal observations. See CBA, Article 39, attached as Exhibit C. These observations must take place on two different days and be conducted by the Principal of the school at which the teacher is employed.

39.     The CBA requires that after a principal deems a tenured teacher's performance unsatisfactory he must provide him or her with a "Form E-3, Evaluation of Unsatisfactory Service of a Tenured Teacher," in a conference taking place in a location ensuring privacy.  The Form E-3 must state the reasons for the "unsatisfactory" rating and advise the tenured teacher of their obligation to participate in a remediation plan.  See Exhibit C, Article 39.

7

40.    The remediation plan must be designed to correct the deficiencies cited in the Form E-3 notification, so long as the deficiencies are remediable.

41.    Pursuant to the Illinois School Code, Defendants are obligated to develop and commence the remediation plan within 30 school days after the teacher receives the "unsatisfactory" rating.  105 ILCS 5/24A-5(b)(i)

42.    At CPS and in the City of Chicago, the remediation plan "shall provide for 90 school days of remediation within the classroom, unless an applicable CBA provides for a shorter duration."  105 ILCS 5/24A-5(b)(i).

43.    In addition to the 30 day requirement enumerated in the school code, the CBA mandates that within three days after the issuance of a Form E-3, the principal shall select a "qualified consulting teacher" to assist the teacher during the remediation period.  A qualified teacher is one who has received a rating of "superior" or "excellent" on his or her most recent evaluation, has a minimum of five years' experience in teacher and has knowledge relevant to the assignment of the tenured teacher under remediation.  See Exhibit C, Article 39 and 105 ILCS 5/24A-5(j).

44.    The CBA requires that within seven school days after the selection of the consulting teacher, the principal meet with the tenured teacher and the consulting teacher to commence the development of the remediation plan.

45.    During the remediation period, the principal must evaluate and rate the tenured teacher under remediation every thirty days.  Exhibit C, Article 39-5.3.  The evaluations and ratings must be conferred in a place ensuring by the principal to the teacher in remediation. Exhibit C, Article 39-5.4.  The evaluations and ratings must be conferred within 10 school days after the date of evaluation.  105 ILCS 5/24A-5(k).  If continued remediation is warranted post-

evaluation, the principal and consulting teacher shall confer in order to continue to provide appropriate assistance to the teacher in remediation.  Exhibit C, Article 39-5.4.

46.     A mid-point and final evaluation must be conducted by the principal, or other evaluator, during and at the end of the remediation period.  Each evaluation shall assess the teacher's performance during the time period since the prior evaluation; provided that the last evaluation shall also include an overall evaluation of the teacher's performance during the remediation period.  105 ILCS 5/24A-5(k).

47.     If after the completion of the remediation period the tenured teacher achieves a final rating of "satisfactory," "excellent" or "superior," he or she will be deemed to have successfully completed remediation.  Exhibit C, Article 39-5.4.

48.     A teacher who successfully completes remediation is reinstated to the evaluation schedule set forth in Defendant's evaluation for tenured teachers who have achieved a "satisfactory" rating or better.  105 ILCS 5/24A-5(l).  The controlling CBA requires that immediately after successful completion of the remediation period a teacher is evaluated monthly for six months and quarterly for the proceeding six months.  Thereafter the tenured teacher is reinstated to a schedule of bi-annual evaluations.  Exhibit C, Article 39-5.5.

49.     If the tenured teacher in remediation receives a "needs improvement" or "unsatisfactory" on their final evaluation at the conclusion of the remediation period he or she is deemed to have failed remediation and is subject to dismissal in accordance with §34-85 of the school code. Exhibit C, Article 39-5.6; 105 ILCS 5/24A-5(m).

        b.     *Required Termination Procedures – Statutory and Contractual*

50.     In 2010, state law prohibited defendants from terminating a tenured teacher due to "unsatisfactory" performance unless they initiated dismissal proceedings.  105 ILCS 5/34-85(a).

51.     To initiate dismissal proceedings against a teacher Defendant "must first approve written charges and specifications against the teacher" within 45 calendar days or provide a written reason for not approving the charges.  105 ILCS 5/34-85(a)(1).

52.     Written notice of the charges and specifications alleged against the tenured teacher must be served upon the teacher within 10 business days of the approval of the charges. 105 ILCS 5/34-85(a)(1).

53.     A hearing upon the charges is required if the teacher within 17 days of receiving notice requests in writing of Defendants that a hearing be scheduled. 105 ILCS 5/34-85(a)(2).

