**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| Bennett Sapia, *et al.*, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| v. | ) | No. | 14-CV-7946 |
| | ) | | |
| Board of Education of the City of Chicago, | ) | Judge Andrea R. Wood | |
| a body politic and corporate, | ) | Magistrate Judge Young B. Kim | |
| | ) | | |
| Defendant. | ) | | |

## DEFENDANT'S MOTION TO DISMISS

Defendant BOARD OF EDUCATION OF THE CITY OF CHICAGO ("BOARD") files this Motion to Dismiss Plaintiffs' Amended Complaint (the "Amended Complaint," Docket #21) and states:

### INTRODUCTION

Plaintiffs, three Board teachers, seek to represent a class of teachers laid off between January 1, 2012, and the present who, when laid off, had "Unsatisfactory" performance ratings. Plaintiffs assert the following claims pursuant to 42 U.S.C. Section 1983: (1) Deprivation of Due Process Pre-Termination Rights of Teachers; (2) Deprivation of Due Process Post-Termination Rights of Teachers; and (3) Deprivation of Due Process—Reputation. (Docket #21 at 23-28) The Court should dismiss all three claims for failure to state a claim as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

First, Illinois law clearly permits the Board to consider performance ratings when determining the order of teacher layoffs. Second, Plaintiffs know this because their counsel was among those representing the Chicago Teachers' Union ("CTU"), Plaintiffs' exclusive bargaining representative, in a prior lawsuit involving that issue. The Illinois Supreme Court and Seventh Circuit Court of Appeals ruled in the Board's favor, finding teachers have no property interest entitling them to individualized consideration before being laid off due to an "Unsatisfactory" rating. By failing to identify a protected property interest, Plaintiffs do not state pre- or post-termination

due process claims (Counts I and II). Third, the CTU *agreed to* the practice Plaintiffs challenge—use of "Unsatisfactory" ratings to determine layoff order—which requires dismissal of Counts I, II and III. Fourth, Plaintiffs received due process because they were allowed to challenge their "Unsatisfactory" ratings. Finally, Plaintiffs fail to state a claim for Due Process—Reputation (Count III) because the unsatisfactory evaluations about which they complain: (1) are not "stigmatizing"; (2) were not publicly disseminated; and (3) do not bar them from reemployment with the Board.

## FACTUAL SUMMARY

This lawsuit arises from Plaintiffs' layoffs from various Board schools in July and October 2012, which they contend violated their due process rights. (Docket #21 ¶¶26-27, 47-48, 62)

**A.    The Board Has Adopted a Series of Policies Concerning Teacher Layoffs.**

**1.    The 2010 Layoff Resolution.**[1]

The Board issued a Resolution, Board Report 10-0623-RS32, on June 23, 2010 (the "2010 Layoff Resolution"). (**Exhibit A**) In the 2010 Layoff Resolution, the Board quoted Illinois School Code Section 5/34-18(31), which allows the Board:

> to promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including but not limited to, criteria for such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criterion. Such criteria shall take into account factors, including but not limited to, qualifications, certification, experience, performance ratings or evaluations, and any other factors relating to an employee's job performance.

The Board resolved that in the event of a layoff, it would "take performance ratings or evaluations

---

[1] Plaintiffs reference the 2007 Layoff Policy and attach the 2010 Resolution and 2011 Layoff Policy to their Amended Complaint. (Docket #21 ¶¶109-26, Exhibits E and F) "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Anderson v. Centers for New Horizons, Inc.*, No. 11-CV-9233, 2012 WL 2396359, at *2 (N.D. Ill. Jun. 25, 2012). The Court may take judicial notice of the Resolutions, Policies and 2012 Collective Bargaining Agreement ("CBA") attached to this Motion, given that they are public documents. *See Bluford v. Swift Transp.*, No. 11-CV-6932, 2012 WL 1755772, at *1 n. 2 (N.D. Ill. May 16, 2012); *Walczak v. Bd. of Educ. of City of Chicago*, No. 11-CV-8409, 2012 WL 3134351, at *2 (N.D. Ill. Aug. 1, 2012) (observing Board resolution "is a matter of public record"), *aff'd sub nom. Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013 (7th Cir. 2014); *Iovinelli v. Pritchett*, No. 06-CV-6404, 2008 WL 2705446, at *2 (N.D. Ill. July 9, 2008) (finding collective bargaining agreements "are matters of public record").

