**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BENNETT SAPIA, JOEL PASSMORE, and
ANNETTE HALL,

       Plaintiffs,

    v.

BOARD OF EDUCATION OF THE CITY
OF CHICAGO,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. 14-cv-07946

Judge Andrea R. Wood

## MEMORANDUM OPINION

       Plaintiffs Bennett Sapia, Joel Passmore, and Annette Hall claim they were let go from their tenured teaching positions by Defendant Board of Education of the City of Chicago ("Board") without receiving the benefit of mandated procedures for terminating tenured teachers. Plaintiffs assert that this denial amounts to a violation of their due process rights and so they have filed the instant lawsuit pursuant to 42 U.S.C. § 1983 seeking monetary damages and declaratory relief. Now before the Court are the following motions: the Board's motion for judgment on the pleadings (Dkt. No. 188), the Board's motion to strike and dismiss portions of Plaintiffs' Second Amended Complaint ("SAC") (Dkt. No. 136), Plaintiffs' motion for leave to issue notice to absent class members (Dkt. No. 122), Plaintiffs' motion to strike certain affirmative defenses (Dkt. No. 141), and Plaintiffs' motion to set aside or modify the Magistrate Judge's May 15, 2017 order (Dkt. No. 160). The Court addresses each of the motions below.

## BACKGROUND

       Plaintiffs were working as tenured teachers in the City of Chicago's public school system when they received layoff notices—Passmore in July 2012, and Sapia and Hall in October 2012.

Plaintiffs claim that throughout their careers they received consistently good performance evaluations; but then, in June of 2012, they were rated "unsatisfactory" and shortly thereafter they were fired. The parties do not dispute that in deciding which teachers would be let go, the Board looked first to those with unsatisfactory ratings, including tenured teachers, before considering others with less seniority and no tenure. Plaintiffs assert that the Illinois School Code prohibits the removal of tenured teachers except for cause and also mandates specific pre-termination evaluation and decision procedures plus administrative review of any adverse decision. *See* 105 ILCS 5/24A-5, 5/34-85. Thus, according to Plaintiffs, by firing them and exposing them to the resulting stigma, the Board deprived them of a protected property interest without due process in violation of the Fourteenth Amendment to the United States Constitution.

The initial complaint in this lawsuit was filed on October 10, 2014 and later followed by the First Amended Complaint ("FAC"). The FAC alleged that the Board denied Plaintiffs, and a putative class of other similarly-situated persons, due process of law. The Board moved to dismiss the FAC arguing, among other things, that Plaintiffs' due process claims failed because Plaintiffs did not have protected property interests under either the Illinois School Code or the operative collective bargaining agreement ("CBA") between the Board and Plaintiffs' union. The Board also argued that Plaintiffs' claims for reputational harm failed because Plaintiffs' unsatisfactory ratings were not stigmatizing, were unpublished, and did not bar Plaintiffs from reemployment. While this Court ultimately denied the Board's motion to dismiss the FAC, the scope of the surviving due process claims was significantly narrowed by the Court's ruling. Specifically, the Court held that,

> although Plaintiffs do not state a claim for relief with the bare allegation that the Board used performance ratings to determine their eligibility for layoff, they do state a sufficient claim to the extent they allege that the Board's actions against

them were not the result of a layoff necessitated by economics or enrollment, but instead were prompted by individual animus towards them.

*Sapia v. Bd. of Educ. of the City of Chicago*, No. 14-cv-07946, 2016 WL 5391134, at *3 (N.D. Ill. Sept. 26, 2016). After the ruling, the Board moved to join the Chicago Teachers Union ("CTU") as an indispensable party to this action. (Dkt. No. 109.) The Court denied that motion because, due to the ruling on the motion to dismiss, Plaintiffs' claims had been limited to the theory that the layoff label was a pretext for terminations actually prompted by individual animus against each of them, the layoff procedures established by the CBA were no longer at issue, and the challenged actions did not substantially impact the CTU membership. (Feb. 20, 2017 Order, Dkt. No. 124.)

Plaintiffs next sought leave to amend their complaint again to remove the class allegations and to issue notice to absent class members pursuant to Federal Rule of Civil Procedure 23(d)(1). (Dkt. No. 122.) The Court granted Plaintiffs leave to file the SAC, which is now the operative complaint, but deferred ruling on the notice issue at that time. (Feb. 21, 2017 Minute Order, Dkt. No. 125.) The SAC asserts the following claims: Count I alleges denial of due process based on Plaintiffs' pre-termination rights; Count II alleges denial of due process based on Plaintiffs' post-termination rights; and Count III claims a due process violation based on injuries to Plaintiffs' reputations.

The Board answered the SAC but also moved to strike or dismiss portions of it. (Dkt. Nos. 136, 137.) Plaintiffs, in turn, moved to strike certain affirmative defenses raised by the Board. (Dkt. No. 141.) While those motions were pending, the Board also moved for judgment on the pleadings. (Dkt. No. 188.) Additionally, in light of the Board's motion to strike or dismiss portions of the SAC, the Magistrate Judge, who was supervising discovery, suspended briefing on the parties' discovery motions—namely, the Board's motion to quash Plaintiffs' deposition

subpoenas (Dkt. No. 146) and Plaintiffs' motion to compel (Dkt. No. 149). (May 15, 2017 Mem. Op. and Order, Dkt. No. 158.) Thus, Plaintiffs filed a motion asking this Court to set aside or modify the Magistrate Judge's order. (Dkt. No. 160.)

