**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Bennett Sapia, Joel Passmore and Annette Hall | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 14-CV-7946 |
| | ) | |
| Board of Education of the City of Chicago, | ) | Judge Andrea R. Wood |
| a body politic and corporate, | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES
AND JURY DEMAND TO THIRD AMENDED COMPLAINT**

Defendant, Board of Education of the City of Chicago (the "Board"), through counsel, files

this Answer, Affirmative Defenses and Jury Demand in response to Plaintiffs' Third Amended

Complaint (Docket #21, the "Complaint") and states:

**1.      In violation of the Due Process Clause of the Fourteenth Amendment of the United
States Constitution, defendant Board of Education of the City of Chicago and its officers
("BOE" or "defendant"), unlawfully dismissed Bennett Sapia ("Mr. Sapia"), Joel Passmore
("Mr. Passmore"), Ms. Annette Hall ("Ms. Hall"), for cause without offering them notice or
an opportunity for a hearing to challenge the basis of their terminations. From at least 2012
and continuing through the present through its continuing, intentional and unrelenting policy
and practice, Defendant has dismissed other similarly-situated teachers for cause without
offering them notice and an opportunity for a hearing to challenge the basis of their
terminations.**

**ANSWER:**

The Board denies the allegations in Paragraph 1.

**2.      In approximately October 2014, notwithstanding the pendency of this lawsuit
challenging defendant's ongoing policy and practice of violating the due process rights of
tenured teachers, defendant removed over 30 tenured teachers from their permanent
appointments, due to their "unsatisfactory" rating and without any hearing or due process.**

**ANSWER:**

The Board admits the allegations in Paragraph 2 of the Complaint that this suit has been pending since

October 10, 2014, but denies Plaintiffs served the Board with this suit before October 31, 2014. The

Board denies the remaining allegations in that Paragraph.

**3**.     **Plaintiffs bring this suit individually on their own behalf.**

**ANSWER:**

The Board admits the allegations in Paragraph 3 of the Complaint that Plaintiffs bring this suit

individually.

**4.     Defendant's actions deprived Plaintiffs of their property rights in continued employment and in doing so, circumvented mandatory Illinois process and laws guaranteeing tenured teachers a right to notice and a dismissal hearing and dismissal only for cause. See, 105 ILCS 5/34-85.**

**ANSWER:**

The Board denies the allegations in Paragraph 4 of the Complaint, including that the Board has acted

unlawfully.

**5.     Since at least 2010, Defendant has perpetrated a policy and practice of dismissals "for cause" under the disguise of "layoffs" or "reductions in force", including but not limited to claimed economic exigencies and drops in student enrollment. While publicly stating that positions have been closed for budgetary and demographic reasons, Defendant has utilized a "layoff policy" based upon alleged shortcomings and deficiencies in a teacher's performance or for pretextual reasons when determining the particular teachers to be discharged, effectively resulting in a "for cause" dismissal.**

**ANSWER:**

The Board denies the allegations in Paragraph 5 of the Complaint, including that the Board has acted

unlawfully.

**6.     Mr. Sapia, Mr. Passmore, Ms. Hall and other teachers who were terminated pursuant to defendant's continuing disguised for cause "layoff policy," have permanent black marks on their records. Defendant's policy has adversely affected and/or ended the career of plaintiffs.  At the same time, defendant's policy denied Plaintiffs and other tenured teachers the statutorily mandated opportunity to remediate alleged performance deficiencies, or the constitutionally guaranteed opportunity chance to challenge Defendant's accusations regarding their performance.**

**ANSWER:**

The Board denies the allegations in Paragraph 6 of the Complaint, including that Plaintiffs were

"terminated" pursuant to any "disguised" "for cause" policy, that Plaintiffs "have permanent black

marks on their records," their careers were "ended" or that they were denied an opportunity to challenge their performance ratings, and that the Board has acted unlawfully.

**7.      Under 42 U.S.C. § 1983, plaintiffs bring this action to assert their constitutional rights to Due Process. Plaintiffs have been stripped of their opportunity to correct any alleged performance deficiencies, were denied notice of potential termination and pre or post-termination hearings, or procedural due process protections required by the Fourteenth Amendment. Accordingly, Plaintiffs seek relief from the Court to make them whole for their loss in a property interest granted by the Illinois School Code, and ordering each plaintiff to be made whole.**

**ANSWER:**

The Board admits the allegations in Paragraph 7 of the Complaint that Plaintiffs assert claims pursuant to 42 U.S.C. § 1983, claim alleged Due Process violations and seek certain relief. The Board denies the remaining allegations in that Paragraph, including that the Board has acted unlawfully toward Plaintiffs and that Plaintiffs are entitled to the requested relief or to any relief whatsoever.

**8.      Plaintiffs also seek a declaratory judgment finding Defendant's continuing "layoff policy" in violation of the Due Process clause of the 14th Amendment of the United States Constitution, both on its face and as applied to Plaintiffs.**

**ANSWER:**

The Board admits the allegations in Paragraph 8 of the Complaint that Plaintiffs seek the stated relief. The Board denies the remaining allegations in that Paragraph, including that the Board has acted unlawfully toward Plaintiffs and that Plaintiffs are entitled to the requested relief or to any relief whatsoever.

**Parties**

**9.      At all relevant times, Mr. Sapia, Mr. Passmore and Ms. Hall were members of the Chicago Teachers Union ("CTU").**

**ANSWER:**

The Board admits the allegations in Paragraph 9 of the Complaint.

**10.      At all relevant times, Mr. Sapia, Mr. Passmore and Ms. Hall were excellent teachers.**

**ANSWER:**

The Board denies the allegations in Paragraph 10 of the Complaint.

**11.     Defendant BOE is an educational employer within the meaning of Section 2(a) of the Illinois Educational Labor Relations Act, 115 ILCS 5/2(a). BOE is the entity charged by law with maintaining a free school system within the city of Chicago.**

**ANSWER:**

The Board admits the allegations in the first sentence of Paragraph 11 of the Complaint. The Board

admits it is a municipal "body politic and corporate" and is a "school district which shall maintain a

system of free schools under the charge of a board of education" pursuant to 105 ILCS 5/34-2.

**Jurisdiction and Venue**

**12.     This Court has federal question jurisdiction over Count I under, 28 U.S.C. § 1331, as well as under 28 U.S.C. § 1343(a)(3)-(4) for claims arising under 42 U.S.C. § 1983, the Civil Rights Act of 1871, and under 28 U.S.C. § 2201, the Declaratory Judgment Act.**

**ANSWER:**

The Board admits the allegations in Paragraph 12 of the Complaint, but denies it has acted unlawfully

and that Plaintiffs are entitled to the requested relief or to any relief whatsoever.

**13.     This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a). Count II arises under the laws of the State of Illinois and claims that defendant unlawfully deprived plaintiffs of their tenure rights guaranteed under 105 ILCS 5/34-84.**

**ANSWER:**

The Board denies the allegations in Paragraph 13 of the Complaint, but admits the Court has federal

question jurisdiction over Count II pursuant to 28 U.S.C. §1331, as Plaintiffs purport to assert a claim

under 42 U.S.C. §1983.

**14.     Venue is proper under 28 U.S.C. § 1391(b) as defendant resides in this judicial district and a substantial part of the events involved occurred within this judicial district.**

**ANSWER:**

The Board admits the allegations in Paragraph 14 of the Complaint, but denies the "events" at issue

occurred as described by Plaintiffs in the Complaint.

*A. Plaintiff's Sapia's Termination*

**15.**     **Mr. Sapia is an Illinois Resident. He has a Masters of Arts in Education degree from St. Xavier University and Bachelor of Fine Arts degrees from the University of Illinois.**

**ANSWER:**

The Board admits the allegations in Paragraph 15 of the Complaint are consistent with information

Sapia reported to the Board in the course of his employment.

**16.**     **Mr. Sapia has been an art teacher since 1992. He was employed as an art teacher at John F. Kennedy High School by Defendant from September 1996 through October 10, 2012, when he was terminated from his position.**

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations

in Paragraph 16 of the Complaint that Sapia "has been an art teacher since 1992." The Board admits

the allegations in that Paragraph that it employed Sapia as an art teacher at John F. Kennedy High

School from September 1996 through October 10, 2012. The Board denies the remaining allegations

in that Paragraph, including that Sapia was "terminated" from his position.

**17.**     **Mr. Sapia is a skilled and established artist.**

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations

in Paragraph 17 of the Complaint.

**18.**     **Pursuant to Collective Bargaining Agreements (CBA) in effect from 1996 - 2010, between Defendant BOE and the CTU, tenured teachers are formally evaluated every two years.**

**ANSWER:**

The Board denies the allegations in Paragraph 18 of the Complaint, as not all tenured teachers "are

formally evaluated every two years."

**19.**     **Between 1998 and 2010, plaintiff's ratings were all excellent or superior, except for one rating of "satisfactory" in 2002.**

**ANSWER:**

The Board admits the allegations in Paragraph 19 of the Complaint with respect to Sapia.

**20.      Beginning in October 2011, and continuing through October 2012, Mr. Sapia was outspoken about problems with the working conditions at Kennedy High School and advocated publically [sic] for the termination of the Principal, George Szkapiak.**

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations

in Paragraph 20 of the Complaint. However, the Administrative Law Judge who presided at the Illinois

Educational Labor and Relations Board found there was no evidence that Sapia had engaged in

protected activity, there was no evidence Principal Szkapiak was aware of any such conduct if it did

occur, and that Principal Szkapiak issued Sapia's "Unsatisfactory" rating before any alleged protected

activity, so that rating could not have resulted from protected activity. 30 PERI ¶152, 30 Pub.

Employee Rep. for Illinois ¶152, 2013 WL 7096514, at 21.

**21.      On or about February 1, 2012, Mr. Szkapiak observed Mr. Sapia's classroom, allegedly for the purpose of rating his teaching performance. Mr. Szkapiak held a post- observation conference with Mr. Sapia and alleged the following observations of his performance:**

**a.      Mr. Sapia did not provide lesson plans to the students**
**b.      Mr. Sapia did not establish the learning objectives during his lesson**
**c.      Mr. Sapia's lesson was at an inappropriate grade level for high school students**
**d.      Mr. Sapia did not enforce school rules requiring students to wear I.D. badges**
**e.      Mr. Sapia responded to a student's request for supplies in a "monotone voice."**
**f.      Mr. Sapia lacked enthusiasm.**

**ANSWER:**

The Board admits the allegations in Paragraph 21 of the Complaint that Principal Szkapiak observed

Sapia's classroom on February 19, 2012 for the purpose of rating his teaching performance, that

Principal Szkapiak held a post- observation conference with Sapia, that Principal Szkapiak observed,

among other things: Sapia did not establish the learning objectives during his lesson, Sapia's lesson

was at an inappropriate grade level for high school students (*i.e.*, he had high school students glue

popsicle sticks), and Sapia used a monotone voice and lacked enthusiasm. The Board denies the

remaining allegations in that Paragraph.