54.     Only a qualified hearing officer may conduct hearings on the charges and specifications.  The qualified hearing officer must be accredited by a national arbitration organization and have had a minimum of five years of experience as an arbitrator in cases involving labor and employment relations matters between employers and employees or their exclusive bargaining representatives.  105 ILCS 5/34-85(a)(3).

55.     The hearing officer shall commence the hearing within 75 calendar days and conclude the hearing within 120 days after being selected by the parties.  105 ILCS 5/34-85(a)(5).

56.     The hearing officer shall within 30 calendar days from the conclusion of the hearing report findings of fact and recommendations to Defendants and the teacher as to whether the teacher shall be dismissed.  105 ILCS 5/34-85(a)(6)

57.     The Board shall within 45 calendar days of the hearing officer's findings of fact and recommendation, determine whether to accept or reject the hearing officer's findings and recommendation.  105 ILCS 5/34-85(a)(7).

58.     The teacher may seek judicial review of Defendant's decision in accordance with the Administrative Review Law.  105 ILCS 5/34-85(a)(8)

59.     The remediation, notice and dismissal hearing procedures provide the tenured teacher with sufficient rights to conform to the Due Process Clause of the 14th Amendment.

60.     These extensive and substantive rights are intended to afford tenured teachers who have been accused of inadequate performance and opportunity to dispel their alleged deficiencies, be notified of the charges against them and present witnesses and testimony in a legitimate effort to challenge the allegations.  In essence, a tenured teacher accused of poor performance and afforded these rights is granted Due Process.

2.      *Authority for Layoffs- Statutory and Contract*

61.     The Illinois School Code grants defendant the authority to conduct layoffs and "reductions in force" but does not define either term.  105 ILCS 5/34-18(31).

62.     Article 42-2 of the CBA between the parties states that "the reassignment and layoff of appointed tenured teachers due to changes in staffing needs is governed by the policy set forth in Appendix H" of the CBA.

63.     Appendix H of the controlling CBA states that "[w]henever an attendance center or a program is closed, there is a drop in enrollment, the educational focus of the attendance center is changed such that the available teaching positions cannot accommodate some or all current regularly certified and appointed teaching staff or when an attendance center is subject to actions taken pursuant to sections 34-8.3 or 34-8.4 of the Illinois School Code, tenured teachers will be reassigned or laid-off in accordance with this policy."  Exhibit D, Appendix H, Section 1.

64.     Appendix H of the controlling CBA further states that "[i]f changes in an attendance center or program require removal of some but not all tenured teachers, tenured

11

teachers with appropriate certifications will be selected for retention based on seniority. Provisionals, day-to-day substitutes, Cadre Substitutes, temporarily assigned teachers (TATs) and probationary teachers within the attendance center or program will be removed before any regularly certified and appointed tenured teacher with the appropriate certification is removed, in that order." Exhibit D, Appendix H, Section 2(A).

65.     Appendix H does not base the order of conducting layoffs on the proven performance or alleged deficiencies of tenured teachers.

C.     *Layoff Policy*

66.     Following the agreement of the parties to the terms of the controlling CBA in 2007, the Board was required to approve an amended leave policy on the reassignment and layoff of tenured teachers in compliance with Appendix H of the Controlling CBA. Exhibit D, Appendix H, Section 12.

67.     The Board approved Policy 504.2 on December 19, 2007, entitled "Reassignment and layoff of regularly certified and appointed tenured teachers."

68.     The 2007 layoff policy states that "if changes in an attendance center or program require removal of some but not all teachers, teachers with appropriate certifications will be selected for retention based on system-wide seniority." Teachers were selected for layoff in the following order: Provisionals, Day-to-Day substitutes, Cadre Substitutes, Temporarily Assigned Teachers, Probationary Teachers and lastly tenured teachers. Bd. Policy 504.2, Section 2.

1.     *2007 Layoff Policy*

69.     Defendant's 2007 layoff policy states in its description that it "reflects the agreement reached with the Chicago Teachers Union."

70.     The 2007 layoff policy makes no reference to proven performance or alleged deficiencies as criteria for layoff let alone the sole basis for layoff.

2.      *2010 Board Resolution Creating New Layoff Policy*

71.     In 2010 Defendants drastically deviated from the 2007 layoff policy and the terms of the CBA in conducting layoffs and reductions-in-force by basing terminations on alleged performance deficiencies of teachers.

72.     On June 23, 2010, Defendants passed a resolution ordering the CEO of Chicago Public Schools to identify schools at which layoffs and reductions must occur then  conduct layoffs and reductions in force by "first laying off appointed teachers who either (a) are under remediation under 105 ILCS 5/24A-5 or Article 39 of the Chicago Teachers Union collective bargaining agreement or (b) any appointed teacher whose last performance rating was "unsatisfactory," does not meet expectations or an equivalent rating indicating deficient performance."  Board Resolution 10-0623-RS32.  Exhibit E.