2

into account" and first release teachers who are under remediation or whose last performance rating was "unsatisfactory," "does not meet expectations" or an equivalent rating indicating deficient performance and then apply any other criteria for order of layoff found in the applicable collective bargaining agreement, to the extent consistent with the 2010 Layoff Resolution. (**Exhibit A**)

    **2.**    **The 2011 Layoff Policy.**

On June 22, 2011, the Board adopted Board Report 11-0622-PO1 (the "2011 Layoff Policy"). (**Exhibit B**) The 2011 Layoff Policy provided "layoff procedures … for honorably dismissed tenured teachers … for reasons that are not addressed in Board Policy 504.2" [a 2007 Layoff Policy]." (**Exhibit B at 1**) Specifically, the Board resolved that in the event of a layoff for a reason other than those set forth in the 2007 Layoff Policy, teachers shall be selected for layoff in the following order: (1) teachers without appropriate certification or credentials; (2) teachers rated "unsatisfactory"; (3) retired teachers; (4) temporarily assigned teachers; (5) probationary appointed teachers; and (6) appointed tenured teachers. (**Exhibit B at 1-2**)

    **3.**    **The 2013 Layoff Policy.**[2]

The Board adopted Board Report 13-0828-PO4, on August 28, 2013, rescinding the 2011 Layoff Policy and 2010 Layoff Resolution. (**Exhibit C**) The 2013 Layoff Policy applies "[w]henever there is a reduction in or change in the teaching force that results in the layoff of appointed teachers." (**Exhibit C at 2**) Under that Policy, teachers are laid off in the following order: (1) teachers rated "unsatisfactory"; (2) substitute or temporary teachers; (3) probationary appointed teachers by performance tier; (4) tenured teachers rated unsatisfactory (or emerging, then developing, under a new evaluation system); and (5) all other tenured teachers. (**Exhibit C at 2**) With respect to the 2012-2013 school year only, category (4) would not be used. (**Exhibit C at 2**)

---

[2] Although the three named Plaintiffs were laid off before the adoption of the 2013 Layoff Policy, they purport to represent a class which would include persons to whom that Policy applies.

**B.      The CTU Agreed to Use Teacher Performance Ratings in Determining Layoff Order.**

Plaintiffs' exclusive bargaining representative *agreed* to the use of performance ratings to determine layoff order. Plaintiffs—and all purported class members—are members of the CTU. *Chicago Teachers Union, Local No. 1 v. Board of Educ. of the City of Chicago*, 963 N.E.2d 918, 921 (Ill. 2012). (**Exhibit D at 5-6, 36, 38**[3]) The Board and CTU adopted the 2012 CBA on October 24, 2012, agreeing it would be effective retroactively to July 1, 2012; it remains in effect through June 30, 2015.[4] (**Exhibit D at 1, 37**) Appendix H to the 2012 CBA, which is binding for all teacher layoffs, provides identical criteria for the order of teacher layoffs as the 2013 Layoff Policy, including that "teachers rated unsatisfactory" will be laid off first. (**Exhibit D at 32, 40-46**)

**C.      The Individual Plaintiffs.**

Plaintiffs Passmore and Hall were laid off from Dunbar High School ("Dunbar") in July 2012 and October 2012, respectively. (Docket #21 ¶¶39, 47, 53, 63) They each received an "Unsatisfactory" rating in June 2012. (Docket #21 ¶46, 59) Dunbar experienced a drop in enrollment for the 2012-2013 school year, necessitating a layoff.[5] (Docket #21 ¶¶47-48, 62) As teachers with "Unsatisfactory" ratings, Plaintiffs Passmore and Hall were laid off pursuant to the 2011 Layoff Policy and Appendix H to the 2012 CBA. (Docket #21 ¶¶47-48, 62; **Exhibit B**; **Exhibit D at 1, 41-42**) The Board gave them a chance to secure a permanent appointment before honorably terminating their service with the Board; when they did not do so, Plaintiffs Passmore and Hall were terminated on June 30, 2013 and October 12, 2013, respectively. (**Exhibits E and F**)

Plaintiff Sapia was laid off from Kennedy High School ("Kennedy") in October 2012.