## DISCUSSION

### I. The Board's Motion for Judgment on the Pleadings

The Court first considers the Board's motion for judgment on the pleadings, as a ruling in the Board's favor could dispose of the case in its entirety. To survive a motion for judgment on the pleadings, the complaint must "state a claim to relief that is plausible on its face." *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing such a motion, the Court draws all reasonable inferences and view all facts in favor of the non-moving party. *Id.*

For its motion, the Board argues that Plaintiffs' claims are barred by the doctrine of *res judicata* as a result of a final decision on the merits and stipulation of dismissal with prejudice entered in 2012 in *Chicago Teachers Union v. Board of Education of the City of Chicago*, No. 10-cv-04852 (N.D. Ill.) ("CTU case"). Under the doctrine of *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015). *Res judicata* blocks a second lawsuit if there is (1) an identity of the parties in the two lawsuits; (2) a final judgment on the merits in the first lawsuit; and (3) an identity of the causes of action in the two lawsuits. *Id.* at 840. The third element is satisfied if the claims comprise the same core of operative facts giving rise to a remedy—in other words, the two lawsuits must be based on the same, or nearly the same, factual allegations. *Id.*

Here, Plaintiffs' current lawsuit and the CTU case do not arise from the same core of operative facts. The present suit has been limited to Plaintiffs' claim that they were fired due to individual animus towards them and not, as the Board claimed, due to a "drop in enrollment" in the schools. The events at issue took place in 2011 and 2012. Specifically, Sapia became outspoken about problems in his school and advocated against the school's principal in October 2011. (SAC ¶ 20, Dkt. No. 126.) In February 2012, the principal observed Sapia in the classroom, which led to Sapia receiving an "unsatisfactory" rating in June 2012. Sapia was subsequently fired on October 10, 2012, due to allegedly "low enrollment" in his school. (*Id.* ¶¶ 21–27.) Likewise, Passmore outspokenly opposed the principal of his school in 2011; he was given an "unsatisfactory" rating in June 2012; and he was fired in July 2012 due to the alleged "drop in enrollment" in his school. (*Id.* ¶¶ 43, 49, 50.) Finally, Hall got an unsatisfactory rating in June 2012 and was let go in October 2012, also due to a purported "drop in enrollment." (*Id.* ¶¶ 63, 66.)

In contrast, the CTU case dealt with layoffs surrounding a 2010 budget deficit. *See Chicago Teachers Union v. Bd. of Educ. of the City of Chicago*, No. 10-cv-04852, 2010 WL 3927696, at *1–2 (N.D. Ill. Oct. 4, 2010). On the eve of the 2010–2011 school year, the Board laid off nearly 1,300 teachers. *Id.* at *1. The layoffs were implemented through a series of resolutions—the June 15, 2010 resolution authorized the "honorable termination" of tenured teachers and the June 23, 2010 resolution authorized schools to first lay off teachers who were under remediation or whose most recent performance ratings were negative. *Id.* Although the Board suggested to the media that the layoffs involved teachers with unsatisfactory evaluations, the majority of the laid-off teachers had good ratings. *Id.* The Board later announced plans to dismiss more teachers. *Id.* By August 31, 2010, the Board had laid off nearly 1,300 teachers. *Id.* at *2. Those teachers received notice of their terminations but were not provided an opportunity to

demonstrate their qualifications for retention within the school system. *Id.* The Board later restored some of the teachers to their positions due to an increase in federal funding. *Id.*

On August 2, 2010, the CTU filed a lawsuit against the Board (and other defendants). (*See* Compl., Dkt. No. 1 of the CTU case.) The complaint was later amended, leaving only due process claims under § 1983. (*See* Am. Compl., Dkt. No. 75 of the CTU case.) The amended complaint alleged, among other things, that the Board refused to comply with the CBA, which entitled tenured teachers to be laid off in order of seniority, that the Board's layoffs (and planned layoffs) of tenured teachers with unsatisfactory ratings deprived those teachers of property rights in tenured employment without individualized determinations as required by the Illinois School Code, and that the layoffs were pretextual. (*See, e.g., id.* ¶¶ 1, 3, 6, 53, 60–62.)

On December 27, 2010, the court in the CTU case ruled on a motion to dismiss the CTU's due process claims arising from layoffs of tenured teachers with unsatisfactory evaluations. (*See* Dec. 27, 2010 Order, Dkt. No. 91 of the CTU case.) In defending its claim, the CTU specifically referenced the Board's 2010 resolution authorizing schools first to lay off teachers under remediation or with a negative performance rating and argued that the layoffs pursuant to that resolution were disguised "for cause" terminations imposed without the hearings required by Illinois law. (*Id.*) The defendants argued that the due process claim should be rejected because teachers with negative evaluations were provided with notice and an opportunity to be heard under the CBA. The CTU countered that regardless of the CBA procedures, due process was not satisfied because, at the time of negative evaluations, the teachers did not know that their evaluations would result in termination and thus did not make the efforts they might have made to challenge those evaluations. (*Id.*)

The court held that the CBA provided for procedures that satisfied due process in the event of "for cause" terminations and teachers receiving negative performance evaluations. (*Id.*) The court further held that the "[p]laintiffs effectively contest[ed] [the] [d]efendants' compliance with those procedures, and as such, their [] claim [was] better styled as a state-law contract claim." (*Id.*) Therefore, the court granted the defendants' motion to dismiss the CTU's claim that the layoffs of tenured teachers with "unsatisfactory" evaluations violated due process. (*Id.*)[1]

While previous complaints in the present case might have presented a *res judicata* issue in light of the CTU case, in ruling on the motion to dismiss the FAC, this Court limited the claims allowed to proceed to those encompassing allegations that Plaintiffs lost their teaching positions in 2012 due to individual animus against them. In contrast, the CTU case did not relate to layoffs in 2012 due to the personal animus towards the three Plaintiffs in the present case. Hence, the CTU case involves a different core of operative facts than the present case and *res judicata* does not apply. The Board's motion for judgement on the pleadings is accordingly denied.

## II.    The Board's Motion to Strike and Dismiss Portions of Plaintiffs' SAC

The Court next considers the Board's motion to strike and dismiss portions of Plaintiffs' SAC. As with a motion for judgment on the pleadings, to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)

---

[1] On appeal, the Seventh Circuit certified the question of whether the teachers had a property interest under the Illinois School Code to the Illinois Supreme Court. After the Illinois Supreme Court ruled on the certified question, the CTU and the Board entered into a stipulation of dismissal with prejudice, under which the CTU dismissed all underlying claims against the Board on behalf of its teacher members. (Stip. of Dismissal, Dkt. No. 173 of the CTU case.)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In analyzing a Rule 12(b)(6) motion, the Court "must construe [the complaint] in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).