**22.    On or about March 15, 2012, Mr. Szkapiak issued Mr. Sapia an E-1 notice, "Report of Lowering Teacher's Efficiency Rating." See Exhibit A, attached. The notice stated that Mr. Sapia's rating would be lowered from a "Superior" to "Unsatisfactory." Defendant's performance-based justification for Mr. Sapia's lowered rating stated: "Currently Mr. Sapia has demonstrated poor instructional efficacy, poor lesson planning and low expectations for his students. He does not establish relevance for students and shows no enthusiasm for teaching. Mr. Sapia also has poor classroom management."**

**ANSWER:**

The Board admits the allegations in Paragraph 22 of the Complaint.

**23.    The E-1 notice also provided several performance-based suggestions on how Mr. Sapia could improve his ratings, set forth as follows: "Mr. Sapia must plan more effectively for instruction, raise his level of expectations for student and increase his ability to manage a classroom. Mr. Sapia needs to deliver lessons at the appropriate level of rigor for students in his classes. Ms. Sapia also needs to show students how exciting Art can be through his actions in his classroom." Exhibit A.**

**ANSWER:**

The Board admits the allegations in Paragraph 23 of the Complaint.

**24.    On or about April 17, 2012, Mr. Szkapiak held a post-observation conference with Mr. Sapia and made the following observations of his performance:**
**a.    Mr. Sapia did not provide lesson plans to students**
**b.    Mr. Sapia did not showcase examples of the assigned project to students**
**c.    Mr. Sapia did not state a valid objective for the lesson to his students**
**d.    Mr. Sapia's lesson was not at the appropriate grade level for the students because   it did not create a sense of urgency in the students**
**e.    Mr. Sapia did not provide students with a grading rubric for the lesson**
**f.    Mr. Sapia was not able to control the volume of the students in his classroom**
**g.    Mr. Sapia was not able to control the topic of conversation amongst the students   for the entire class period**
**h.    Mr. Sapia was not able to control the pace at which students finished the lesson**
**i.    Mr. Sapia did not adequately compliment students or sufficiently acknowledge exemplary work.**

**ANSWER:**

The Board admits the allegations in Paragraph 24 of the Complaint that Principal Szkapiak held a

post-observation conference with Sapia at which he told Sapia he observed the following: poor

planning for lessons, work that was below grade level (*i.e.*, having high school students glue popsicle

sticks), classroom conversations that were not relevant to the class, students not starting to work until 30 minutes into class, poor classroom management, and a lack of enthusiasm by the teacher, as evidenced in part by a monotone voice. The Board denies the remaining allegations in that Paragraph.

**25.** **On or about June, 2012, Mr. Skzapiak formally issued Mr. Sapia an "Unsatisfactory" rating for the 2012 school year, the first such rating in Mr. Sapia's 14+ year career as a teacher.**

**ANSWER:**

The Board admits the allegations in Paragraph 25 of the Complaint with respect to Sapia's teaching career with the Board.

**26.** **On or about October 10, 2012, Defendant issued Mr. Sapia a layoff notice. Exhibit B.**

**ANSWER:**

The Board admits the allegations in Paragraph 26 of the Complaint.

**27.** **On or about October 10, 2012, Defendant issued Mr. Sapia a letter stating that the reason he was terminated was "low enrollment."**

**ANSWER:**

The Board denies the allegations in Paragraph 27 of the Complaint that it issued a letter to Sapia on October 10, 2012 in which it stated Sapia was "terminated." The Board admits it issued a letter to Sapia on October 12, 2012 informing him that his position was no longer available due to a drop in school enrollment and that he would be assigned to a reassigned teacher pool in which he would continue to receive his regular salary and benefits. The Board denies the remaining allegations in that Paragraph.

**28.** **Mr. Sapia had 35 students in each of his classes at the time he received the layoff notice.**

**ANSWER:**

The Board denies the allegations in Paragraph 28 of the Complaint.

**29.** **On or about November 19, 2012, Defendant published its database of open positions, including a job posting for an art position at Kennedy High School, and subsequently hired an art teacher to replace Mr. Sapia.**

**ANSWER:**

The Board admits the allegations in Paragraph 29 of the Complaint that it posted open teaching

positions in November 2012. The Board denies the remaining allegations in that Paragraph, including

that it hired a teacher who "replaced" Sapia. Rather, after the drop in enrollment at Kennedy which

caused Sapia's layoff, Kennedy received State General School Aide funding which permitted it to hire

a teacher with credentials to teach both music and art—a combination Sapia did not have.

**30.     On or about June 5, 2012, [sic] Mr. Sapia filed a union grievance against defendant, alleging violations of the effective CBA as a result of his selection for layoff, despite less senior teachers being retained.**

**ANSWER:**

The Board denies the allegations in Paragraph 30 of the Complaint that Sapia's layoff was a "violation[]

of the effective CBA." The Board admits the remaining allegations in that Paragraph.

**31.     The effective CBA between Defendant Board of Education and the Chicago Teachers Union affecting plaintiffs' unsatisfactory ratings, alleged performance issues and "layoffs" or for cause dismissals was the 2007-22 CBA.  The CBA states that layoffs are to occur in order of seniority and performance is not a factor BOE can take into account.**

**ANSWER:**

The Board denies the allegations in paragraph 31.

**32.     For all CTU members like Mr. Sapia, Ms. Hall and Mr. Passmore who received a performance rating at the end of the 2012 school year but who experienced a "lay off" due to the Unsatisfactory rating or alleged performance issues, in fact and practice, the BOE and CTU applied the 2007-12 CBA to assessing the merits of their grievances.  Under the 2007-12 CBA, Mr. Sapia could not be considered for layoff.**

**ANSWER:**

The Board denies the allegations in paragraph 32.

**33.     BOE did not provide remediation to Mr. Sapia because it was obligated to conduct more observations of Mr. Sapia in the 2012-13 school year to warrant termination for cause. BOE failed to conduct the additional observations.**

**ANSWER:**

The Board denies the allegations in paragraph 33.

**34. At or shortly after the time of Mr. Sapia's termination for alleged "drop in enrollment," there were 160 students sitting in his art class without a teacher. Instead, a substitute teacher was covering the class. Shortly after his layoff, the position was then "opened" and filled by someone else. The alleged drop in enrollment was a pretext to discharge Mr. Sapia.**

**ANSWER:**

The Board denies the allegations in Paragraph 34 of the Complaint that Sapia was "terminated" from Kennedy, denies that there were 160 students in Mr. Sapia's art class, denies that his position was opened and filled by someone else, and denies that it engaged in pretext. The Board admits that a substitute teacher had to cover the class after the layoff, and admits that a drop in enrollment caused Mr. Sapia to be laid off.

**35. On or about February 24, 2013, Defendant denied Mr. Sapia's grievance, stating "In determining the order of layoffs, the CEO or the CEO's designee shall take performance ratings into account."**

**ANSWER:**

The Board admits the allegations in Paragraph 35 of the Complaint.

**36. Since his termination from Kennedy High School, and despite having submitted applications for numerous open positions, Mr. Sapia has not been appointed to a permanent teaching position within CPS.**

**ANSWER:**

The Board denies the allegations in Paragraph 36 of the Complaint that Sapia was "terminated" from Kennedy. The Board admits the remaining allegations in that Paragraph.

**37. Since his termination from Kennedy High School, and despite having submitted applications to numerous open positions, Mr. Sapia has not been appointed to an open teacher position in any other school district.**

**ANSWER:**

The Board denies the allegations in Paragraph 37 of the Complaint that Sapia was "terminated" from Kennedy. The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in that Paragraph.

*Plaintiff Passmore's Termination*

**38.     Mr. Passmore began teaching for CPS as a full time teacher in 1992 at South Shore High School. He began teaching at Dunbar High School in 2000.**

**ANSWER:**

The Board admits the allegations in Paragraph 38 of the Complaint.

**39.     Prior to the 2011-2012 School Year, plaintiff's ratings were all excellent, except for one rating for satisfactory.**

**ANSWER:**

The Board denies the allegations in Paragraph 36 with respect to Passmore.

**40.     In School Year 2010-11, new principal Dr. Camilla Covington arrived at Dunbar.**

**ANSWER:**

The Board admits the allegations in Paragraph 40 of the Complaint that Dr. Covington transferred to

Dunbar effective July 1, 2010. The Board denies the remaining allegations in that Paragraph.

**41.     Principal Covington created a process called *Teachers On Deck*, whereupon the teacher is in a "hotseat", evaluated by a team of approximately five administrators and in the presence of all staff. At that time, student grades and attendance are published on a screen for all to view, while the individual teacher is interrogated, critiqued and called to justify the students' performance before the group.**

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint, but denies any such process would be unlawful.

**42.     *Teachers on Deck* is not provided for in the CBA or any agreement between the Chicago Teachers Union and CPS. The only permissible evaluation procedures are set forth in the bargaining agreement and or School Code.**

**ANSWER:**

The Board admits the allegations in the first sentence of Paragraph 42 of the Complaint. The Board denies the remaining allegations in that Paragraph.

**43.     Beginning in about the fall of 2011, plaintiff was outspoken in his opposition to the**

principal's attempts to implement a block schedule that would require students to sit in class for 90 minutes instead of 60 minutes. In response, Principal Covington berated Mr. Passmore in a staff meeting. She threatened teachers who were outspoken, including by telling the union staff, that she could fire tenured teachers and replace them.

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the first

sentence in Paragraph 43. The Board denies the remaining allegations in that Paragraph.

**44.     Defendant was required to evaluate Mr. Passmore on or before June 8, 2012, under both Board policy and the union contract.**

**ANSWER:**

The Board denies the allegations in Paragraph 44 of the Complaint. The Board's agreement with the

CTU states, "The Board will attempt to provide summative ratings no later than the last day of student

attendance."

**45.     Defendant failed to conduct an evaluation of Mr. Passmore on or before June 8, 2012.**

**ANSWER:**

The Board denies the allegations in Paragraph 45 of the Complaint.

**46.     Defendant is not permitted to issue a rating to a tenured teacher unless it conducts an evaluation on or before June 8, 2012.**

**ANSWER:**

The Board denies the allegations in Paragraph 46 of the Complaint.

**47.     Defendant is not permitted to issue a rating to a tenured teacher unless its principal or qualified evaluator conducted two observations of the teacher.**

**ANSWER:**

The Board admits the allegations in Paragraph 47 of the Complaint.