73.     The 2010 Board Resolution did not provide tenured teachers laid-off while on remediation an opportunity to complete the 90 day remediation period.

74.     The 2010 Board Resolution did not provide tenured teachers laid-off while on remediation the opportunity to receive a final evaluation.

75.     The 2010 Board Resolution did not provide that tenured teachers laid-off while on remediation, or otherwise deemed unsatisfactory, receive notice that their terminations were based on alleged deficiencies in their performance.

76.     The 2010 Board Resolution did not provide that tenured teachers laid-off while on remediation, or otherwise deemed unsatisfactory, have the opportunity to challenge the alleged deficiencies forming the basis for their termination in a hearing or any other forum.

77.     The 2010 Board Resolution did not provide tenured teachers laid-off while on remediation, or otherwise deemed unsatisfactory, the opportunity to participate in dismissal hearing pursuant to Article 39-5.6 of the controlling CBA or sections 24A-5 and 34-85 of the Illinois School Code.

3.      *2011 Layoff Policy*

78.     In 2011 Defendants again sought to layoff thousands of teachers.  In order to do so, it codified the terms of the 2010 Bd. Resolution in an official Board policy.   The Board approved Policy 504.2A on June 22, 2011, entitled "Approve a Restated Policy on the Layoff of Teachers for Reasons Other Than ThoseWithin the Scope of Board Policy 504.2."  Exhibit F.

79.     Board Policy 504.2A replaces Policy 504.2 as the controlling layoff policy for the layoffs and reductions-in-force conducted in 2011 and 2012.

80.     Board Policy 504.2A states that when selecting teachers for layoff the CEO of Chicago Public Schools shall first "determine the number and type of positions to be eliminated under the policy in each unit."  A unit is defined by the policy as either a school or "non-school budgetary or operational unit (e.g. Area Office, a city-wide program, or a Central Office department)."

81.     Pursuant to Board Policy 504.2A, once a unit is selected from which teachers will be selected for layoff or reductions in force, the individual teachers are selected for termination in the following order: (A) teachers alleged to be lacking proper certifications or credentials for the position, (B) teachers rated "unsatisfactory," "does not meet expectations" or an "equivalent rating indicating deficient performance" and those under remediation pursuant to Section 24A-5 of the School Code of Art. 39 of the controlling CBA, (C) Retired Teachers, (D) Temporarily Assigned Teachers, (E) PATs, (F) Appointed Tenured Teachers.  See Exhibit F.

82.     The 2011 layoff policy did not provide tenured teachers laid-off while on remediation an opportunity to complete the 90 day remediation period.

83.     The 2011 layoff policy did not provide tenured teachers laid-off while on remediation the opportunity to receive a final evaluation.

84.     The 2011 layoff policy did not provide that tenured teachers laid-off while on remediation, or otherwise deemed unsatisfactory, receive notice that their terminations were based on alleged deficiencies in their performance.

85.     The 2011 layoff policy did not provide that tenured teachers laid-off while on remediation, or otherwise deemed unsatisfactory, have the opportunity to challenge the alleged deficiencies forming the basis for their termination in a hearing or any other forum.

86.     The 2011 layoff policy did not provide tenured teachers laid-off while on remediation, or otherwise deemed unsatisfactory, the opportunity to participate in dismissal hearing pursuant to Article 39-5.6 of the controlling CBA or sections 24A-5 and 34-85 of the Illinois School Code.

G.      *Use of "layoff policy" as disguised for-cause termination without the corresponding Due Process rights*

87.     Defendant subjected Mr. Sapia to a for-cause termination disguised as layoff, with the purpose and/or effect of circumventing constitutionally-mandated due process procedures.

88.     The 2010 Board Resolution and the 2011 layoff policy do more than merely require the Board to consider performance when making termination decisions.  Both expressly require Defendants to make termination decisions on the basis of performance, without providing notice and due process to the affected employees.

89.     Pursuant to defendant's 2010 Board Resolution and 2011 layoff policy Mr. Sapia, a tenured teacher then with 10 years of service who was rated superior or excellent for all but one

15

of those years, must be selected for layoff rather than a first year probationary teacher who has received a "needs improvement" rating.

90.     Mr. Sapia was qualified to teach High School Art, holding certifications and endorsements from the Illinois State Board of Education.

91.     Mr. Sapia did not have an opportunity to complete the statutorily, and contractually, mandated remediation period prior to selection for termination.