---

[3] These citations refer to the numbered page(s) of the attached PDF, not of the original 2012 CBA.
[4] It is unclear why Plaintiffs attached portions of the 2007 CBA to the Amended Complaint, given that it expired on June 30, 2012, before their layoffs. (Docket #21, Exhibit C) In considering this Motion, the Court need not credit Plaintiffs' conclusory allegation that the 2007 CBA is "controlling," given the dearth of any factual support for that statement and the fact that it is plainly contradicted by the 2012 CBA (**Exhibit D**). *See Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995) (stating, "[conclusory] statements [of law]—and their unwarranted inferences—are not sufficient to defeat a motion to dismiss for failure to state a claim"). Notably, Plaintiffs concede the 2012 CBA is a "controlling CBA." (Docket #21 at 11 ¶75)
[5] Although Plaintiff Passmore alleges he was not properly observed before receiving an "Unsatisfactory" rating, he does not appear to base his claims on that allegation. (Docket #21 ¶¶ 35-52, 144-76)

(Docket #21 ¶16) He received an "Unsatisfactory" rating in June 2012. (Docket #21 ¶¶18, 21, Exhibit A) Kennedy experienced a drop in enrollment for the 2012-2013 school year, necessitating a layoff. (Docket #21 ¶23; Ex. B) As an "Unsatisfactory" teacher, Plaintiff Sapia was laid off pursuant to the 2011 Layoff Policy and Appendix H to the 2012 CBA. (Docket #21 ¶23, Ex. B; **Exhibit B**; **Exhibit D at 41-42**) The Board gave him a chance to secure a permanent appointment before honorably terminating his service with the Board; when he did not do so, the Board honorably terminated him on October 12, 2013. (**Exhibit F**)

## STANDARD OF REVIEW

Rule 12(b)(6) provides for claim dismissal when a plaintiff fails to state a claim on which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint should be dismissed if it appears "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ledford v. Sullivan*, 105 F.3d 354, 357 (7th Cir. 1997). The court must treat all well-pleaded factual allegations in the complaint as true and draw reasonable inferences from those allegations in the Plaintiffs' favor. *Thompson v. Illinois Dep't of Prof. Reg.,* 300 F.3d 750, 753 (7th Cir. 2002). The court need not strain, however, to find inferences favorable to Plaintiffs that are not apparent on the face of the complaint—it is not required to accept legal conclusions alleged or inferred from the pleaded facts. *Nelson v. Monroe Reg. Med. Ctr.,* 925 F.2d 1555, 1599 (7th Cir. 1991).

## ARGUMENT

**A.   The Illinois Supreme Court and Seventh Circuit Say Laid Off Teachers Have No Protected Property Interest, Dooming Plaintiffs' Due Process Claims.**

Plaintiffs fail to state actionable claims for pre- or post-termination due process because they have not identified a legally protected property interest. Notably absent from the Amended Complaint is any reference to a specific source for such an interest. Instead, Plaintiffs allege

generally that they suffered a "loss in [sic] a property interest granted by the Illinois School Code." (Docket #21 ¶7) The Illinois School Code, however, does not provide any such interest, as both the Illinois Supreme Court and Seventh Circuit Court of Appeals already found, in a case in which the proposed class included teachers subject to layoff due to "Unsatisfactory" ratings.

1. **Illinois Law Allows the Board to Adopt Layoff Procedures and Criteria Which Include Performance Ratings.**

Illinois School Code Section 34-18(31), in effect since 1995, describes the Board's powers with respect to layoffs:

> To promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not limited to, criteria of such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criterion. Such criteria shall take into account factors including, but not limited to, qualifications, certifications, experience, *performance ratings* or evaluations, and any other factors relating to an employee's job performance.