Federal Rule of Civil Procedure 12(f) provides that a district court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have considerable discretion in striking such matter. *See Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). But motions to strike are generally disfavored as they potentially serve only to delay a case. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Thus, "the movant must show that 'the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration' and that the allegations are unduly prejudicial." *Cumis Ins. Soc., Inc. v. Peters*, 983 F.Supp. 787, 798 (N.D. Ill. 1997) (internal quotation marks omitted). However, when motion to strike removes unnecessary clutter from the case, it can help to expedite, not delay the case. *Heller Fin., Inc.*, 883 F.2d at 1294.

### A. Whether Plaintiffs' Reputational Harm Claims are Time-Barred

The Board argues that Plaintiffs' reputational harm claims based on the Board's 2010 Resolution and 2011 Layoff Policies are time-barred. Although a complaint need not anticipate affirmative defenses such as the running of the statute of limitations, if a plaintiff alleges facts sufficient to establish the defense, the district court may dismiss the complaint on that ground. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). The limitations period for § 1983 claims is based on state law—in Illinois, it is two years. *Id*. The date on which the claim accrues (and the limitations period starts) is a matter of federal law, however, and generally

occurs when a plaintiff knows the fact and the cause of an injury. *Id.* The determination of accrual is a two-step process: the court first identifies the injury and then determines when the plaintiff could have sued for that injury. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011).

The Board argues that Plaintiffs' reputational harm claims based on the Board's 2010 and 2011 publications are time-barred because those claims were brought after the two-year statute of limitations had run. The SAC alleges that "Defendant published the 2010 Board Resolution and 2011 Layoff policy making it known to the public that teachers who have been issued an E-3 Notice or Unsatisfactory Rating will be terminated before all other qualified teachers, regardless of seniority, experience, or past ratings." (SAC ¶ 166, Dkt. No. 126.) The SAC also asks the Court to declare that the Board violated Plaintiffs' due process rights when, "through the publication of the 2010 Board Resolution and 2011 Layoff Policy, [the Board] created a stigma surrounding teachers laid off pursuant to these orders, including plaintiffs whose most recent ratings and evaluations allege poor performance." (*Id.* ¶ 167.) The Board points out that the present suit was filed on October 10, 2014—more than two years after the 2010 and 2011 publications—and contends that in evaluating when the statute of limitations began to run, the proper focus should be the time of the discriminatory act, not the point at which the consequences of the act became painful. *See Kelly v. City of Chicago*, 4 F.3d 509, 512 (7th Cir. 1993). But it provides no explanation as to why the 2010 and 2011 publications constitute the "act" that started the statute of limitations clock here—as opposed to, for example, the time when Plaintiffs were given unsatisfactory ratings or when they were let go.[2]

A public employee states a claim for infringement of a protectable interest in pursuing the occupation of his or her choice by alleging that (1) he or she was stigmatized by the defendant's

---

[2] Plaintiffs received "unsatisfactory" ratings in June 2012 and were let go either in July or October of 2012. (SAC ¶¶ 25, 26, 49, 50, 63, 66, Dkt. No. 126.)

conduct, (2) the stigmatizing information was publicly disclosed, and (3) he or she suffered a tangible loss of other employment opportunities as a result of the public disclosure. *See Townsend v. Vallas,* 256 F.3d 661, 669–70 (7th Cir. 2001). The Board's argument that the clock started to run in 2010 and 2011 suggests that Plaintiffs would have been able to bring their reputational harm claims right after the publications, which would have been months or even years before Plaintiffs received unsatisfactory ratings, were fired, and could not find another job. Such argument is without merit.

The Board next argues that to the extent Plaintiffs' reputational harm claims arise from their actual layoffs—rather than the 2010 and 2011 publications—such claims are barred because public employees may not pursue civil rights suits alleging that their employer's policy is unconstitutional when their union agreed to operate under that policy. But here, the CTU did not agree that tenured teachers could be fired due to personal animus disguised as economic necessity.

The Board relies on *Dykes v. Southeastern Pennsylvania Transportation Authority*, 68 F.3d 1564 (3d Cir. 1995), in which the plaintiff alleged that his constitutional rights were violated when supervisors asked him to submit to drug and alcohol testing in the absence of reasonable suspicion. *Id.* at 1565. The CBA in place between the plaintiff's union and his employer contained drug-testing policy provisions. *Id.* at 1566–67. The Third Circuit held that even where a drug-testing policy has been held to be constitutionally infirm, a public employee may not pursue a civil rights suit based upon that infirmity if the employee's union and the employer agreed to operate under that policy. *Id.* at 1570. The Board also cites *Brownlee v. City of Chicago*, 983 F. Supp. 776 (N.D. Ill. 1997), in which the plaintiff (an electrical mechanic apprentice) brought a § 1983 action against his city employer, claiming that the city violated his procedural due process rights by terminating him without notice and a hearing for allegedly violating the city's residency

requirement for employment. *Id.* at 777. The parties agreed that only career service employees possessed a protected property interest in continued employment, which, in turn, entitled them to a post-termination hearing. *Id.* at 780. The court held that the plaintiff's union had the power to consent to conditions of employment on its members' behalf—even if those conditions involved restrictions on constitutional rights that the individual employees would otherwise enjoy. *Id.* at 785. The right implicated in *Brownlee* was the plaintiff's property interest in employment, which the plaintiff's union relinquished by agreeing that electrical mechanic apprentices would have a four-year track to career service status during which time they would be at-will employees. *Id.* at 785–86. The present case differs from *Dykes* and *Brownlee* as the CBA here does not cover the situations alleged in the SAC—namely, where the Board's actions against Plaintiffs were not the result of a layoff necessitated by economic conditions or enrollment but instead were prompted by individual animus towards Plaintiffs. Therefore, the Board's argument is not a winning one.