**48.     Defendant failed to conduct two observations of Mr. Passmore's classroom.**

**ANSWER:**

The Board denies the allegations in Paragraph 48 of the Complaint

**49.     Defendant issued Mr. Passmore an unsatisfactory rating on June 15, 2012.**

**ANSWER:**

The Board admits the allegations in Paragraph 49 of the Complaint that it issued an "Unsatisfactory"

rating to Passmore. The Board denies the remaining allegations in that Paragraph.

**50.     As a result of Mr. Passmore's "unsatisfactory" rating, he was issued a notice of layoff dated July 9, 2012, that his position "is no longer available" due to a "drop in enrollment".**

**ANSWER:**

The Board denies the implication in Paragraph 50 of the Complaint that Passmore was laid off solely

due to his "Unsatisfactory" rating. The Board admits the remaining allegations in that Paragraph.

**51.     Defendant advised Ms. Passmore that his position was "closed July 1, 2012" due to a drop in enrollment and because he was rated unsatisfactory for the 2011-12 school year.**

**ANSWER:**

The Board denies the allegations in Paragraph 51 of the Complaint.

**52.     Under the operative collective bargaining agreement in effect, defendant was *not* permitted to consider an evaluative rating in determining whether a tenured teacher should be laid off. Instead, the layoff was by seniority and endorsement to teach certain subject matters.**

**ANSWER:**

The Board denies the allegations in Paragraph 52 of the Complaint.

**53.     At the time of his layoff on July 9, 2012, Mr. Passmore was the most senior teacher in the history Department at Dunbar High School. Between the dates of his termination from Dunbar in July, 2012 until January 20, 2015, Mr. Passmore was unable to obtain any work other than as a substitute teacher with defendant.**

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 53 of the Complaint, and denies the allegations in the second sentence of Paragraph 53.

**54.      Following his "layoff" in July 2012, Mr. Passmore worked as a re-assigned teacher during the 2012-2013 school year pursuant to the Board's Reassignment Policy. Had Mr. Passmore obtained another position during his time in the re-assignment pool, his tenure rights would have transferred to the new position, and his employment as a tenured teacher would not have been terminated by virtue of his "layoff." Mr. Passmore retained the salary and benefits he would have received at Dunbar while he was in the reassignment pool.**

**ANSWER:**

The Board denies that Passmore's employment was terminated by virtue of his layoff and admits the remaining allegations in Paragraph 54 of the Complaint.

**55.      Despite Mr. Passmore's best efforts to find a new position, and his significant experience and qualifications, he was unable to obtain a permanent tenured position due to the pretextual "unsatisfactory" rating and "layoff" which were issued in 2012 as described above. As a result, on June 26, 2013, the Board finalized the termination of his employment as a tenured teacher, and enacted Board Resolution 13-0626-RS9, formally terminating his employment and depriving him of his tenure rights. Exh. G.**

**ANSWER:**

The Board admits that it adopted Board Resolution 13-0626-RS9 on June 26, 2013, admits that Exhibit G attached to the Third Amended Complaint is a correct copy of the resolution, and denies the remaining allegations in Paragraph 55 of the Complaint.

**56.      Defendant targeted a number of other teachers at Dunbar, including Plaintiff Hall, also terminating them under the guise of a "layoff." Many of those teachers have since been reinstated as a result.**

**ANSWER:**

The Board admits that many teachers who were laid off in 2012 were subsequently rehired and

reinstated, and denies the remaining allegations in Paragraph 56 of the Complaint.

**57.     On or about January 20, 2015, Mr. Passmore obtained a permanent teaching position with defendant.**

<u>**ANSWER:**</u>

The Board admits the allegations in Paragraph 57 of the Complaint.

*Plaintiff Hall's Termination and Forced Retirement*

**58.     Ms. Hall began teaching at CPS in 1984 and at Dunbar High School in 1998.**

<u>**ANSWER:**</u>

The Board admits the allegations in Paragraph 58 of the Complaint.

**59.     Ms. Hall was a biology teacher for defendant.**

<u>**ANSWER:**</u>

The Board admits the allegations in Paragraph 59 of the Complaint.

**60.     Prior to the 2011-2012 School Year, plaintiff's ratings were all excellent or superior, except for one rating for satisfactory.**

<u>**ANSWER:**</u>

The Board admits the allegations in Paragraph 60 of the Complaint with respect to Hall.

**61.     Defendant was required to evaluate Ms. Hall on or before June 8, 2012, under both Board policy and the union contract.**

<u>**ANSWER:**</u>

The Board denies the allegations in Paragraph 61 of the Complaint.

**62.     Defendant failed to conduct an evaluation of Ms. Hall on or before June 8, 2012.**

<u>**ANSWER:**</u>

The Board denies the allegations in Paragraph 62 of the Complaint, but admits it delivered Hall's

evaluation on June 15, 2012.

**63.     Defendant is not permitted to issue a rating to a tenured teacher unless it conducts an**

**evaluation on or before June 8, 2012.**

<u>ANSWER:</u>

The Board denies the allegations in Paragraph 63 of the Complaint.

**64.    Defendant issued Ms. Hall an unsatisfactory rating on June 15, 2012.**

<u>ANSWER:</u>

The Board admits the allegations in Paragraph 64 of the Complaint.

**65.    Ms. Hall commenced teaching in the fall of 2012.**

<u>ANSWER:</u>

The Board denies the allegations in Paragraph 65 of the Complaint, as Hall had taught before Fall

2012.

**66.    Defendant did not offer Ms. Hall any remediation.**

<u>ANSWER:</u>

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations

in Paragraph 66 of the Complaint.

**67.    As a result of Ms. Hall's "unsatisfactory" rating, she was issued a notice of layoff in October, 2012, that she was laid off due to a "drop in enrollment", due to her unsatisfactory rating.**

<u>ANSWER:</u>

The Board denies the implication in Paragraph 67 of the Complaint that Hall was laid off solely due

to her "Unsatisfactory" rating. The Board admits the remaining allegations in that Paragraph.

**68.    Under the operative collective bargaining agreement in effect, defendant was *not* permitted to consider an evaluative rating in determining whether a tenured teacher should be laid off. Instead, the layoff was by seniority and endorsement to teach certain subject matters.**

<u>ANSWER:</u>

The Board denies the allegations in Paragraph 68.

69.     At the time of her layoff in October, 2012, except for 2 other teachers, Ms. Hall was the most senior teacher in the biology department.

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations

in Paragraph 69 of the Complaint.

70.     Teachers who were younger and had less seniority than Ms. Hall were not laid off from Dunbar High School in October, 2012.

**ANSWER:**

The Board admits the allegations in Paragraph 70 of the Complaint.

71.     Between the dates of her termination from Dunbar in October 2012 until October 2013, Ms. Hall was in the reassignment pool, but was unable to obtain any permanent assignments with defendant.

**ANSWER:**

The Board denies the allegation in Paragraph 71 of the Complaint that Plaintiff was terminated. The

Board admits the remaining allegations in that Paragraph.

72.     In October 2013, Ms. Hall was forced to retire from CPS, or she would lose her accrued sick days.

**ANSWER:**

The Board denies the allegations in Paragraph 72 of the Complaint, but admits Hall elected to retire

from the Board in October 2013.

*B. Basis of Tenure Status*

*1. Statutory*

73.     Teachers are initially employed by the City of Chicago on a probationary basis. These "probationary appointed teachers" (PATs) are not guaranteed employment from year-to-year, regardless of their performance. 105 ILCS 5/34-84.

**ANSWER:**

The Board denies the allegations in the first sentence of Paragraph 73 of the Complaint because

probationary teachers are employed by the Board, not by the "City of Chicago." The Board admits

the remaining allegations in that Paragraph.

**74.    Teachers employed on a probationary basis may have their contracts non-renewed at the end of any of their first three years of service, resulting in the teacher being automatically dismissed from service.**

<u>**ANSWER:**</u>

The Board admits the allegations in Paragraph 74 of the Complaint.

**75.    Once a teacher has completed his or her probationary period s/he is tenured and "appointments of the teacher shall become permanent, subject to removal for cause in the manner provided by Section 34-85" of the school code. 105 ILCS 5/34-84.**

<u>**ANSWER:**</u>

The Board denies Plaintiffs have quoted the entirety of the cited section of the Illinois School Code

in Paragraph 75 of the Complaint.

**(No number) (sic) A tenured teacher employed by Defendant may *not* "be removed except for cause." 105 ILCS 5/34-85.**

<u>**ANSWER:**</u>

The Board denies the allegations in the foregoing un-numbered Paragraph of the Complaint.

**2. *Collective Bargaining Agreement***

**76*.*    The controlling CBA and which the parties applied to the merits of the rating and layoff claims of similarly situated employees who received unsatisfactory ratings on or before July 1, 2012, recognizes "tenured teacher[s]" as "full-time certified teacher[s] who ha[ve] successfully completed the probationary period proscribed in 105 ILCS 5/34-84 or Art. 23-2.1" of the CBA. Art. 23-2.1.**

<u>**ANSWER:**</u>

The Board denies the allegations in paragraph 76 correctly cite the controlling CBA in that the CBA

Agreement in effect as of July 1, 2012 states, "An appointed tenured teacher is a full-time certified

teacher who has successfully completed the probationary period required by Section 34-84 of the

*Illinois School Code* or who has been reappointed with tenure in accordance with BOARD policies and

procedures."  CBA Art. 23-2.

*C. Rights Afforded to tenured teachers*
*1. Cannot be terminated unless "for cause"  a. Ratings, E-3 Process and Remediation*

**77.     The "for cause" dismissal of tenure [sic] teacher [sic] includes dismissal of the teacher on the basis of inadequate performance.**

**ANSWER**:

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Complaint because Plaintiffs do not identify the alleged source of the "for cause" definition to which they refer.

**78.     In order to dismiss a tenured teacher on the basis of inadequate performance [sic] Illinois School Code mandates that the teacher first be rated as "unsatisfactory." 105 ILCS 5/24A-5(b)(i).**

**ANSWER:**

The Board denies the allegations in Paragraph 78 of the Complaint.

**79.     The controlling CBAs between the CTU and Defendant dated 2007-2012 and 2012-2015 require remediation for tenured teachers who receive unsatisfactory ratings, although the bargaining agreements contain technical differences in certain procedures and timing.**

**ANSWER:**

The Board denies that the governing collective bargaining agreement "requires" remediation, given that it identifies teachers with "Unsatisfactory" performance ratings first in the order of layoff without requiring those teachers to have undergone remediation, and admits the allegation that each of the referenced CBAs contains a process for remediation of tenured teachers who receive "Unsatisfactory" ratings.

**80.     The CBA establishes that a tenured teacher cannot be rated as "unsatisfactory" until he or she has received at least two formal observations. See CBA, Article 39, attached as Exhibit C. These observations must take place on two different days and be conducted by the Principal or other qualified defined evaluator of the school at which the teacher is employed.**

**ANSWER:**

The Board denies the allegations in Paragraph 80 of the Complaint, including that Exhibit C is the controlling CBA and that two "formal" observations are required.