92.     Mr. Sapia was not notified that performance criteria in any way formed the basis for his termination.

93.     Mr. Sapia was not afforded the opportunity to participate in a dismissal hearing.

94.     He was not afforded any rights to challenge the termination pursuant to the Illinois Administrative Review law.

95.     Mr. Sapia was not given the opportunity to participate in either a pre- or post-deprivation hearing to challenge his termination on the basis of performance.

96.     The 2010 Board Resolution and 2011 Layoff policy allow the Board to terminate teachers with a guaranteed right to contractual continued service, like Mr. Sapia, based solely on their performance without providing anything resembling notice or a due process hearing, despite specific statutory and contractual language mandating otherwise.

H.     *Effects of "unsatisfactory" rating after "layoff" for individual teachers*

97.      An E-3 Notification of Unsatisfactory Performance issued to a teacher is placed in the teacher's personnel file, which is accessible to administrators within the Chicago Public School System.

98.     Teachers who have been laid off as a result of being issued an E-3 notification pursuant to either the 2010 Board Resolution or the 2011 Layoff Policy may reapply for positions with CPS or for positions outside of CPS.

99.     When a teacher who has been laid off as a result of being issued an E-3 notification pursuant to either the 2010 Board Resolution or the 2011 Layoff Policy seeks re-employment within CPS, the administrator from whom the teacher is seeking employment will be granted access to the teacher's previous ratings, including the E-3 notice signifying an Unsatisfactory rating as the most recent performance rating for the teacher.

100.    When a teacher who has been laid off as a result of being issues an E-3 notification pursuant to either the 2010 Board Resolution of the 2011 Layoff Policy seeks employment in school district outside of CPS, the district from whom the teacher is seeking employment will be provided with the teacher's previous ratings by CPS, including the E-3 notice signifying an Unsatisfactory rating as the most recent performance rating for the teacher.

101.    The presence of an unsatisfactory rating as the most recent performance rating on a teacher's record, alone, makes it more difficult for the teacher to secure future employment, both within CPS and in any of other school district.

102.    Defendant's publication of the 2010 Board Resolution and 2011 Layoff Policy puts all future employers on notice that teachers laid off from CPS since 2010 whose most recent rating was an Unsatisfactory were terminated as a direct result of their performance.

103.    Teachers who have been laid off as a result of being issued an E-3 notification pursuant to the 2010 Board Resolution and 2011 Layoff Policy and are denied future employment as a result of the unsatisfactory rating are in substantially more disastrous position than teachers denied future employment after being expressly terminated for cause on the basis

of their performance, as the laid off teachers are not afforded the right to complete the

remediation process or challenge the alleged poor performance in a pre- or post- termination

hearing.

I.      *Good teachers*

104.    Tenured teachers issued E-3 Notices of Unsatisfactory Performance are not or

have not been proven to be poor performing teachers.

105.    With knowledge of the layoff policy prioritizing the termination of tenured

teachers who have been issued E-3 notices, or given Unsatisfactory ratings, principals utilize the

E-3 process as a means to retaliate against Union adherents or teachers with whom the principal

simply disagrees, resulting in teachers being terminated on the purported basis of performance

without access to any due process protections, and/or for actual reasons wholly unrelated to

performance.

## Count I
## (Section 1983: Deprivation of Due Process Pre-Termination Rights of Teachers)

106.    Plaintiff incorporates paragraphs 1 through 105  herein.

107.    Mr. Sapia was employed in contractual continued service pursuant to the Illinois

School Code and designated a tenured teacher by the CBA.

108.    He was terminated without having an opportunity to complete the statutorily

mandated remediation period.

109.    He was terminated without being notified, either orally or in writing, of the

termination on the basis of his performance.

110. He was terminated without being afforded an opportunity to participate in a pre-termination hearing of any kind to challenge the allegations of poor performance underlying the termination.

111. Mr. Sapia was not offered any post-termination hearing to determine whether the termination under the auspices of a layoff was permissible or whether the layoff was being used to mask an individualized, merit-based action.

112. Without providing Mr. Sapia any opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment and in violation of 42 U.S.C. §1983, the Board officers who are the individual defendants have caused a disguised for-cause dismissal without conducting any formal hearings as required by State Law and the CBA.

113. By such acts denying any notice and opportunity to be heard as to the job performance, shortcomings and deficiencies, of various CTU members to be terminated and by other acts denying due process in the deprivation of property rights created pursuant to contract and the Illinois School Code, and in violation of 42 U.S.C. §1983, the same Board officers have denied and will continue to deny the constitutional rights of various CTU members under the Due Process Clause of the Fourteenth Amendment.