105 ILCS 5/34-18(31) (emphasis supplied). Section 34-18(31) plainly permits the Board to establish layoff procedures which use performance ratings as a factor in layoffs. *Id.*; *see also Chicago Teachers Union,* 963 N.E.2d at 923 (noting, "[t]he most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning").

As this Court has held, Section 34-18(31) "not only grants the Board the plenary power to create rules regarding layoffs, reductions in force, and recalls, it gives the Board broad discretion to determine the weight assigned to the listed criteria and any other criteria the Board deems proper. As such, the statute does not limit in any meaningful way the Board's decision-making process related to layoffs, reductions in force, or recalls." *Shegog v. Board of Educ. of the City of Chicago*, No. 99-CV-211, 2000 WL 555504, at *2 (N.D. Ill. May 4, 2000) (concluding Section 34-18(31) does not create property interest). The Board adopted the 2011 and 2013 Layoff Policies and 2010 Resolution in accordance with Illinois School Code Section 34-18(31). (**Exhibits A-C**)

### 2. Plaintiffs Already Litigated This Issue and Lost.

In pursuing these claims, Plaintiffs seek a second bite at the apple. Their union, the CTU, already raised these issues and lost in *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of the City of Chicago,* No. 10-CV-04852, in the United States District Court for the Northern District of Illinois, Eastern Division (the "*CTU* Case").

In that case, the CTU, represented by a team of lawyers which included the same counsel representing Plaintiffs in this case. *CTU* Case, No. 10-CV-04852, Docket #1, 75, citing 105 ILCS 5/34-18(31). The union alleged Board layoffs—including the anticipated layoff of teachers with "Unsatisfactory" ratings—violated their right to procedural due process "without the individualized determinations required by Illinois law." *Id.* at Docket #1, 75, citing 105 ILCS 5/34-18(31). In their Complaint, the CTU specifically referenced the Board's 2010 Resolution permitting layoff of teachers with "Unsatisfactory" ratings. *Id.* at Docket #1 ¶¶42-44, #75 ¶¶40-42. The union further claimed its "members have had no opportunity or other procedural due process … to present their qualifications and experience and be given notice and an opportunity to be heard as to why they should be retained." *Id.* at Docket #1, 75 ¶4. The CTU sought "to bar the Board … from summarily dismissing these teachers … *en masse* without any such general rules in place and without making the individual determinations required by 105 ILCS 5/34-18(31) which is applicable to *any* reduction in force, including the one that is now occurring." *Id.* (emphasis original). The union demanded, "The [B]oard must issue some general rules and make individual determinations under those rules of the 'qualifications, certifications, experience and performance ratings …' of each affected teacher and other educators to ensure that the most qualified of them are retained." *Id.*

To state a due process claim, the CTU had to establish a protected property interest. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985). The Constitution protects property from government deprivations without due process, but does not create the property interest. *Id.* A person must have a legitimate claim of entitlement to a property interest, not just an "abstract need"

or "unilateral expectation" of it. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). In the employment context, "a property interest exists 'when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met.'" *Buttitta v. City of Chicago*, 9 F.3d 1198, 1202 (7th Cir. 1993).

After finding CTU teachers enjoyed a protected property interest in their employment, the District Court in the *CTU Case* granted the union's request for an injunction and the Seventh Circuit affirmed (with one dissent). *Chicago Teachers Union, Local No. 1, American Federation of Teachers v. Board of Education of the City of Chicago*, 662 F.3d 761, 762 (7th Cir. 2011). However, the Seventh Circuit granted the Board's petition for rehearing, vacated its opinion and certified questions concerning the interpretation of the Illinois School Code to the Supreme Court of Illinois. *Id.* The Illinois Supreme Court held as follows: Sections 34-18(31) and 34-84 of the Illinois School Code do not, whether alone or in combination, give laid-off tenured teachers the substantive right to be rehired after an economic layoff or provide procedural rights during the rehire process. *See Chicago Teachers Union,* 963 N.E.2d at 924-27. Based on this holding, the Seventh Circuit reversed and remanded the case, finding "the relevant School Code provisions do not give rise to the substantive property rights sought by plaintiffs." *Chicago Teachers Union, Local No. 1, American Federation of Teachers v. Board of Educ. of the City of Chicago*, 476 Fed. App'x 83, 84-85 (7th Cir. 2012).