The Board also contends that to the extent Plaintiffs attempt to conflate their 2012 layoffs with the 2010 and 2011 publications, to state a liberty claim, the stigmatizing information must be disclosed incident to the change in employment status. *See Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991). According to the Board, because Plaintiffs' layoffs (in July and October 2012) did not occur in conjunction with the allegedly stigmatizing public comments in 2010 and 2011, but rather pursuant to the express terms of the 2012 CBA, the passage of time between the publications and the layoffs also defeats Plaintiffs' liberty claims.

While the 2010 and 2011 publications provide important context regarding Plaintiffs' terminations, read in the light most favorable to Plaintiffs, the SAC's reputational harm claims are not based solely on those publications. The SAC alleges that when a teacher who has been laid off under the 2010 Board Resolution or the 2011 Layoff Policy seeks reemployment with a school,

the administrator and the district where the teacher is seeking employment are granted access to the teacher's previous ratings. This includes the most recent unsatisfactory rating for the teacher. (SAC ¶¶ 140, 141.)

**B.      Whether Passmore's Claims are Time-Barred**

The Board also argues that Passmore's § 1983 claims are time-barred because he was laid off in July 9, 2012, which is more than two years before the filing of this suit on October 10, 2014. Plaintiffs counter that July 9, 2012 is when Passmore got notice of the layoff but, as a result of his temporary assignment to the reassigned teacher pool, his termination was not finalized until the Board passed resolution 13-0626-RS9, which listed a termination date of June 30, 2013. (SAC ¶ 50; Ex. A to Pls.' Resp. to Def.'s Mot. to Strike, Dkt. No. 140-1.)

As discussed above, the statute of limitations period for § 1983 claims is two years in Illinois. The claim accrues when the plaintiff knows or should know that his constitutional rights have been violated. *Draper*, 664 F.3d at 1113. In procedural due process cases, a claim for deprivation of public employment accrues on the actual termination date of the employee and not on the date when the decision to lay off the employee is made. *Id.*; *see also Lawshe v. Simpson*, 16 F.3d 1475, 1480 (7th Cir. 1994).

Here, the SAC alleges that on July 9, 2012, Passmore was issued a notice of layoff stating that his position was no longer available due to a "drop in enrollment." (SAC ¶ 50, Dkt. No. 126.) He was advised that his position was "closed July 1, 2012" due to a drop in enrollment and because he was rated unsatisfactory for the 2011-2012 school year. (*Id.* ¶ 51.) The SAC also alleges that, "[b]etween the dates of his termination from Dunbar in July, 2012 until January 20, 2015, Mr. Passmore was unable to obtain any work other than as a substitute teacher." (*Id.* ¶ 54.) Thus, based on the allegations in the SAC, the injury about which Passmore complains is his

termination from the tenured position on July 9, 2012—and not the termination that occurred after his temporary assignment to the reassigned teachers pool. Viewed in the light most favorable to Passmore, the SAC alleges that his termination occurred in July 2012, as the layoff note indicates that his position was eliminated then. Thus, Passmore § 1983 claims in Counts I and II, based on the July 2012 termination, are dismissed as time-barred.[3]

### C. Claims Based on Layoffs Due to Ratings and Claims under the CBA

The Board next argues that the Court should dismiss Plaintiffs' § 1983 claims challenging layoffs due to "unsatisfactory" ratings under the doctrine of *stare decisis*. As an initial matter, the Board appears to confuse the doctrine of *stare decisis* with the law-of-the-case doctrine. *Stare decisis* bars a different party from obtaining the overruling of a decision; the law-of-the-case doctrine counsels adherence to earlier rulings in the same case. *See Bethesda Lutheran Homes & Servs. v. Born,* 238 F.3d 853, 858 (7th Cir. 2001). The Board argues that dismissal of the claims is warranted because this Court previously rejected the claims in its ruling on the motion to dismiss the FAC—that is a law-of-the-case issue. Plaintiffs do not provide specific response to the Board's argument but generally contend that the purpose of filing the SAC was to withdraw the class action allegations and that they are not attempting to revive any claims.

Given the Court's prior ruling limiting the scope of Plaintiffs' claims and Plaintiffs' current assertions that they are not attempting to revive withdrawn claims, the Court sees no reason to comb through the SAC looking for signs that they are attempting to revive previously dismissed claims and then force Plaintiffs to amend their complaint so that is it crystal clear that they are not trying to revive such claims. As the Court already has held, Plaintiffs' claims survive

---

[3] This does not include Passmore's reputational claims in Count III. Moreover, if Passmore desires to assert claims based on later-occurring actions by the Board, he may seek leave to amend the complaint to include such claims.

only to the extent they allege that the layoff label was a pretext for termination actually prompted by individual animus against each of them. This ruling still stands.

The Board also argues that because the Court previously held that the CBA was no longer at issue in this matter and that the 2012 CBA (not the 2007 CBA) applies, Plaintiffs' claims under the CBA should be dismissed under the doctrine of "*stare decisis*." Plaintiffs respond by arguing that the Court did not hold that the Board's past interpretations of the CBA were no longer relevant for ***any*** purpose in the litigation. According to Plaintiffs, the Court's prior ruling does not foreclose them from arguing that the 2007 CBA was the operative agreement for the events at issue here and, for at least some purposes, that the Board applied the 2007 CBA with respect to the unsatisfactory ratings given to Plaintiffs in June 2012. In essence, Plaintiffs seek to reserve the argument that (i) during the 2012 time period, the Board continued to apply the 2007 CBA to tenured teachers with unsatisfactory ratings, and (ii) that fact is probative of whether Plaintiffs' were let go under a pretext, regardless of whether the operative CBA created employment expectations sufficient to establish a constitutionally-protected property interest.