**81.     The CBA requires that after a principal deems a tenured teacher's performance unsatisfactory he must provide him or her with a "Form E-3, Evaluation of Unsatisfactory Service of a Tenured Teacher," in a conference taking place in a location ensuring privacy. The Form E-3 must state the reasons for the "unsatisfactory" rating and advise the tenured teacher of their obligation to participate in a remediation plan. See Exhibit C, Article 39.**

**ANSWER:**

The Board denies the allegations in Paragraph 81 of the Complaint, including that Exhibit C is part of the controlling CBA.

**82.     The remediation plan must be designed to correct the deficiencies cited in the Form E-3 notification, so long as the deficiencies are remediable.**

**ANSWER:**

The Board denies the allegations in Paragraph 82.

**83.     Pursuant to the Illinois School Code and the CBAs, Defendant must develop and commence the remediation plan within 30 school days after the teacher receives the "unsatisfactory" rating. 105 ILCS 5/24A-5(b)(i), Exhibit C, Article 39.**

**ANSWER:**

The Board denies the allegations in Paragraph 83 of the Complaint with respect to what the Illinois School Code provides, and denies that the governing collective bargaining agreement requires remediation, given that it identifies teachers with "Unsatisfactory" performance ratings first in the order of layoff without requiring those teachers to have undergone remediation. The applicable CBA provides that, "Whenever there is a reduction in or change in the teaching force that results in the layoff of appointed teachers, teachers will be reassigned or laid off in accordance with this policy. Section 3—Order of Teacher Layoff: If changes in an attendance center or program require the layoff of some but not all teachers, the order of layoff of teachers within the affected unit and certification shall be by the following performance tiers and/or as follows:

1.    Any teachers rated unsatisfactory."

**84.    Defendant's remediation plans "shall provide for 90 school days of remediation within the classroom..." 105 ILCS 5/24A-5(b)(i), Exhibit C, Article 39.**

<u>**ANSWER:**</u>

The Board denies that Plaintiffs completely set forth the quoted statutory language, denies that the

cited language applies to the Board, and denies that cited Article 39 is applicable in the context of

Plaintiffs' layoffs.

**85.    In addition to the 30 day requirement enumerated in the School Code, the CBAs mandates [sic] time period between three days after the issuance of a Form E-3, and 30 school days after the issuance of the summative evaluation, a "qualified consulting teacher" to assist the teacher during the remediation period. A qualified teacher is one who has received a rating of "superior" or "excellent" on his or her most recent evaluation, has a minimum of five years' experience in teacher [sic] and has knowledge relevant to the assignment of the tenured teacher under remediation. See Exhibit C, Article 39 and 105 ILCS 5/24A-5(j).**

<u>**ANSWER:**</u>

The Board denies that Plaintiffs completely set forth the quoted statutory language, denies that the

cited language applies to the Board, and denies that cited Article 39 is applicable in the context of

Plaintiffs' layoffs.

**86**.    **The CBA requires that within seven school days after the selection of the consulting teacher, the principal meet with the tenured teacher and the consulting teacher to commence the development of the remediation plan.**

<u>**ANSWER:**</u>

The Board lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 86 of the Complaint because Plaintiffs do not identify the "CBA" to which

they refer.

**87.    During the ninety day [sic] remediation period, the principal must evaluate and rate the tenured teacher under remediation every thirty days. Exhibit C, Article 39-5.3. The evaluations and ratings must be conferred in a place ensuring privacy by the principal to the teacher in remediation. Exhibit C, Article 39-5.4. The evaluations and ratings must be conferred within 10 school days after the date of evaluation. 105 ILCS 5/24A-5(k).**

**ANSWER:**

The Board denies the allegations in Paragraph 87 of the Complaint, including that the cited Exhibit

C is part of the controlling CBA, that Plaintiffs completely set forth the quoted statutory language

and that the cited language applies to the Board.

**88.     If continued remediation is warranted post- evaluation, the principal and consulting teacher shall confer in order to continue to provide appropriate assistance to the teacher in remediation. Exhibit C, Article 39-5.4.**

**ANSWER:**

The Board denies the allegations in Paragraph 88 of the Complaint, including that the cited Exhibit C is part of the controlling CBA.

**89.     A mid-point and final evaluation must be conducted by the principal or other evaluator, during and at the end of the remediation period. Each evaluation shall assess the teacher's performance during the time period since the prior evaluation; provided that the last evaluation shall also include an overall evaluation of the teacher's performance during the remediation period. 105 ILCS 5/24A-5(k).**

**ANSWER:**

The Board denies the allegations in Paragraph 89 of the Complaint, including that Plaintiffs completely

set forth the quoted statutory language and that the cited language applies to the Board.

**90.     If after the completion of the remediation period the tenured teacher achieves a final rating of "satisfactory," "excellent" or "superior," (or proficient for ratings after July 1, 2012), the teacher will be deemed to have successfully completed remediation. Exhibit C, Article 39-5.4.**

**ANSWER:**

The Board denies the allegations in Paragraph 90 of the Complaint, including that the cited Exhibit

C is part of the controlling CBA.

91.     **A teacher who successfully completes remediation is reinstated to the evaluation schedule set forth in Defendant's evaluation for tenured teachers who have achieved a "satisfactory" rating or better. 105 ILCS 5/24A-5(l). The 2007-2012 CBA requires that immediately after successful completion of the remediation period, a teacher is evaluated monthly for six months and quarterly for the preceding six months. Thereafter the tenured teacher is reinstated to a schedule of bi-annual evaluations. Exhibit C, Article 39-5.5.**

**ANSWER:**

The Board denies that Plaintiffs completely set forth the quoted statutory language and that the cited language applies to the Board. The Board denies that the cited Exhibit C is part of the controlling CBA.

**92.     If the tenured teacher in remediation receives a "needs improvement" (the equivalent of "developing" for ratings after July 1, 2012) or "unsatisfactory" on their final evaluation at the conclusion of the remediation period he or she is deemed to have failed remediation and is subject to dismissal in accordance with §34-85 of the school code. Exhibit C, Article 39-5.6; 105 ILCS 5/24A-5(m).**

**ANSWER:**

The Board denies that Plaintiffs completely set forth the quoted statutory language and that the cited language applies to the Board. The Board denies that the cited Exhibit C is part of the controlling CBA.

> b. *Required Termination Procedures – Statutory and Contractual*

**93.     In 2010 and continuing through the present, Illinois law prohibits defendant from terminating a tenured teacher due to "unsatisfactory" performance unless they initiated dismissal proceedings. 105 ILCS 5/34-85(a).**

**ANSWER:**

The Board denies the allegations in Paragraph 93 of the Complaint- the cited statutory language does not apply during an economic-based layoff and the Illinois School Code specifically permits consideration of performance ratings in layoff decisions.

**94.     No tenured teacher employed by defendant may be removed except for cause. 105 ILCS 5/34-85(a).**

**ANSWER:**

The Board denies the allegations in Paragraph 94 of the Complaint— the cited statutory language does not apply during an economic-based layoff and the Illinois School Code specifically permits consideration of performance ratings in layoff decisions.

**95.     To initiate dismissal proceedings against a teacher [sic] Defendant "must first approve written charges and specifications against the teacher" within 45 calendar days or**

provide a written reason for not approving the charges. 105 ILCS 5/34-85(a)(1).

**ANSWER:**

The Board denies the allegations in Paragraph 95 of the Complaint—the cited statutory language does

not apply during an economic-based layoff.

96.    **Written notice of the charges and specifications alleged against the tenured teacher must be served upon the teacher within 10 business days of the approval of the charges. 105 ILCS 5/34-85(a)(1).**

**ANSWER:**

The Board denies the allegations in Paragraph 96 of the Complaint—the cited statutory language does

not apply during an economic-based layoff.

97.    **A hearing upon the charges is required if the teacher within 17 days of receiving notice requests in writing of Defendant that a hearing be scheduled. 105 ILCS 5/34-85(a)(2).**

**ANSWER:**

The Board denies the allegations in Paragraph 97 of the Complaint—the cited statutory language does

not apply during an economic-based layoff.

98.    **Only a qualified hearing officer may conduct hearings on the charges and specifications. The qualified hearing officer must be accredited by a national arbitration organization and have had a minimum of five years of experience as an arbitrator in cases involving labor and employment relations matters between employers and employees or their exclusive bargaining representatives. 105 ILCS 5/34-85(a)(3).**

**ANSWER:**

The Board denies the allegations in Paragraph 98 of the Complaint—the cited statutory language does

not apply during an economic-based layoff.

99.    **The hearing officer shall commence the hearing within 75 calendar days and conclude the hearing within 120 days after being selected by the parties. 105 ILCS 5/34- 85(a)(5).**

**ANSWER:**

The Board denies the allegations in Paragraph 99 of the Complaint—the cited statutory language does

not apply during an economic-based layoff.

100.     The hearing officer shall within 30 calendar days from the conclusion of the hearing report findings of fact and recommendations to Defendant and the teacher as to whether the teacher shall be dismissed. 105 ILCS 5/34-85(a)(6).

**ANSWER:**

The Board denies the allegations in Paragraph 100 of the Complaint—the cited statutory language does not apply during an economic-based layoff.

101.     The Board shall within 45 calendar days of the hearing officer's findings of fact and recommendation, determine whether to accept or reject the hearing officer's findings and recommendation. 105 ILCS 5/34-85(a)(7).

**ANSWER:**

The Board denies the allegations in Paragraph 101 of the Complaint—the cited statutory language does not apply during an economic-based layoff.

102.     The teacher may seek judicial review of Defendant's decision in accordance with the Administrative Review Law. 105 ILCS 5/34-85(a)(8).

**ANSWER:**

The Board denies the allegations in Paragraph 102 of the Complaint—the cited statutory language does not apply during an economic-based layoff.

103.     The remediation, notice and dismissal hearing procedures provide the tenured teacher with sufficient rights to conform to the Due Process Clause of the 14th Amendment.

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 of the Complaint because Plaintiffs do not identify the "remediation, notice and dismissal hearing procedures" to which they refer.

104.     These extensive and substantive rights are intended to afford tenured teachers who have been accused of inadequate performance an opportunity to dispel their alleged deficiencies, be notified of the charges against them and present witnesses and testimony in a legitimate effort to challenge the allegations. In essence, a tenured teacher accused of poor performance and afforded these rights is granted Due Process.

**ANSWER:**

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 of the Complaint because Plaintiffs do not identify the "extensive and substantive rights" to which they refer.

2. *Authority for Layoffs- Statutory and Contract*

**105. The Illinois School Code grants defendant the authority to conduct layoffs and "reductions in force" but does not define either term. 105 ILCS 5/34-18(31).**

**ANSWER:**

The Board admits the allegations in Paragraph 105 of the Complaint that the cited section of the Illinois School Code grants such rights but does not define "layoffs" or "reductions in force."