**WHEREFORE**, plaintiff Sapia prays this Court to:

A. Declare that in violation of 42 U.S.C. §1983 and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, the individual Board defendants have denied Mr. Sapia his constitutional right to notice and a pre-termination hearing to challenge the underlying allegation of poor performance.
B. Reinstate Mr. Sapia to his position or one substantially similar.
C. Order the Board to compensate Mr. Sapia for any backpay or lost benefits.
D. Grant Plaintiff's counsel their legal fees and costs under 42 U.S.C. §1988 and such other relief as may be required.

## Count II
### (Section 1983: Deprivation of Due Process Post-Termination Rights of Teachers)

114.    Plaintiff incorporates paragraphs 1 through 113 herein.

115.    Mr. Sapia was employed in contractual continued service pursuant to the Illinois School Code and designated a tenured teacher by the CBA.

116.    He was terminated without having an opportunity to complete the statutorily mandated remediation period.

117.    He was terminated without being notified, either orally or in writing, of the termination on the basis of his performance.

118.    He was terminated without being afforded an opportunity to participate in a post-termination hearing of any kind to challenge the allegations of poor performance underlying the termination.

119.    Without providing Mr. Sapia with any opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment and in violation of 42 U.S.C. §1983, the Board officers who are the individual defendants have caused and will continue to cause disguised for-cause dismissals without conducting any formal hearings as required by State Law and the CBA.

120.    By such acts denying any notice and opportunity to be heard as to the job performance, shortcomings and deficiencies, of Mr. Sapia and by other acts denying due process in the deprivation of property rights created pursuant to contract and the Illinois School Code, and in violation of 42 U.S.C. §1983, the same Board officers have denied and will continue to deny his constitutional rights under the Due Process Clause of the Fourteenth Amendment.

**WHEREFORE**, plaintiff Sapia prays this Court to:

A. Declare that in violation of 42 U.S.C. §1983 and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, the individual Board defendants have denied Mr. Sapia his constitutional right to notice and a post-termination hearing to challenge the underlying allegation of poor performance.
B. Reinstate Mr. Sapia to his position or on substantially similar.
C. Grant plaintiff his legal fees and costs under 42 U.S.C. §1988 and such other legal and such other relief as may be required.

**Count III**
**(Section 1983: Deprivation of Due Process – Reputation)**

121.    Plaintiff incorporates paragraphs 1 through 120 herein.

122.    Mr. Sapia has been hindered in his attempt to work in his chosen profession as a result of being terminated on the basis of his performance.

123.    He has found it more difficult to find teaching position within CPS as a result of their alleged poor performance.

124.    He has also found it more difficult to find teaching positions in school districts outside of CPS as a result of their alleged poor performance.

125.    Defendant published the 2010 Board Resolution and 2011 Layoff policy making it known to the public that teachers who have been issued an E-3 Notice or Unsatisfactory Rating will be terminated before all other qualified teachers, regardless of seniority, experience, or past ratings.

126.    Mr. Sapia has been denied appointment to a teaching position by CPS as a result of his termination on the basis of their alleged poor performance

127.    Mr. Sapia has been denied employment by school districts outside of CPS as a result of his termination on the basis of their alleged poor performance.

128.    Defendant's layoff policy, as applied, extinguishes Mr. Sapia's ability to reclaim

tenured employment, despite never being issued notice of alleged poor performance forming the

basis for dismissal or being offered the opportunity to a pre- or post- termination hearing.

129.    Plaintiff requests trial by jury.

**WHEREFORE**, plaintiff Sapia prays this Court to:

A.  Declare that in violation of 42 U.S.C. §1983 and the Due Process Clause of the
    Fourteenth Amendment of the Constitution of the United States, the individual
    Board defendants have, through the publication of the 2010 Board Resolution
    and 2011 Layoff Policy, created a stigma surrounding teachers laid off pursuant
    to these orders, including Mr. Sapia, whose most recent rating and evaluation
    allege poor performance, despite offering no opportunity to complete
    remediation or challenge the allegations.
B.   Make Mr. Sapia whole.
C.  Grant plaintiff his legal fees and costs under 42 U.S.C. §1988 and such other
    legal and such other relief as may be required.


Respectfully submitted,


/s/ Robin Potter
One of Plaintiff's Attorneys


Robin Potter, Esq. Esq.
Robin Potter & Associates, P.C.
111 E. Wacker Drive-#2600
Chicago, IL. 60601
(312) 861-1810
robin@potterlaw.org

Attorneys for Plaintiff


Dated: October 10, 2014