Put simply, the CTU already tried to force the Board to conduct "an individualized hearing or determination as to whether [teachers] are entitled to retention in some position based on their qualifications under 105 ILCS 5/34-18(31)" before a layoff. *CTU Case*, No. 10-CV-04852, Docket #1, 75 ¶6. Both the Illinois Supreme Court and Seventh Circuit rejected that effort, finding the Illinois School Code does not provide a property interest protecting tenured teachers from layoff. *See Chicago Teachers Union,* 963 N.E.2d at 924-27; *Chicago Teachers Union*, 476 Fed. App'x at 84-85. The Seventh Circuit has twice reiterated this holding. *See Price v. Board of Educ. of Chicago*, 755 F.3d 605, 609-10 (7th Cir. 2014) (rejecting claim to a property interest requiring pre-layoff due process for

tenured teachers after finding, because of the 1995 amendments to 105/ILCS 5/34-84, "tenured teachers 'no longer have a property interest in their jobs that allows them to seek out and fill any vacancies in CPS before being laid off'"); *Fennerty v. Board of Educ. of the City of* Chicago, 577 Fed. App'x 599, 600 (7th Cir. 2014) (affirming rejection of teacher's demand for pre-layoff due process).

While Plaintiffs carefully avoid copying the phraseology used in the *CTU* Case pleadings, they must look for a protected property interest in the Illinois School Code—the same source as in the *CTU* Case—and their complaints and relief sought are the same sought in that case: they demand "due process" in the form of "a pre-termination hearing," "post-termination hearing" or "remediation and dismissal hearings" to "determine whether 'cause' exists for their removal, or their rating is false." (Docket #21 ¶¶146, 149, 151, 161-62, 169-70) Their request for such relief has already been decided by the Seventh Circuit in the *CTU* Case and its progeny, and the Court should therefore dismiss Counts I and II for failure to state a claim on which relief may be granted.

### 3. Plaintiffs Cannot Point to a Protected Property Interest.

Plaintiffs fail to point to any specific source for the requisite property interest, forcing the Board to guess on which Illinois School Code provision (other than Section 34-18(31)) they rely.

#### a. Illinois School Code Section 24A-5.

Plaintiffs contend a tenured teacher rated as "Unsatisfactory" has a right to complete remediation as defined by Illinois School Code Section 24A-5 before being laid off due to that status. Remediation, however, is not a prerequisite to layoff, but rather to a cause dismissal sought pursuant to Section 24A-5. In *Price*, this Court differentiated "for cause" terminations from layoffs:

> a layoff customarily occurs as the result of such outside forces as economic decline, reorganization, or the abolition of job duties. Thus, notwithstanding the restrictions that sections 34–84 and 34–85 place on the Board's power to discharge tenured teachers, the Board retains discretion to lay off employees—even those who have achieved tenure status—in good faith for lack of work or to save money. The text of sections 34-84 and 34-85 does not mention giving tenured teachers immunity from layoff.

*Price v. Bd. of Educ. of the City of Chicago*, Nos. 11-CV-04463, -04974 and -09322, 2013 WL 1914325, *6

9

(N.D. Ill. May 8, 2013) (internal citations omitted); *see also Chicago Teachers Union*, 963 N.E.2d at 925 (holding neither Sections 34-18(31) or 34-84, nor a combination thereof, give laid off tenured teachers substantive right to rehire after layoff). Further, Section 24A-5 does not guarantee a teacher may complete remediation before being laid off based on his or her "Unsatisfactory" status.

### b. Illinois School Code Section 34-85.

In mischaracterizing their layoffs as "for cause" terminations, Plaintiffs ignore the statutory authority allowing the Board to "create rules regarding layoffs." (Docket #21 ¶¶87-88) *Shegog*, 2000 WL 555504 at *2. Illinois law specifically lists "performance ratings" among factors the Board may consider in conducting layoffs, reflecting the General Assembly's intent that the worst performing teachers be laid off first.[6] 105 ILCS 5/34-18(31).