In denying the Board's motion to dismiss the FAC, the Court rejected Plaintiffs' argument that the 2007 CBA was the operative agreement for the purpose of defining the property interest. This Court instead ruled that the 2012 CBA governs Plaintiffs' claims, as the 2007 CBA, by its own terms, expired on June 30, 2012, which was before Plaintiffs were let go. *Id.* Later, in denying the Board's motion to join the CTU as an indispensable party, the Court reiterated that Plaintiffs have failed to state a claim based on a right to be protected from layoffs or a right to prevent the use of their performance ratings to determine their eligibility for a layoff. Thus, the layoff procedures established by the CBA are no longer at issue.

While the Board styles its present arguments as a motion to dismiss, it essentially seeks to strike allegations in the SAC related to the CBA that the Board views as inconsistent with the Court's prior ruling. Such action is not warranted, however. To the extent Plaintiffs allege that, despite the expiration of the 2007 CBA in June of 2012 and the entering into force of the 2012 CBA on October 24, 2012 (with the effective date of July 1, 2012), the Board still continued to follow the 2007 CBA for the teachers who got unsatisfactory ratings in June of 2012—such allegations may be relevant to establishing whether the stated reason for their termination was mere pretext. *See Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 427 (7th Cir.1992) (noting that employer's failure to comply with its own procedures for terminating an employee is indirect evidence of pretextual termination of the employee). Hence, such allegations will not be dismissed or stricken. That said, the Board need not worry that Plaintiffs will pursue theories previously dismissed by the Court. The Court's prior rulings still stand and will be enforced.

### D.    Allegations Pertaining to Unnamed Plaintiffs

Plaintiffs have withdrawn their class action allegations in the present case; they now proceed on an individualized basis. (Feb. 20, 2017 Minute Order, Dkt. No. 125; Pls.' Mot. for Leave to Amend ¶ 8, Dkt. No. 122.) Nonetheless, the SAC still describes certain actions that the Board took against other unnamed tenured teachers. (*See, e.g.*, SAC ¶¶ 1, 2, 6, 133–137, 148, 151, and 153–155, Dkt. No. 126.) The Board argues that the allegations related to the unnamed teachers should be stricken, as those allegations are now irrelevant and prejudicial to the Board because the Board continues to respond to discovery regarding them. Alternatively, the Board moves for a more definite statement under Federal Rule of Civil Procedure 12(e) arguing that the allegations regarding unnamed tenured teachers do not identify the individuals and thus are not particular enough to allow the Board to answer the allegations.

But allegations that other tenured teachers were terminated under the pretext of unsatisfactory performance ratings are not redundant, immaterial, impertinent, or scandalous matter—rather, such allegations provide circumstantial support for Plaintiffs' claims that they were let go under a similar pretext. The Court acknowledges the Board's concerns regarding potentially overbroad discovery requests and possible lack of relationship between the facts of the present case and termination of other teachers by the Board. However, such concerns can be addressed by tailoring the scope of discovery. Thus, there is no need to strike the allegations about the unnamed teachers.

Regarding the request for a more definite statement, Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Such a motion "must be made before filing a responsive pleading and must point out the defects complained of and the details desired." *Id.* Rule 12(e) is intended to strike "unintelligibility rather than want of detail." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 917 (N.D. Ill. 2016) (internal quotations omitted). And Rule 12(e) motions are generally disfavored, so "courts should grant such motions only if the complaint is so unintelligible that the defendant cannot draft responsive pleading." *Id.* (internal quotations omitted).

Notably, the Board was able to answer allegations in the FAC that are similar to the very allegations in the SAC that the Board now claims lack sufficient particularity. (*See, e.g.*, Def.'s Answer to FAC ¶¶ 1, 2, 133, 134, 151, 160, 162–164, Dkt. No. 108.) Yet the Board now seeks details regarding the "other tenured teachers." But more to the point, at this stage in the case, rather than requiring a more definite statement, the better approach would be for the Board to

request whatever information they need through discovery. Therefore, the Board's motion for a more definite statement is denied.

### III. Plaintiffs' Motion to Issue Notice to Absent Class Members

The Court next considers Plaintiffs' motion to issue notice to absent class members. After this Court's prior ruling cast doubt on whether this suit is appropriate for class treatment, Plaintiffs moved to amend their complaint to remove the class allegations and also to issue notice to absent class members pursuant to Federal Rule of Civil Procedure 23(d)(1). (Dkt. No. 122.) Federal Rule of Civil Procedure 23(d)(1)(B) provides that:

> In conducting an action under this rule, the court may issue orders that:
> . . .
> (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:
> (i) any step in the action;
> (ii) the proposed extent of the judgment; or
> (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action . . . .

The rule clearly sets out the notice's purpose—"to protect class members and fairly conduct the action." *Id.* The rule also provides that the notice could be given "to some or all class members." *Id.* The Advisory Committee Notes (1966) also emphasize that Rule 23 notice is available fundamentally for the protection of class members or for the fair conduct of the action and "should not be used merely as a device for the undesirable solicitation of claims."

Seventh Circuit caselaw provides limited guidance on the issue of when, if ever, notice under Rule 23(d) is warranted when no motion to certify a class has been filed. However, *Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002), offers some direction. The *Culver* court addressed a somewhat related question—whether the then-effective version of Federal Rule of Civil Procedure 23(e) mandated notice to absent class members when a class had been certified initially but then decertified. *Id.* at 910. Notably, *Culver* was decided prior to the Rule 23(e)

amendment that clarified that the rule applies only to certified classes,[4] so whether the Rule 23(e) notice requirement only applied to certified classes was unclear at that point. The *Culver* court's analysis focused on the prejudice to absent class members stemming from the "danger that the statute of limitations on their claims [can] run without their knowing it until it is too late." *Id.* at 914. The Seventh Circuit held that decertification had the same effect on the members of the class as dismissal of the class action, as the running of the statute of limitations was concerned. *Id.* at 915. The argument that class members "probably were unaware of the suit and therefore would not be prejudiced by its demise" was not good enough to justify not notifying class members of the decertification. *Id.* The Seventh Circuit's reading of Rule 23(e) was broad—the court held that the rule was not limited to certified classes as the "prejudice to class members from a dismissal of which they [might] be unaware [was] the same in either case" and "[e]ven cases that refuse[d] to apply Rule 23(e) to putative class actions require[d] notice to the members of the putative class if it seem[ed] clear that otherwise their interests would be harmed." *Id.* at 914–15. Therefore, "[t]he judge's duty [was] to order notice unless the risk of prejudice to absent class members [was] nil and to review for adequacy the form of notice proposed by class counsel in response to the order." *Id.* at 915.