**106. Article 42-2 of the 2007-12 CBA between the parties states that "the reassignment and layoff of appointed tenured teachers due to changes in staffing needs is governed by the policy set forth in Appendix H" of the CBA. It further prohibited Defendant from changing the policy during the term of the CBA.**

**ANSWER:**

The Board admits that Article 42-2 of the 2007-12 CBA, effective from July 1, 2007 to June 30, 2012, is correctly cited, denies that it governed the layoffs of Plaintiffs in that the subsequent CBA was effective as of July 1, 2012, prior to the dates of Plaintiffs' layoffs, and denies that it trumps Illinois law.

**107. Appendix H of the 2007-12 CBA states that "[w]henever an attendance center or a program is closed, there is a drop in enrollment, the educational focus of the attendance center is changed such that the available teaching positions cannot accommodate some or all current regularly certified and appointed teaching staff or when an attendance center is subject to actions taken pursuant to sections 34-8.3 or 34-8.4 of the Illinois School Code, tenured teachers will be reassigned or laid-off in accordance with this policy." Exhibit D, Appendix H, Section 1.**

**ANSWER:**

The Board admits that Appendix H of the 2007-12 CBA, effective from July 1, 2007 to June 30, 2012, is correctly cited, and denies that it governed the layoffs of Plaintiffs in that the subsequent CBA was effective as of July 1, 2012, prior to the dates of Plaintiffs' layoffs, and denies that it trumps Illinois

law.

**108.    Appendix H of the 2007-12 CBA further states that "[i]f changes in an attendance center or program require removal of some but not all tenured teachers, tenured teachers with appropriate certifications will be selected for retention based on seniority. Provisionals, day-to- day substitutes, Cadre Substitutes, temporarily assigned teachers (TATs) and probationary teachers within the attendance center or program will be removed before any regularly certified and appointed tenured teacher with the appropriate certification is removed, in that order." Exhibit D, Appendix H, Section 2(A).**

**ANSWER:**

The Board admits that Appendix H of the 2007-12 CBA, effective from July 1, 2007 to June 30, 2012, is correctly cited, and denies that it governed the layoffs of Plaintiffs in that the subsequent CBA was effective as of July 1, 2012, prior to the dates of Plaintiffs' layoffs, and denies that it trumps Illinois law.

**109.    Appendix H of the 2007-12 CBA does not base the order of conducting layoffs on the proven performance or alleged deficiencies of tenured teachers.**

**ANSWER:**

The Board admits the 2007-12 CBA is correctly cited, and denies that the 2007-12 CBA governed the layoffs of Plaintiffs in that the subsequent CBA was effective as of July 1, 2012, prior to the dates of Plaintiffs' layoffs.

*C. Layoff Policy*

**110.    Following the agreement of the parties to the terms of the controlling CBA in 2007, the Board was required to approve an amended leave policy on the reassignment and layoff of tenured teachers in compliance with Appendix H of the Controlling CBA. Exhibit D, Appendix H, Section 12.**

**ANSWER:**

The Board denies the allegations in Paragraph 110 of the Complaint, including that the 2007 CBA is the controlling CBA or that it trumps Illinois law.

**111.    The Board approved Policy 504.2 on December 19, 2007, entitled "Reassignment and layoff of regularly certified and appointed tenured teachers."**

**ANSWER:**

The Board denies the allegation in Paragraph 111 of the Complaint that the referenced policy adopted on December 19, 2007 was Policy "504.2" and that such policy governs Plaintiffs' layoffs or trumps Illinois law, but admits it adopted a policy titled as referenced on that date.

**112.** **The 2007 layoff policy states that "if changes in an attendance center or program require removal of some but not all teachers, teachers with appropriate certifications will be selected for retention based on system-wide seniority." Teachers were selected for layoff in the following order: Provisionals, Day-to-Day substitutes, Cadre Substitutes, Temporarily Assigned Teachers, Probationary Teachers and lastly tenured teachers. Bd. Policy 504.2, Section 2.**

**ANSWER:**

The Board denies the referenced policy governs Plaintiffs' layoffs or trumps Illinois law, but admits the allegation in Paragraph 112 of the Complaint that the 2007 policy includes the quoted language and layoff order.

*1. 2007 Layoff Policy*

**113.** **Defendant's 2007 layoff policy states in its description that it "reflects the agreement reached with the Chicago Teachers Union."**

**ANSWER:**

The Board denies the referenced policy governs Plaintiffs' layoffs or trumps Illinois law, but admits the allegation in Paragraph 113 of the Complaint that the 2007 policy includes the quoted language.

**114.** **The 2007 layoff policy makes no reference to proven performance or alleged deficiencies as criteria for layoff let alone the sole basis for layoff.**

**ANSWER:**

The Board denies the referenced policy governs Plaintiffs' layoffs or trumps Illinois law, but admits the allegation in Paragraph 114 of the Complaint.

*2. 2010 Board Resolution Creating New Layoff Policy*

**115.** **In 2010 Defendant drastically deviated from the 2007 layoff policy and the terms of the CBA in conducting layoffs and reductions-in-force by basing terminations on alleged performance deficiencies of teachers.**

**ANSWER:**

The Board admits the allegation in Paragraph 115 of the Complaint that, in 2010, it began to include teachers with "Unsatisfactory" performance ratings in the order of layoff. The Board denies the remaining allegations in that Paragraph.

116. **On June 23, 2010, Defendant passed a resolution ordering the CEO of Chicago Public Schools to identify schools at which layoffs and reductions must occur then conduct layoffs and reductions in force by "first laying off appointed teachers who either (a) are under remediation under 105 ILCS 5/24A-5 or Article 39 of the Chicago Teachers Union collective bargaining agreement or (b) any appointed teacher whose last performance rating was "unsatisfactory," does not meet expectations or an equivalent rating indicating deficient performance." Board Resolution 10-0623-RS32. Exhibit E.**

**ANSWER:**

The Board admits the allegations in Paragraph 116 of the Complaint.

117. **The 2010 Board Resolution did not provide tenured teachers laid-off [sic] while on remediation an opportunity to complete the 90 day [sic] remediation period.**

**ANSWER:**

The Board admits the allegations in Paragraph 117 of the Complaint.

118. **The 2010 Board Resolution did not provide tenured teachers laid-off [sic] while on remediation the opportunity to receive a final evaluation.**

**ANSWER:**

The Board admits the allegations in Paragraph 118 of the Complaint.

119. **The 2010 Board Resolution did not provide that tenured teachers laid-off [sic] while on remediation, or otherwise deemed unsatisfactory, receive notice that their terminations were based on alleged deficiencies in their performance.**

**ANSWER:**

The Board denies the allegation in Paragraph 119 of the Complaint that teachers affected by the 2010 Board Resolution were "terminated." The Board denies the portion of that Paragraph related to tenured teachers "otherwise deemed unsatisfactory" because the 2010 Board Resolution did not govern the rights available to tenured teachers deemed "Unsatisfactory" who were not subject to an

economic layoff. The Board admits the remaining allegations in that Paragraph, with respect to the language of the 2010 Board Resolution.

**120.    The 2010 Board Resolution did not provide that tenured teachers laid-off [sic] while on remediation, or otherwise deemed unsatisfactory, have the opportunity to challenge the alleged deficiencies forming the basis for their termination in a hearing or any other forum.**

<u>**ANSWER:**</u>

The Board denies the allegation in Paragraph 120 of the Complaint that teachers affected by the 2010 Board Resolution were "terminated." The Board denies the portion of that Paragraph related to tenured teachers "otherwise deemed unsatisfactory" because the 2010 Board Resolution did not govern the rights available to tenured teachers deemed "Unsatisfactory" who were not subject to an economic layoff. The Board admits the remaining allegations in that Paragraph, with respect to the language of the 2010 Board Resolution.

**121.    The 2010 Board Resolution did not provide tenured teachers laid-off [sic] while on remediation, or otherwise deemed unsatisfactory, the opportunity to participate in dismissal hearing pursuant to Article 39-5.6 of the controlling CBA or sections 24A-5 and 34-85 of the Illinois School Code.**

<u>**ANSWER:**</u>

The Board denies the portion of Paragraph 121 of the Complaint related to tenured teachers "otherwise deemed unsatisfactory" because the 2010 Board Resolution did not govern the rights available to tenured teachers deemed "Unsatisfactory" who were not subject to an economic layoff. The Board admits the remaining allegations in that Paragraph, with respect to the language of the 2010 Board Resolution, and denies that the cited CBA was applicable to Plaintiffs' layoffs.

*3. 2011 Layoff Policy*

**122.    In 2011 Defendant again sought to layoff [sic] thousands of teachers. In order to do so, it codified the terms of the 2010 Bd. Resolution in an official Board policy. The Board approved Policy 504.2A on June 22, 2011, entitled "Approve a Restated Policy on the Layoff of Teachers for Reasons Other Than Those Within the Scope of Board Policy 504.2." Exhibit F.**

<u>**ANSWER:**</u>

The Board denies the allegations in Paragraph 122 of the Complaint that it "sought" to lay off thousands of teachers in 2011 and "[i]n order to do so," codified the terms of the 2010 Board Resolution in Board policy. The Board admits the remaining allegations in that Paragraph.

**123**.     **Board Policy 504.2A replaces Policy 504.2 as the controlling layoff policy for the layoffs and reductions-in-force conducted in 2011 and 2012.**

**ANSWER:**

The Board denies the allegations in Paragraph 123 of the Complaint.

**124**.     **Board Policy 504.2A states that when selecting teachers for layoff the CEO of Chicago Public Schools shall first "determine the number and type of positions to be eliminated under the policy in each unit." A unit is defined by the policy as either a school or "non-school budgetary or operational unit (e.g. Area Office, a city-wide program, or a Central Office department)."**

**ANSWER:**

The Board admits the allegations in Paragraph 124 of the Complaint.

**125.     Pursuant to Board Policy 504.2A, once a unit is selected from which teachers will be selected for layoff or reductions in force, the individual teachers are selected for termination in the following order: (A) teachers alleged to be lacking proper certifications or credentials for the position, (B) teachers rated "unsatisfactory," "does not meet expectations" or an "equivalent rating indicating deficient performance" and those under remediation pursuant to Section 24A-5 of the School Code of Art. 39 of the controlling CBA, (C) Retired Teachers, (D) Temporarily Assigned Teachers, (E) PATs, (F) Appointed Tenured Teachers. See Exhibit F.**

**ANSWER:**

The Board denies the allegation in Paragraph 125 of the Complaint that teachers are "selected for termination" under Board Policy 504.2A and that the Policy refers to teachers "alleged" to be lacking proper certifications or credentials. The Board admits the remaining allegations in that Paragraph with respect to the layoff order described in the referenced Policy.