Further, Plaintiffs' layoffs do not have the same practical effect of a "for cause" termination after a failed remediation plan. Their layoffs do not preclude them from reemployment with the Board, as evidenced by Plaintiff Passmore's admission that the Board has rehired him. (Docket #21 ¶52) Moreover, as Plaintiff Sapia's layoff notice reflects, after their layoffs, Plaintiffs were placed in the Reassigned Teachers Pool and directed to a Board website listing open teaching positions. (Docket #21, Exhibit B) Conversely, as the CTU agreed in the 2012 CBA, when an "Unsatisfactory" teacher is terminated for cause after failing to successfully complete a remediation plan, the termination is permanent and the teacher is precluded from reemployment with the Board. (**Exhibit D at 34**) That performance is one of the legally permissible layoff criteria does not transform an economic-based layoff into a "for cause" discharge. *See Washington Teachers' Union Local No. 6 v. Board of Educ.*, 109 F.3d 774, 779-81 (D.C. Cir. 1997) (holding laid off teachers not entitled to hearings to challenge performance ratings).

---

[6] The General Assembly's preference for retention of higher rated teachers is further reflected in its recent mandate that school districts outside Chicago adopt layoff sequences by performance tiers, with the worst performers the first laid off. *See* 105 ILCS 5/24-12(b).

Plaintiffs were not terminated "for cause." Rather, they were laid off based on the 2011 Layoff Policy and 2012 CBA, each of which lists "Unsatisfactory" teachers at the top of the layoff sequence. Neither Section 24A-5 nor Section 34-85 establishes a protected property interest with respect to layoffs of "Unsatisfactory" teachers.

**B.  Plaintiffs May Not Complain of the Alleged Unconstitutionality of a Policy to Which Their Union Agreed.**

A public employee "may not pursue a civil rights suit" alleging his employer's policy is unconstitutional when "his union and his employer agree to operate under that policy." *Dykes v. Southeastern Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1570 (3rd Cir. 1995) (rejecting complaint that employer's drug testing policy violated Fourth Amendment due in part to employee's union's agreement to that policy), citing *Bolden v. Southeastern Pennsylvania Transp. Auth.*, 953 F.2d 807, 827 (3rd Cir. 1991); *see also Brownlee v. City of Chicago*, 983 F. Supp. 776, 785-86 (N.D. Ill. 1997) (observing "[Plaintiff's] Union serves as his exclusive bargaining representative. As such, it has the power to consent to conditions of employment on its members' behalf, even if those conditions 'entail[ ] some restrictions on constitutional rights that individual employees would otherwise enjoy'"), quoting *Dykes*, 68 F.3d at 1569. As explained above, the CTU agreed to the very "order of layoff" provision Plaintiffs now challenge as violative of their due process rights. (**Exhibit D at 40-46**)

Plaintiffs' exclusive bargaining agent's consent to the Board's use of "unsatisfactory" ratings as a factor in determining order of layoff precludes them as a matter of law from complaining the use of that factor violates Section 1983. *See Dykes*, 68 F.3d at 1570; *Bolden*, 953 F.2d at 827; *Brownlee*, 983 F. Supp. at 786. Accordingly, the Court should dismiss Counts I, II and III for failure to dismiss a claim on which relief may be granted.

**C.  Plaintiffs Received Due Process Related to Their "Unsatisfactory" Ratings.**

The 2007 CBA, which was in effect when Plaintiffs received their E-1 Notices of "Unsatisfactory" ratings and "Unsatisfactory" ratings (but not when they were laid off), provides

due process when a teacher receives an unsatisfactory rating. (Docket #21, Exhibit C at 94-96) Section 39-5.1 of the 2007 CBA requires that if a teacher receives an unsatisfactory rating, the principal "shall notify the tenured teacher in writing," the notice shall state the reasons for the unsatisfactory rating and the notice is given to the teacher at a conference. (Docket #21, Exhibit C at 94) Further, Section 39-6 states that when the Teacher Evaluation Review form is prepared, a copy "shall" be given to the teacher, who may respond in writing. (Docket #21, Exhibit C at 96) Thus, Plaintiffs received an opportunity to contest their "Unsatisfactory" ratings.