While *Culver* is instructive to the extent it directs courts to analyze thoroughly prejudice to absent class members when deciding whether or not to issue notice, the case cannot be considered divorced from its context. The class in *Culver* was initially certified but decertified six years later; the case was then dismissed due to the mootness of the named plaintiff's claim. *Id.* at 910. Under such circumstances, the absent class members' awareness and reliance on the suit was likely and thus the risk of prejudice to them was high. *Cf. Edwards v. Clendenon Henney & Hoy*, No. IP02-

---

[4] *See, e. g., Buller v. Owner Operator Indep. Driver Risk Retention Grp., Inc.*, 461 F. Supp. 2d 757, 764 (S.D. Ill. 2006) (describing the differences between the pre- and post-amendment Rule 23(e) language).

0271-CTK, 2003 WL 21254438, at *2 (S.D. Ind. Mar. 17, 2003) (declining to issue notice under Rule 23(e) where class certification was denied and no formal notice had been sent to the class, and reading *Culver* as limited to situations in which the class members received formal class action notice and might rely on that notice). Moreover, the *Culver* court made clear that "if it is plain that there is no prejudice, violation of the rule [23(e)] is harmless and compliance will not be ordered." *Culver*, 277 F.3d at 915. For example, notice might not be required where the class size is small, the absent class members are likely to learn of the dismissal through other channels, the early dismissal is without prejudice, there is a lack of possible collusion, and the danger of the statute of limitations expiring is small. *Id*. Hence, the *Culver* court acknowledged that consideration of the specific circumstances of the class action and the potential prejudice to class members is needed.

In *Puffer v. Allstate Insurance Co.*, 614 F. Supp. 2d 905, 910–12 (N.D. Ill. 2009), the district court relied on *Culver* in considering whether to order notice under Rule 23(d)(1) regarding the denial of class certification. The *Puffer* court noted that *Culver* did not require a certainty of prejudice to absent class members in order for the district court to issue notice. *Id.* at 912. Although the court had not issued any formal notice of the class action lawsuit to putative class members, the court held that there was ample evidence that putative class members were aware of the lawsuit and that such awareness gave "rise to the risk—greater than nil—that some of them m[ight] lose any right to pursue individual claims without knowing it by expiration of the statute of limitations." *Id.* In particular, the court noted that certain putative class members received memoranda regarding the retention of the documents for the suit and several letters from plaintiffs' counsel; the counsel's website provided information on the lawsuit and referred visitors to their letters; the parties had obtained declarations from 85 putative class members (about five

percent of the putative class) in connection with class certification briefing; and even the defendant agreed that many putative class members knew about the lawsuit. *Id.* at 912–14. In light of this evidence, the *Puffer* court exercised its authority under Rule 23(d)(1) to direct that notice be given to putative class members. *Id.* at 915.

On the other hand, in *Balschmiter v. TD Auto Fin. LLC*, No. 13-CV-1186-JPS, 2015 WL 2451853, at *7–8 (E.D. Wis. May 21, 2015), the court found that notice under Rule 23(d) would not be appropriate where the plaintiff's motion for class certification was denied and the contact information for putative class members was subject to a protective order. Similar to *Culver* and *Puffer*, the *Balschmiter* court looked at whether putative class members would be prejudiced without notice. However, the court also considered the dangers of plaintiff's counsel using the notice for counsel's own benefit—to identify new clients and thereby recoup expenses related to the attempt to certify the class or to use the notice as leverage to force the defendant to settle. *Id.* at *7. The court determined that while "Rule 23(d) may provide an avenue to order (or permit) discretionary notice to putative class members in certain scenarios," "the limited circumstances where notice under Rule 23(d)(1)(B)(ii) might be occasioned, [were] not present" as the plaintiff had not offered a scintilla of evidence that putative class members were aware of or relied on the case to protect their rights, or would otherwise be prejudiced. *Id.*

The present case differs from those discussed above or cited by the parties in their briefs because Plaintiffs here have not filed a motion for class certification. Thus, the argument that absent class members are likely to have relied on this suit is weaker here. The Court is also mindful of the concern that allowing notice in a suit such as this might suggest that Rule 23(d) notice is appropriate in any suit where Plaintiffs' complaint includes some class allegations.

Moreover, Plaintiffs have offered little evidence to support their assertions that absent class members were aware of and relied on the suit. For example, in their motion to issue notice, Plaintiffs state that "numerous absent class members have been made aware of the pendency of this suit" because the Board's decision to utilize performance ratings in determining the order of layoffs was covered by the local media and the present suit receiving media coverage. In support, Plaintiffs point to a 2010 Chicago Tribune article discussing the change in the Board's layoff policy and a 2016 Law360 article describing this Court's ruling denying the Board's motion to dismiss the FAC. (Ex. C to Pls.' Mot. to Amend FAC, Dkt. No. 122-3; Ex. D to Pls.' Mot. to Amend FAC, Dkt. No. 122-4.) To begin, it is illogical to assume that a Chicago Tribune article (discussing the Board's policy in general) published years before this lawsuit was filed indicates absent class members' awareness and reliance on the lawsuit. The Law360 article is also of no help to Plaintiffs because, while the article states that the Board "lost its bid [] to toss a proposed class action in Illinois federal court alleging it denied tenured teachers due process rights before being laid off in 2012," it then goes on to highlight the individual nature of Plaintiffs' claims, explaining that "the terminations were a result of '*individual animus*' and not economic necessity or enrollment" and that Plaintiffs brought this action alleging "they were terminated in retaliation for *speaking up about issues within their schools*." (Ex. D to Pls.' Mot. to Amend FAC at 2, Dkt. No. 122-4 (emphasis added).) Moreover, Law360 is a publication aimed at legal professionals, and there is no evidence that any absent class members (who are teachers) saw either publication.