**126.     The 2011 layoff policy did not provide tenured teachers laid-off [sic] while on remediation an opportunity to complete the 90 day [sic] remediation period.**

**ANSWER:**

The Board admits the allegations in Paragraph 126 of the Complaint, with respect to the language of

the referenced Policy.

**127.    The 2011 layoff policy did not provide tenured teachers laid-off [sic] while on remediation the opportunity to receive a final evaluation.**

**ANSWER:**

The Board admits the allegations in Paragraph 127 of the Complaint, with respect to the language of

the referenced Policy.

**128.    The 2011 layoff policy did not provide that tenured teachers laid-off [sic] while on remediation, or otherwise deemed unsatisfactory, receive notice that their terminations were based on alleged deficiencies in their performance.**

**ANSWER:**

The Board denies the allegation in Paragraph 128 of the Complaint that teachers affected by the 2011

Policy were "terminated." The Board denies the portion of that Paragraph related to tenured teachers

"otherwise deemed unsatisfactory" because the 2011 Policy did not govern the rights available to

tenured teachers deemed "Unsatisfactory" who were not subject to an economic layoff. The Board

admits the remaining allegations in that Paragraph, with respect to the language of the 2011 Policy.

**129.    The 2011 layoff policy did not provide that tenured teachers laid-off [sic] while on remediation, or otherwise deemed unsatisfactory, have the opportunity to challenge the alleged deficiencies forming the basis for their termination in a hearing or any other forum.**

**ANSWER:**

The Board denies the allegation in Paragraph 129 of the Complaint that teachers affected by the 2011

Policy were "terminated." The Board denies the portion of that Paragraph related to tenured teachers

"otherwise deemed unsatisfactory" because the 2011 Policy did not govern the rights available to

tenured teachers deemed "Unsatisfactory" who were not subject to an economic layoff. The Board

admits the remaining allegations in that Paragraph, with respect to the language of the 2011 Policy.

**130.    The 2011 layoff policy did not provide tenured teachers laid-off [sic] while on remediation, or otherwise deemed unsatisfactory, the opportunity to participate in dismissal hearing pursuant to Article 39-5.6 of the controlling CBA or sections 24A-5 and 34-85 of the Illinois School Code.**

**ANSWER:**

The Board denies the allegation in Paragraph 130 of the Complaint that teachers affected by the 2011 Policy were "terminated." The Board denies the portion of that Paragraph related to tenured teachers "otherwise deemed unsatisfactory" because the 2011 Policy did not govern the rights available to tenured teachers deemed "Unsatisfactory" who were not subject to an economic layoff. The Board admits the remaining allegations in that Paragraph, with respect to the language of the 2011 Policy, and denies that the cited CBA was applicable to Plaintiffs' layoffs.

G. *Use of "layoff policy" as disguised for-cause termination without the corresponding Due Process rights*

**131.     Defendant subjected Plaintiffs to for-cause terminations disguised as layoffs, with the purpose and/or effect of circumventing constitutionally-mandated due process procedures.**

**ANSWER:**

The Board denies the allegations in Paragraph 131 of the Complaint, including that Plaintiffs were "terminated," and that Plaintiffs' layoffs were unlawful for any reason.

**132**.     **The 2010 Board Resolution and the 2011 layoff policy do more than merely require the Board to consider performance when making termination decisions. Both expressly require Defendant to make termination decisions on the basis of performance, without providing notice and due process to the affected employees.**

**ANSWER:**

The Board denies the allegations in Paragraph 132 of the Complaint, including that teachers rated "Unsatisfactory" who are subject to economic layoff are "terminated" and that layoffs made pursuant to the 2010 Board Resolution or 2011 Policy were unlawful for any reason.

**133.     Pursuant to defendant's 2010 Board Resolution and 2011 layoff policy [sic] Mr. Sapia, a tenured teacher then with 10 years of service, Mr. Passmore with 20 years of service and Ms. Hall with 28 years of service, and all of whom were rated superior or excellent for all but one of those years, must be selected for layoff rather than a first year probationary teacher who has received a "needs improvement" rating.**

**ANSWER:**

The Board denies the allegations in Paragraph 133 of the Complaint, including that Plaintiffs

accurately describe their performance rating histories.

**134.    By virtue of the Board policy and practice, Mr. Sapia, Mr. Passmore, Ms. Hall along with other tenured teachers did not have an opportunity to complete the statutorily, and contractually, mandated remediation period prior to selection for termination.**

**<u>ANSWER:</u>**

The Board denies the allegations in Paragraph 134 of the Complaint, including that Plaintiffs were

"terminated," and that Plaintiffs' layoffs were unlawful for any reason.

**135.    By virtue of the Board policy and practice, Mr. Sapia, Mr. Passmore, Ms. Hall along with other tenured teachers were not afforded the opportunity to participate in a dismissal hearing.**

**<u>ANSWER:</u>**

The Board denies the allegations in Paragraph 135 of the Complaint, including that Plaintiffs' layoffs

were unlawful for any reason.

**136.    By virtue of the Board policy and practice, Mr. Sapia, Mr. Passmore, Ms. Hall along with other tenured teachers were not afforded any rights to challenge the termination pursuant to the Illinois Administrative Review law.**

**<u>ANSWER:</u>**

The Board denies the allegations in Paragraph 136 of the Complaint, including that Plaintiffs were

"terminated," and that Plaintiffs' layoffs were unlawful for any reason.

**137.    By virtue of the Board policy and practice, Mr. Sapia, Mr. Passmore, Ms. Hall along with other tenured teachers were not given the opportunity to participate in either a pre- or post-deprivation hearing to challenge their terminations on the basis of performance.**

**<u>ANSWER:</u>**

The Board denies the allegations in Paragraph 137 of the Complaint, including that Plaintiffs were

"terminated," and that Plaintiffs' layoffs were unlawful for any reason.

**138.    The 2010 Board Resolution and 2011 Layoff policy allow the Board to terminate teachers with a guaranteed right to contractual continued service, Mr. Sapia, Mr. Passmore, Ms. Hall and other tenured teachers, based solely on their performance without providing notice or a due process hearing, despite specific statutory and contractual language mandating otherwise.**

**ANSWER:**

The Board denies the allegations in Paragraph 138 of the Complaint, including that Plaintiffs were "terminated," that Plaintiffs had "a guaranteed right to contractual continued service," that Plaintiffs did not have an opportunity to challenge their ratings or layoffs, and that Plaintiffs' layoffs were unlawful for any reason.

H. *Effects of "unsatisfactory" rating after "layoff" for individual teachers*

**139.    An E-3 Notification of Unsatisfactory Performance issued to a teacher is placed in the teacher's personnel file, which is accessible to administrators within the Chicago Public School System.**

**ANSWER:**

The Board denies the allegations in Paragraph 139 of the Complaint.

**140.    Teachers who have been laid off as a result of being issued an E-3 notification pursuant to either the 2010 Board Resolution or the 2011 Layoff Policy may reapply for positions with CPS or for positions outside of CPS.**

**ANSWER:**

The Board denies any implication in Paragraph 140 of the Complaint that the 2010 Board Resolution or 2011 Policy require layoffs based solely on performance ratings—such layoffs occur only when required for economic reasons. The Board also denies the allegation in that Paragraph that E-3 forms are required for any teacher laid off after July 1, 2012. The Board admits the remaining allegations in that Paragraph.

**141.    When a teacher who has been laid off as a result of being issued an E-3 notification pursuant to either the 2010 Board Resolution or the 2011 Layoff Policy seeks re- employment within CPS, the administrator from whom the teacher is seeking employment will be granted access to the teacher's previous ratings, including the E-3 notice signifying an Unsatisfactory rating as the most recent performance rating for the teacher.**

**ANSWER:**

The Board denies any implication in Paragraph 141 of the Complaint that the 2010 Board Resolution or 2011 Policy require layoffs based solely on performance ratings—such layoffs occur only when

required for economic reasons. The Board also denies the allegation in that Paragraph that administrators are granted access to the teacher's E-3 notice signifying an "Unsatisfactory" rating. The Board admits the remaining allegations in that Paragraph.

**142.     When a teacher who has been laid off as a result of being issued an E-3 notification pursuant to either the 2010 Board Resolution of the 2011 Layoff Policy seeks employment in school district outside of CPS, the district from whom the teacher is seeking employment will be provided with the teacher's previous ratings by CPS, including the E-3 notice signifying an Unsatisfactory rating as the most recent performance rating for the teacher.**

**ANSWER:**

The Board denies any implication in Paragraph 142 of the Complaint that the 2010 Board Resolution or 2011 Policy require layoffs based solely on performance ratings—such layoffs occur only when required for economic reasons. The Board denies the remaining allegations in that Paragraph.

**143.     The presence of an unsatisfactory rating as the most recent performance rating on a teacher's record, alone, makes it more difficult for the teacher to secure future employment, both within CPS and in any of other school district.**

**ANSWER:**

The Board denies the allegations in Paragraph 143 with respect to other school districts. The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in that Paragraph with respect to future Board employment.

**144.     Defendant's publication of the 2010 Board Resolution and 2011 Layoff Policy puts all future employers on notice that teachers laid off from CPS since 2010 whose most recent rating was an Unsatisfactory were terminated as a direct result of their performance.**

**ANSWER:**

The Board denies the allegations in Paragraph 144 of the Complaint, including that such teachers are "terminated" and that such economic-based layoffs are "a direct result of their performance."

**145.     Teachers who have been laid off as a result of being issued an E-3 notification pursuant to the 2010 Board Resolution and 2011 Layoff Policy and are denied future employment as a result of the unsatisfactory rating are in [sic] substantially more disastrous position than teachers denied future employment after being expressly terminated for cause on the basis of their performance, as the laid off teachers are not afforded the right to complete the remediation process or challenge the alleged poor performance in a pre- or post- termination**

hearing.

**ANSWER:**

The Board denies any implication in Paragraph 145 of the Complaint that the 2010 Board Resolution or 2011 Policy require layoffs based solely on performance ratings—such layoffs occur only when required for economic reasons. The Board denies the remaining allegations in that Paragraph.

I.    *Good teachers*

**146.    Tenured teachers issued E-3 Notices of Unsatisfactory Performance are not or have not been proven to be poor performing teachers.**

**ANSWER:**

The Board denies the allegations in Paragraph 146 of the Complaint.

**147.    With knowledge of the layoff policy prioritizing the termination of tenured teachers who have been issued E-3 notices, or given Unsatisfactory ratings, principals utilize the E-3 process as a means to retaliate against Union adherents or teachers with whom the principal simply disagrees, resulting in teachers being terminated on the purported basis of performance without access to any due process protections, and/or for actual reasons wholly unrelated to performance.**

**ANSWER:**

The Board denies the allegations in Paragraph 147 of the Complaint, including that such teachers are

"terminated" and that the Board has acted unlawfully.