**D.    Plaintiffs State No Actionable "Deprivation of Due Process—Reputation" Claim.**

In support of Count III, their "Deprivation of Due Process—Reputation" claim, Plaintiffs say they "have been hindered in their attempt to work in their chosen profession as a result of being terminated on the basis of performance" and "have found it more difficult to find teaching position [sic] within CPS as a result of their alleged poor performance." (Docket #21 ¶¶173-74) To succeed on a deprivation of occupational liberty interest claim, a plaintiff must show: "(1) he was stigmatized by the defendant's conduct; (2) the stigmatizing information was publicly disclosed; and (3) he suffered a tangible loss of employment opportunities as a result of the public disclosure." *Covell v. Menkis*, 595 F.3d 673, 677-78 (7th Cir. 2010). Plaintiffs do not plead these three elements.

**1.    Plaintiffs Apparently Assert an "Occupational Liberty Interest" Claim.**

The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. U.S. Const. XIV; *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The concept of liberty protected by the Due Process Clause includes one's occupational liberty, or "the liberty to follow a trade, profession, or other calling." *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992). The government violates an employee's occupational liberty interest when, in the course of a discharge, failure to rehire, or other adverse employment action, the employer stigmatizes the employee by making public comments that impugn "the individual's good name, reputation, honor, or integrity" or

impose a "stigma or other disability on the individual which forecloses other opportunities." *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972). The Fourteenth Amendment protects only the individual's liberty to pursue a particular occupation, however, and not the individual's right to any one job. *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). Thus, the critical issue for purposes of an occupational liberty claim is whether the defendant's actions will prevent the employee from pursuing other opportunities in his or her chosen profession. *Id.*

Plaintiffs allege the Board's publication of the 2010 Resolution and 2011 Layoff Policy made "it known to the public that teachers who have been issued an E-3 Notice or Unsatisfactory Rating [sic] will be terminated before all other qualified teachers, regardless of seniority, experience, or past ratings." (Docket #21 ¶175) They further claim they "have been hindered in their attempt to work in their chosen profession as a result of being terminated on the basis of performance" and that they "were denied appointment to a teaching position by CPS as a result of their termination on the basis of their alleged poor performance." (Docket #21 ¶¶173, 176)

### 2. The 2010 Resolution and 2011 Layoff Policy Caused Plaintiffs No Stigma.

Plaintiffs allege the 2010 Resolution and 2011 Layoff Policy stigmatized them. (Docket #21 ¶175) Neither of those documents mentions Plaintiffs. Additionally, both permit layoffs for reasons other than an "Unsatisfactory" rating, leaving the other criteria (none of which implicate "immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts") as possible layoff reasons. *See Munson*, 754 F.2d at 694. Thus, Plaintiffs fail to identify any stigmatizing statement.

Even if they had done so, "[n]ot every remark which may arguably affect one's reputation violates due process if made by a government official without a hearing, for the fourteenth amendment protects only against charges that might seriously damage one's standing and association in the community." *Ulichny v. Merton Comm. Sch. Dist.*, 249 F.3d 686, 705 (7th Cir. 2001). A "liberty interest is implicated when either (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive

13

acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities." *Munson v. Friske*, 754 F.2d 683, 694 (7th Cir. 1985). Mere proof that an individual is "somewhat less attractive to some other employers" would not establish the requisite foreclosure of opportunities. *Id.* Nor is liberty "infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348 (7th Cir. 1995) (holding public announcement that plaintiff was fired due to incompetence did not impinge liberty interest); *see also Ulichny*, 249 F.3d at 705 (finding school district did not attack plaintiff's moral character to implicate liberty interest by stating she was untrustworthy and district had concerns regarding various matters related to her tenure); *Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 439 (7th Cir. 2004) (ruling press release stating administrator demonstrated pattern of providing misinformation, with loss of trust and credibility, did not implicate liberty interest). Nowhere in Plaintiffs' Amended Complaint do they mention any conduct by the Board which rises to the required level for a "stigma" finding.