Plaintiffs' motion also represents that Plaintiffs' counsel has spoken to "numerous putative class members," the Board's counsel had contact with "numerous building principals" regarding this lawsuit, and the CTU is aware of the suit by virtue of the prior motion to join. But these statements have no factual or evidentiary support in Plaintiffs' motion. There are no details

regarding the conversations Plaintiffs' counsel allegedly had with "numerous class members" and no affidavits attesting that the contacts with putative class members in fact occurred. There is also no support for Plaintiffs' belief that the Board's contact with school principals in its effort to investigate the case and comply with document preservation requirements would result in absent class member awareness and reliance on this lawsuit. Plaintiffs also provide no explanation why the motion to join the CTU supports their argument, considering that the motion was denied on the basis that "Plaintiffs' claims [] survive only to the extent they allege that the layoff label was a pretext for terminations actually prompted by *individual animus against each of them*" and "the layoff procedures established by the collective bargaining agreement are no longer at issue and this action threatens no substantial impact upon Union membership."[5] (Feb. 20, 2017 Order at 1, Dkt. No. 124 (emphasis added).)

Plaintiffs' reply brief contains more detail—it states that Plaintiffs' counsel and their staff have interviewed 13 absent class members and that:

> During these interviews, these persons were advised of the nature of the claims in the lawsuit, that the lawsuit was filed as a class action, that they had been identified as putative class members in the Class List produced by the Defendant, and that the purpose of the interviews was to gather information relevant to Plaintiffs' Motion for Class Certification. In addition to these direct contacts, Plaintiffs' counsel communicated with and/or have left voice mail messages for approximately 15 other class members to schedule interviews in this matter. These persons have notice and are aware of this litigation and more likely than not relied on within the meaning of *Culver.*

(Pls.' Reply at 5, Dkt. No. 131.) However, no affidavits are attached in support of these statements. And no further details are provided that would support the notion that absent class

---

[5] The Court also notes that despite Plaintiffs' counsel prior assertions that the CTU "has advertised this [suit] through their website that has reached thousands and thousands of members" (Ex. B. to Def.'s Resp. at 5, Dkt. No. 127-2), it appears that no such publication actually has taken place. (Ex. A to Def.'s Resp., Dkt. No. 127-1 (stating that Plaintiffs' counsel have searched the CTU's magazine but did not locate any articles about the present suit).)

members might have relied on the present suit—for instance, there is no indication when the conversations took place, whether the absent class members were interested in pursuing litigation, or whether any teachers even returned the voice messages left by Plaintiffs' counsel. *Cf. Radmanovich v. Combined Ins. Co. of Am.*, 271 F. Supp. 2d 1075, 1077–78 (N.D. Ill. 2003) (holding that *Culver* required issuance of the notice under Rule 23(e) following the denial of the class certification motion where Plaintiffs' counsel obtained declarations from over 100 potential class members in support of her motion for class certification and where there was additional awareness of the lawsuit through media). In sum, the Court does not find that there is sufficient evidence to warrant issuance of notice to all absent class members here.

## IV. Plaintiffs' Motion to Set Aside or Modify Magistrate Judge's Order

Plaintiffs also ask this Court to set aside or modify the Magistrate Judge's order that suspended briefing on the Board's motion to quash Plaintiffs' deposition subpoenas and Plaintiffs' motion to compel pending this Court's ruling on the Board's motion to strike and dismiss portion of the SAC. Because the Court has now addressed the Board's motion in this opinion, Plaintiffs' motion to set aside or modify Magistrate Judge's order is denied as moot.

## V. Plaintiffs' Motion to Strike Certain Affirmative Defenses

The Court next addresses Plaintiffs' motion to strike affirmative defenses to the second amended complaint.[6] (Dkt. No. 141.) A court "may strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). A three-part test is used to determine the sufficiency of affirmative defenses: the matter must be properly pled as an affirmative defense, it must comply with Federal Rules of Civil Procedure 8 and 9, and it must withstand a Rules 12(b)(6) challenge. *See World*

---

[6] The Board has withdrawn its affirmative defenses Nos. 1, 3, 9, and 10. (Def.'s Resp. to Pls.' Mot. to Strike at 1, Dkt. No. 153.) And thus only affirmative defenses Nos. 5, 7, and 8 remain at issue.

*Kitchen, LLC v. Am. Ceramic Soc'y*, No. 12-CV-8626, 2015 WL 3429380, at *1 (N.D. Ill. May 27, 2015).

The Board's affirmative defense No. 5 avers that "[a]ny injury caused to Plaintiffs was due in whole or in part to Plaintiffs' own actions, inaction and/or negligence." (Def.'s Answer to SAC at 43, Dkt. No. 137.) Plaintiffs argue that this defense fails to provide notice of any particular act or omission by any Plaintiff. In response, the Board clarifies that affirmative defense No. 5 refers to Plaintiffs failure to mitigate damages and, as such, is sufficiently pleaded. (Def.'s Resp. to Pls.' Mot. to Strike at 2–3, Dkt. No. 153.) Alternatively, the Board asks for permission to amend the defense to state that "[a]ny injury caused to Plaintiffs was due in whole or in part to Plaintiffs' own actions, inaction and/or negligence, in that the teaching performance of Plaintiffs Sapia, Passmore and Hall was unsatisfactory; and Plaintiffs Sapia, Passmore and Hall failed to timely pursue other positions that were available to them after layoff." (Ex. A to Def.'s Resp. to Pls.' Mot. to Strike at 1, Dkt. No. 153-1.)[7] It appears that the proposed amendment further clarifies the meaning of the Board's defense and moots Plaintiffs' motion regarding affirmative defense No. 5. Thus, the Court grants the Board leave to amend its affirmative defense No. 5 and denies Plaintiffs' motion to strike defense No. 5 as moot.