**148.    Beginning in at least 2010 and continuing thereafter, Defendant embarked on a concerted initiative to force experienced and highly qualified tenured teachers like the Plaintiffs out of the system and at the same time infuse the District with new, inexperienced teachers. On information and belief, in 2010 and 2011, the Board (including its CEO Ron Huberman) and Alicia Winckler (its Chief Human Capital Officer) discussed and opined that teacher remediation and dismissal procedures mandated by Illinois law were unduly cumbersome.**

**ANSWER:**

The Board denies the allegations in Paragraph 148 of the Complaint.

**149.    The Board viewed its new layoff procedures as a mechanism to bypass the remediation and dismissal procedures and to "manage" (i.e., force) experienced and qualified tenured teachers out of the system.**

**ANSWER:**

The Board denies the allegations in Paragraph 149 of the Complaint.

**150.     On information and belief, while the Board was planning mass layoffs in the Summer of 2010 (during which over one thousand tenured and probationary assigned teachers were dismissed by the Board), it simultaneously discussed and developed plans to bring in new teachers whom it perceived to be more talented than those who were being "laid off."**

**ANSWER:**

The Board denies the allegations in Paragraph 150 of the Complaint.

**151.     On information and belief, beginning in at least 2010 and continuing thereafter, the Board implemented new procedures designed to recruit new teachers from elite schools and education programs which it believed to be higher quality than programs from which the majority of its existing teachers had graduated. The Board also prioritized recruitment of new inexperienced teachers from alternative certification programs such as Teach for America.**

**ANSWER:**

The Board admits that it endeavored to recruit highly qualified teachers in 2010, as well as prior to

2010 and thereafter, and denies the remaining allegations in Paragraph 151 of the Complaint.

**152.     Prior to the 2011-2012 School Year, the Board held a "Kickoff Event" for all its building principals. Board CEO Jean-Claude Brizard, Mayor Rahm Emmanuel, and Board President David Vitale, among others, participated in the event. The purpose of the event was to present the Board's vision for the future of CPS.**

**ANSWER:**

The Board admits that it holds kickoff events at the beginning of each school year and admits the

remaining allegations in Paragraph 152 of the Complaint.

**153.     During the "Kickoff Event," the Board advised its Principals to make talent sourcing and development the Number 1 lever for change, and to build "a pipeline of new talent." The Board cautioned Principals to award tenure sparingly, and noted, for instance, that a "lousy teacher" never got tenure without a "lousy principal." The Board advised Principals during this "kickoff" to aggressively develop high potential teachers and to simultaneously manage "poor performers" out of the system.**

**ANSWER:**

The Board admits that talent sourcing and development of high potential teachers is important to delivering high quality instruction to students; admits that one bullet point among dozens of bullet points contained in 120 pages of Kickoff materials supported talent sourcing and development as a number one change lever, along with college and career readiness of students, rigorous instructional delivery, transparency on performance and choice, and maximizing resources and capacity; admits that the Kick-off event materials quoted the Director of Urban Education in Hamilton County, Tennessee, as saying that, "No lousy teacher ever got tenure without a lousy principal," and denies the remaining allegations in Paragraph 153 of the Complaint.

**154.    During the "Kickoff" event, the Board disparaged purported "preferences" of retiring teachers, while lauding the "preferences" of the new teachers being brought in pursuant to this new initiative. Specifically, the Board described "retiring" teachers as preferring privacy, uniform roles, experience based pay, and career development within the classroom. By contrast, it portrayed new teachers as preferring interdependence, instructional flexibility, differentiated roles, performance based pay, and career development beyond the classroom. The preferences of new teachers (as characterized by the Board) were more aligned with its vision for CPS than those of retired teachers. The preferences were based on stereotypes and reflected animus toward established tenured teachers like the Plaintiffs and others.**

**ANSWER:**

The Board admits that a Harvard University study by Susan M. Johnson identified different preferences among teachers, admits that a table from that study was included among the Kick-off materials, and denies the remaining allegations in paragraph 154 of the Complaint.

**155.    Additionally, CPS Central Office and Human Resources Department and Network Chiefs, including Luis Soria, instructed principals that CPS's policy was to utilize unsatisfactory ratings and the Board's layoff process to get rid of tenured teachers that principals or other administrators "did not like" and circumvent the termination and remediation procedures.  Among other illegal practices, they instructed principals how to falsely create paper files to justify unwarranted unsatisfactory ratings, to by-pass required due process, to close and open positions and to use the rating as a ruse to terminate good teachers like plaintiffs via a layoff. See e.g., Declaration of Adelfio Garcia, former CPS principal, attached as Exhibit H.**

**ANSWER:**

The Board denies the allegations in paragraph 155 of the Complaint

**156.   As a result of the Board's policy and concerted efforts commencing in 2010 and as described above, numerous long-term, tenured teachers with strong records of excellent performance were effectively terminated under the guise of "layoffs" without being afforded remediation and due process procedures which would ordinarily apply in the context of an employment termination. The Board's purpose in implementing these "layoffs" was to replace tenured teachers (without following ordinary due process and remediation procedures) with new teachers which it wrongly believed to be more qualified and easier to train.**

**ANSWER:**

The Board denies the allegations in paragraph 156 of the Complaint.

**157.   On June 9, 2014, an Arbitrator, following a hearing, determined that the Board's "layoff" of six tenured teachers from Ames Middle School in 2010 was arbitrary and capricious, and that the Board chose to retain less senior, non-tenured teachers under the auspices of this "layoff."**

**ANSWER:**

 The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations

in Paragraph 157 of the Complaint because Plaintiffs do not identify the arbitration to which they

refer, they do not identify the names of parties or the arbitrator, nor do they provide an identifying

case caption.

**158.   On April 7, 2016, the Board produced a list of one-hundred sixty-eight (168) tenured teachers who have been "laid off" by the Board between 2012 and 2016 due their "unsatisfactory" performance ratings. Many of the teachers on this list had strong records of excellent job performance prior to their "layoffs." Many were forced to retired or were otherwise "managed out of the system" without due process or remediation opportunities, as a result of their "layoffs."**

**ANSWER:**

The Board admits that it produced to Plaintiffs a list of tenured teachers who were rated unsatisfactory

and who were laid off due to economic reasons between 2012 and 2016, and denies the remaining

allegations in paragraph 158 of the Complaint.

**159.   From 2010 to the present, Defendant has maintained a *de facto* policy of using "layoffs" to circumvent remediation and due process procedures, and to effectively terminate the employment of tenured teachers and replace them with newer candidates whom it**

wrongly perceived to be more qualified and easier to train.

**ANSWER:**

The Board denies the allegations in paragraph 159 of the Complaint.

160.    **From 2010 to the present, Defendant has implemented a widespread practice of terminating tenured teachers with excellent performance histories under the guise of "layoffs" in order to replace them with newer candidates whom it wrongly perceived to be more qualified and easier to train.**

**ANSWER:**

The Board denies the allegations in paragraph 160 of the Complaint.

**Count I**
**(Section 1983: Deprivation of Due Process Pre-Termination Rights of Teachers)**

161.    **Plaintiffs incorporate Paragraphs 1 through 146 as if fully set forth herein.**

**ANSWER:**

The Board does not believe it is required to admit or deny any of Plaintiffs' "shotgun pleadings,"

which have been described in this District as an abuse of Federal Rule of Civil Procedure ("Rule")

10(b). If the Court believes otherwise, the Board respectfully requests an opportunity to amend its

Answer.

162.    **Defendant is aware that its continuing policy to violate the rights of Mr. Sapia, Mr. Passmore, Ms. Hall and other tenured teachers on an ongoing basis continues to injure tenured teachers in the same manner, i.e., termination from their permanent positions without remediation and/or due process.**

**ANSWER:**

The Board denies the allegations in Paragraph 162 of the Complaint, including that Plaintiffs or the

purported class members were "terminated," and that the Board has acted unlawfully.

163.    **Defendant has failed and/or refused to change its policy.**

**ANSWER:**

The Board admits the allegations in Paragraph 163 of the Complaint.

**164.    Mr. Sapia, Mr. Passmore, Ms. Hall were employed in contractual continued service pursuant to the Illinois School Code and designated as tenured teachers by the CBA.**

**ANSWER:**

The Board denies the allegation in Paragraph 164 of the Complaint that Plaintiffs were "employed in

contractual continued service," and that the Board acted unlawfully toward Plaintiffs.

**165.    Mr. Sapia, Mr. Passmore, Ms. Hall and other tenured teachers were terminated without having an opportunity to complete the statutorily mandated remediation period.**

**ANSWER:**

The Board denies the allegations in Paragraph 165 of the Complaint, including that Plaintiffs were

"terminated," and that remediation was "statutorily mandated" for them under the circumstances.

**166.    Mr. Sapia, Mr. Passmore, Ms. Hall and other tenured teachers were terminated without being afforded an opportunity to participate in a pre-termination hearing of any kind to challenge the allegations of poor performance underlying the terminations.**

**ANSWER:**

The Board denies the allegations in Paragraph 166 of the Complaint, including that Plaintiffs were

"terminated," that they were unable to challenge their "Unsatisfactory" ratings, and that a hearing was

required under the circumstances.

**167.    Mr. Sapia, Mr. Passmore, Ms. Hall and other tenured teachers were not offered any post- termination hearing to determine whether the termination under the auspices of a layoff was permissible or whether the layoffs were being used to mask individualized, merit-based actions.**

**ANSWER:**

The Board denies the allegations in Paragraph 167 of the Complaint, including that Plaintiffs were

"terminated," that they were unable to challenge their layoffs, and that a hearing was required under

the circumstances.

**168.    Without providing Mr. Sapia, Mr. Passmore, Ms. Hall and other tenured teachers any opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment and in violation of 42 U.S.C. §1983, the Board and its officers have caused a disguised for-cause dismissal without conducting any formal hearings as required by State Law.**

**ANSWER:**

The Board denies the allegations in Paragraph 168 of the Complaint, including that Plaintiffs were

unable to challenge their layoffs, and that a hearing was required under the circumstances.

**169.    By such acts denying any notice and opportunity to be heard as to the job performance, shortcomings and deficiencies, of various CTU members to be terminated and by other acts denying due process in the deprivation of property rights created pursuant to contract and the Illinois School Code, and in violation of 42 U.S.C. §1983, the same Board officers have denied and will continue to deny the constitutional rights of various CTU members under the Due Process Clause of the Fourteenth Amendment.**

**ANSWER:**

The Board denies the allegations in Paragraph 169 of the Complaint, including that Plaintiffs were

"terminated," that they were unable to challenge their ratings and layoffs, that Plaintiffs were denied

due process or deprived of any property rights, that they had any property rights under the

circumstances, and that the Board has acted unlawfully.