### 3. Plaintiffs' E-1 Notices and "Unsatisfactory" Ratings are Unpublished and Were Not "Disclosed Incident to the Change in Employment Status."

Nor do Plaintiffs claim their E-1 Notices or "Unsatisfactory" ratings have been published. Instead, they allege an E-1 Notice is "placed in the teacher's personnel file, which is accessible to administrators within the Chicago Public School System" and that an "administrator from whom the teacher is seeking employment" and a "district from whom [sic] the teacher is seeking employment" "will be granted access to the teacher's previous ratings, including the E-3 [N]otice." (Docket #21 ¶¶135, 137-38) Even if these allegations were true, possible accessibility to future potential employers upon request is not "public disclosure." *See Johnson v. Martin*, 943 F.2d 15, 16-17 (7th Cir. 1991) (holding personnel files containing stigmatizing statements must have actually been disseminated to potential employer to satisfy "public disclosure" requirement).

Moreover, to state a liberty claim, the stigmatizing information must be disclosed incident to the change in employment status. *See Siegert v. Gilley*, 500 U.S. 226, 234 (1991). Plaintiffs admit their E-1 Notices and "Unsatisfactory" ratings were not issued incident to or in the course of their subsequent layoffs. (Docket #21 ¶¶22, 25-26, 46-47, 59, 62) This dooms their "occupational liberty" claim as a matter of law. *See Emery v. Northeast Illinois Reg. Commuter R.R. Corp.*, No. 02-CV-9303, 2003 WL 22176077, *3 (N.D. Ill. Sept. 18, 2003) (noting while publication and termination need not occur simultaneously, "statements made weeks (let alone months) before or after termination are not statements made in the context of termination"); *see also Newton v. Chicago School Reform Bd. of Trustees*, No. 96-CV-7078, 1997 WL 603838, at *7 (N.D. Ill. Sept. 24, 1997) (dismissing occupational liberty claim when allegedly stigmatizing information was disclosed two months before termination).

### 4. Plaintiffs Plead No Tangible Job Loss.

In support of Count III, Plaintiffs must also allege they experienced tangible loss of other employment opportunities as a result of the "disclosure" of the Board's 2010 Resolution and 2011 Layoff Policy. *See Snowden v. Adams*, 814 F. Supp. 2d 854, 872 (C.D. Ill. 2011). However, they only conclusorily plead they "were denied appointment to a teaching position by CPS as a result of their termination on the basis of their alleged poor performance." (Docket #21 ¶176) Plaintiffs do not claim they are foreclosed from employment with the Board or any other district based on their "Unsatisfactory" ratings. Merely alleging they are less attractive to future employers is insufficient to demonstrate other employment opportunities have been foreclosed. *See Munson*, 754 F.2d at 694. Nor need the Court consider Plaintiffs' conclusory allegation that they have been denied teaching positions due to their poor performance, particularly given the absence of any allegation that the Board published their performance ratings. *See Johnson*, 943 F.2d at 16-17.

### CONCLUSION

The Board respectfully requests that the Court dismiss with prejudice Counts I, II and III and grant the Board all other relief to which it may be entitled.

Respectfully submitted,

**BOARD OF EDUCATION OF THE CITY OF CHICAGO**

JAMES L. BEBLEY
General Counsel

By:    s/Lisa A. Dreishmire
Lisa A. Dreishmire
Kathleen D. Crawford
Board of Education of the City of Chicago
Law Department
1 North Dearborn, Suite 900
Chicago, IL 60602
(773) 553-1700

## CERTIFICATE OF SERVICE

I caused a copy of the foregoing document to be served upon counsel of record via CM-EMF E-Filing pursuant to General Order on Electronic Case Filing, Section XI(C), on March 25, 2015.

*s/Lisa A. Dreishmire*
Lisa A. Dreishmire