The Board's affirmative defense No. 7 avers that "[t]o the extent Plaintiffs' claims were or should have been raised in prior litigation, including in Northern District of Illinois Case No. 10-CV-4852, such claims are barred by the doctrine of *res judicata*." (Def.'s Answer to SAC at 43, Dkt. No. 137.) Plaintiffs argue that this defense should be stricken because two elements of *res judicata*, namely the identity of the parties and the identity of the causes of action, are not met here. This affirmative defense is properly asserted. But for the reasons discussed above by the

---

[7] Plaintiffs point out that the Board has already asserted a failure to mitigate defense. (Def.'s Answer to SAC at 43, Dkt. No. 137.)

Court, the defense cannot be sustained. Therefore, Plaintiffs' motion to strike affirmative defense No. 7 is denied as moot.

The Board's affirmative defense No. 8 states that "[t]o the extent Plaintiffs' claims were or should have been raised in prior litigation, including in Northern District of Illinois Case No. 10-CV-4852, such claims are barred by the doctrine of issue preclusion." (Def.'s Answer to SAC sat 44, Dkt. No. 137.) Plaintiffs argue that affirmative defense No. 8 should be stricken because it is hypothetical and does not identify any particular issue that arose in the prior suit. Plaintiffs also point out that Plaintiffs were not parties to the 2010 suit, could not have been parties because they had not been "laid off" at the time, and were not in privity with the CTU. The Board responds that all three counts alleged in the SAC arise from the same layoff policy challenged in the CTU case, that affirmative defense No. 8 alleges claim preclusion, and that "Plaintiffs' claims are barred under the doctrine of claim preclusion for the same reasons they are barred as *res judicata*." (Def.'s Resp. to Pls.' Mot. to Strike at 5, Dkt. No. 153.) Nonetheless, to the extent any additional factual support is needed, the Board seeks leave to amend affirmative defense No. 8 to state that "[t]o the extent Plaintiffs' claims were or should have been raised in prior litigation, including in Northern District of Illinois Case No. 10-CV-4852, such claims are barred by the doctrine of issue preclusion, because Plaintiffs are in privity with the Chicago Teachers Union and the 'layoff due to unsatisfactory rating claims' therein asserted on their behalf arose from the same operative facts." *Id.*

The term *res judicata* may be used generally to refer to both claim and issue preclusion, or it can be used in a specific sense to mean only claim preclusion. *See Hayes v. City of Chicago*, 670 F.3d 810, 814 n. 1 (7th Cir. 2012). Issue and claim preclusion are doctrinally related but are subject to different tests. *Bernstein v. Bankert*, 733 F.3d 190, 225 (7th Cir. 2013). Under the

doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Barr v. Bd. of Trustees of W. Illinois Univ.*, 796 F.3d 837, 839 (7th Cir. 2015); *see also Arrigo v. Link*, 836 F.3d 787, 798–99 (7th Cir. 2016). Claim preclusion applies when there is: (1) an identity of the parties in the two lawsuits; (2) a final judgment on the merits in the first lawsuit; and (3) an identity of the causes of action. *Bernstein*, 733 F.3d at 226. Issue preclusion, a narrower doctrine than claim preclusion, bars relitigation of a factual or legal issue if: (1) the issue is the same as that involved in the prior action, (2) the issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom the issue preclusion is invoked was fully represented in the prior action. *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 270 (7th Cir. 2017).

Here, it is unclear what affirmative defense the Board is actually trying to raise—that of the issue preclusion or claim preclusion. Affirmative defense No. 8, states that the "claims are barred by the doctrine of ***issue preclusion***." (Def.'s Answer to SAC at 44, Dkt. No. 137; Def.'s Resp. to Pls.' Mot. to Strike at 5, Dkt. No. 153.) But the language of the defense (including the amended version proposed by the Board) also state that Plaintiffs' claims are barred to the extent they "were or ***should have been raised*** in prior litigation." (Def.'s Answer to SAC at 44; Def.'s Resp. to Pls.' Mot. to Strike at 5 (emphasis added).) Moreover, in its response to Plaintiffs' motion to strike, the Board states that affirmative defense No. 8 alleges "claim preclusion" and that "Plaintiffs' claims are barred under the doctrine of claim preclusion for the same reasons they are barred as *res judicata*." (Def.'s Resp. to Pls.' Mot. to Strike at 3, 5.)

To the extent the Board seeks to raise the defense of claim preclusion, which appears to be the case here, Plaintiffs' motion is denied as moot. As discussed by the Court above, the claim

preclusion argument (also known as *res judicata*) fails as a matter of law no matter the language used to assert it.

## CONCLUSION

For the reasons stated above, the Court denies the Board's motion for judgment on the pleadings. (Dkt. No. 188.) The Court grants in part and denies in part the Board's motion to strike and dismiss portions of Plaintiffs' SAC. (Dkt. No. 136.) The motion is granted to the extent it asks the Court to dismiss Passmore's due process claims in Counts I and II based on July 2012 layoff; however, if Passmore desires to assert his claims based on the later-occurring actions by the Board, he may seek a leave to amend the complaint to include such claims. The motion is denied to the extent it asks the Court to dismiss Plaintiffs' reputational harm claims, claims based on layoffs due to ratings, and claims under CBA. The Court also denies the motion to the extent it seeks to strike allegations pertaining to unnamed plaintiffs and asks for a more definitive statement on those claims. The Court denies Plaintiffs' motion to issue notice to absent class members. (Dkt. No. 122.) The Court denies as moot Plaintiffs' motion to set aside or modify Magistrate Judge's May 15, 2017 order. (Dkt. No. 160.) The Court denies Plaintiffs' motion to strike affirmative defenses (Dkt. No. 141) as moot but grants the Board leave to amend affirmative defense No. 5.

ENTERED:

Dated:  March 31, 2018

_____
Andrea R. Wood
United States District Judge