**WHEREFORE, plaintiffs pray this Court to [sic]:**

**A.    Declare that in violation of 42 U.S.C. §1983 and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, defendant has denied Mr. Sapia, Mr. Passmore, and Ms. Hall their constitutional rights to notice and a pre-termination hearing to challenge the underlying allegation of poor performance.**
**B.    Order defendant to make Mr. Sapia, Mr. Passmore, and Ms. Hall whole, including reinstatement, back pay and lost benefits.**
**C.    Grant Plaintiffs their legal fees and costs under 42 U.S.C. §1988 and such other relief as may be required.**

**ANSWER:**

The Board denies the allegations in this Paragraph of the Complaint, including that Plaintiffs were

"terminated," and that they were unable to challenge their ratings and layoffs.  The Board denies it

violated the law with respect to Plaintiffs and denies Plaintiffs are entitled to the requested relief or to

any relief whatsoever.

**Count II (Section 1983: Deprivation of Due Process Post-Termination Rights of Teachers)**

**170.    Plaintiffs incorporate Paragraphs 1 through 164 (sic) as if fully set forth herein.**

**ANSWER:**

The Board does not believe it is required to admit or deny any of Plaintiffs' "shotgun pleadings," which have been described in this District as an abuse of Rule 10(b). If the Court believes otherwise, the Board respectfully requests an opportunity to amend its Answer.

**171.    Mr. Sapia, Mr. Passmore, Ms. Hall were employed in contractual continued service pursuant to the Illinois School Code and designated a tenured teacher by the CBA.**

**ANSWER:**

The Board denies the allegation in Paragraph 171 of the Complaint that Plaintiffs were "employed in contractual continued service," and that the Board acted unlawfully toward Plaintiffs.  The Board admits the allegation in that Paragraph that Plaintiffs were tenured teachers under the applicable CBA at the time of their layoffs.

**172.    Mr. Sapia, Mr. Passmore, Ms. Hall were terminated without having an opportunity to complete the statutorily mandated remediation period.**

**ANSWER:**

The Board denies the allegations in Paragraph 172 of the Complaint, including that Plaintiffs were "terminated," and that remediation was "statutorily mandated" for them under the circumstances.

**173.    Mr. Sapia, Mr. Passmore, Ms. Hall were terminated without being notified, either orally or in writing, of the termination on the basis of their performance.**

**ANSWER:**

The Board denies the allegations in Paragraph 173 of the Complaint, including that Plaintiffs were "terminated," and that Plaintiffs did not receive notice of their layoffs.

**174.    Mr. Sapia, Mr. Passmore, Ms. Hall were terminated without being afforded an opportunity to participate in a post-termination hearing of any kind to challenge the allegations of poor performance underlying the terminations.**

**ANSWER:**

The Board denies the allegation in Paragraph 174 of the Complaint, including that Plaintiffs were "terminated," that Plaintiffs were entitled to a "post-termination hearing," and that Plaintiffs did not

have an opportunity to challenge their ratings or layoffs.

**175.    Without providing Mr. Sapia, Mr. Passmore, Ms. Hall with any opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment and in violation of 42 U.S.C. §1983, defendant has and will continue to cause disguised for-cause dismissals without conducting any formal hearings as required by State Law and the CBA.**

<u>**ANSWER:**</u>

The Board denies the allegations in Paragraph 175 of the Complaint, including that Plaintiffs were

entitled to additional process, that Plaintiffs did not have an opportunity to challenge their ratings or

layoffs, and that the Board has acted unlawfully in any respect.

**176.    By such acts denying any notice and opportunity to be heard as to the job performance, shortcomings and deficiencies, Mr. Sapia, Mr. Passmore, and Ms. Hall, and by other acts denying due process in the deprivation of property rights created pursuant to contract and the Illinois School Code, and in violation of 42 U.S.C. §1983, the same Board officers have denied and will continue to deny his [sic] constitutional rights under the Due Process Clause of the Fourteenth Amendment.**

<u>**ANSWER:**</u>

The Board denies the allegations in Paragraph 176 of the Complaint, including that Plaintiffs were

entitled to additional process, that they enjoyed any legally protected property rights under the

circumstances, that Plaintiffs did not have an opportunity to challenge their ratings or layoffs, and that

the Board has acted unlawfully in any respect.

**WHEREFORE, plaintiffs pray this Court to [sic]:**

**A.    Declare that in violation of 42 U.S.C. §1983 and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, defendant has denied Mr. Sapia, Mr. Passmore, Ms. Hall their constitutional rights to notice and a post-termination hearing to challenge the underlying allegation of poor performance.**
**B.    Order defendant to make Mr. Sapia, Mr. Passmore, and Ms. Hall whole, including reinstatement, back pay and lost benefits.**
**C.    Grant plaintiffs their legal fees and costs under 42 U.S.C. §1988 and such other legal and such other relief as may be required.**

<u>**ANSWER:**</u>

The Board denies the allegations in this Paragraph of the Complaint, including that Plaintiffs were

"terminated," and that they were unable to challenge their ratings and layoffs.  The Board denies it

violated the law with respect to Plaintiffs and denies Plaintiffs are entitled to the requested relief or to

any relief whatsoever.

Count III (Section 1983: Deprivation of Due Process – Reputation)

**177.     Plaintiffs incorporate Paragraphs 1 through 163 as if fully set forth herein.**

<u>**ANSWER:**</u>

The Board does not believe it is required to admit or deny any of Plaintiffs' "shotgun pleadings,"

which have been described in this District as an abuse of Rule 10(b). If the Court believes otherwise,

the Board respectfully requests an opportunity to amend its Answer.

**178.     From the date of their layoffs/terminations and continuing through the present Mr. Sapia, Mr. Passmore and Ms. Hall have been hindered in their attempt to work in their chosen profession as a result of being terminated on the basis of alleged performance and the unsatisfactory rating.**

<u>**ANSWER**</u>:

The Board denies the allegations in Paragraph 178 of the Complaint, including that Plaintiffs were

terminated and that their economic-based layoffs were based solely on performance. The Board lacks

information or knowledge sufficient to admit or deny the remaining allegations in that Paragraph.

**179.     Plaintiffs have found it more difficult to find teaching position within CPS as a result of their alleged poor performance.**

<u>**ANSWER**</u>:

The Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations

in Paragraph 179 of the Complaint.

**180.     Defendant published the 2010 Board Resolution and 2011 Layoff policy making it known to the public that teachers who have been issued an E-3 Notice or Unsatisfactory Rating will be terminated before all other qualified teachers, regardless of seniority, experience, or past ratings.**

<u>**ANSWER**</u>:

The Board admits the allegations in Paragraph 180 of the Complaint that the 2010 Board Resolution

and 2011 layoff policy are public documents and that they provide for layoff of teachers with

"Unsatisfactory" ratings before all other teachers other than those who lack the required certifications. The Board denies the remaining allegations in that Paragraph.

**181.     Mr. Sapia, Mr. Passmore, Ms. Hall were denied appointment to a teaching position by CPS as a result of their termination on the basis of their alleged poor performance.**

<u>**ANSWER**</u>:

The Board denies the allegations in Paragraph 181 of the Complaint, including that Plaintiffs were "terminated," that their economic-based layoffs were based solely on performance, and that they were denied subsequent appointments as a result of their layoffs.

**WHEREFORE, plaintiffs pray this Court to [sic]:**
**A. Declare that in violation of 42 U.S.C. §1983 and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, defendant has, through the publication of the 2010 Board Resolution and 2011 Layoff Policy, created a stigma surrounding teachers laid off pursuant to these orders, including plaintiffs whose most recent ratings and evaluations allege poor performance, despite offering no opportunity to complete remediation or challenge the allegations.**
**B. Order defendant to make Mr. Sapia, Mr. Passmore, and Ms. Hall whole, including reinstatement, back pay and lost benefits.**
**C. Grant plaintiff his legal fees and costs under 42U.S.C.§1988 and such other legal and such other relief as may be required.**

<u>**ANSWER:**</u>

The Board denies the allegations in this Paragraph of the Complaint, including that Plaintiffs were stigmatized and that they were unable to challenge their ratings.  The Board denies it violated the law with respect to Plaintiffs and denies Plaintiffs are entitled to the requested relief or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1.     Plaintiffs fail to state a claim upon which relief can be granted.

2.      Plaintiffs' due process claims are barred to the extent they did not satisfy the applicable statute of limitations; specifically, any claims arising from layoffs of unsatisfactory teachers that occurred prior to October 10, 2012, are barred by the two-year statute of limitations applicable to due process claims.

3.      On July 1, 2012, the Board and the CTU adopted new process and procedures for grievance, appeal and review of "Unsatisfactory" ratings, and providing new process and procedures for review and redress of challenged ratings. To the extent Plaintiffs failed to utilize such procedures and/or successfully challenged their ratings, Plaintiffs' claims are barred.

4.      Plaintiffs have failed to mitigate their alleged damages.

5.      Any injury caused to Plaintiffs was due in whole or in part to Plaintiffs' own actions, inaction and/or negligence, in that the teaching performance of Plaintiffs Sapia, Passmore and Hall was unsatisfactory; and Plaintiffs Sapia, Passmore and Hall failed to timely pursue other positions that were available to them after layoff.

6.      To the extent plaintiffs' claims assert their ratings should not have been taken into account in their economic layoffs, such claims are barred by legal impossibility.

7.      To the extent Plaintiffs' claims were or should have been raised in prior litigation, including in Northern District of Illinois Case No. 10-CV-4852, such claims are barred by the doctrine of res judicata.

8.      To the extent Plaintiffs' claims were or should have been raised in prior litigation, including in Northern District of Illinois Case No. 10-CV-4852, such claims are barred by the doctrine of issue preclusion.

9.      Any teacher who failed to pursue and exhaust available administrative remedies, including the grievance and rating appeals processes, has waived judicial review.

**JURY DEMAND**

The Board of Education respectfully demands trial by jury.

Respectfully submitted,

**BOARD OF EDUCATION OF THE CITY OF CHICAGO**

JOE MORIARTY, GENERAL COUNSEL

*By /s*_____
*Sabrina Haake*

Sabrina Haake, Counsel to Defendant Board of
Education
Law Office of Sabrina Haake
444 N. Michigan Avenue Suite 1200
Chicago Illinois 60611
312-927-1489
HaakeLawGroup@gmail.com

## CERTIFICATE OF SERVICE

I certify that I sent this document to all parties of record via the Court's electronic notification system on August 15, 2018.

s/ Sabrina Haake
Sabrina Haake
Law Office of Sabrina Haake
444 N. Michigan Ave. Suite 1200
Chicago, Illinois 60611
312-927-1489
HaakeLawGroup@gmail.com