**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENNETT SAPIA, JOEL PASSMORE and ANNETTE HALL, | ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 7946 |
| v. | ) ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

The defendant, Board of Education of the City of Chicago, has moved for a protective order [Dkt. #209] barring plaintiffs' counsel from asserting the attorney-client privilege to prevent discovery of documents and to limit testimony from a witness, Adelfio Garcia. The most troubling aspect of this current discovery dispute is that it is over an amendment to a Declaration that seemingly takes the assertions in the Declaration out of the relevant time frame of the events in this case. That amended Declaration was already the subject of a motion to strike – which was denied – and a motion to substitute – which was granted. Yet, here we are.

Mr. Garcia is a special education teacher with the Chicago Public Schools and was formerly a principal from 2006 through 2015, when he resigned his position as principal in lieu of a "warning resolution antecedent to his termination." Also involved in that dispute were "belated" allegations from Mr. Garcia that he had been sexually harassed by the network chief, Luis Soria. On July 6, 2018, he provided a declaration for plaintiff and counsel in which he stated that Mr. Soria told him to use an unsatisfactory rating to get rid of teachers he didn't like and that that was "the way it is

done at CPS." [Dkt. # 209-1]. The Declaration was not filed until 11 days later. But, as has been the case throughout the history of discovery in this litigation, there was a problem. Defendants accused plaintiffs' counsel of three overlapping forms of misconduct: 1) soliciting Mr. Garcia which was claimed to be unethical; 2) unethical conduct; and 3) witness tampering. In light of these allegations, I allowed a limited deposition of Mr. Garcia. [Dkt. #217]. I also told counsel, as I do in every case, to call chambers if either side experienced problems. That oft-repeated injunction appeared, for example, in the Order of 7/24/18. [Dkt. #217].

Unfortunately, the lawyers in this case never called. As it turned out, not much of consequence was revealed, and the deposition was little more than another opportunity for counsel to attack each other – proving again that "protracted pretrial discovery is indeed the bane of modern federal litigation. *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000)(Posner, J.). *See also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986).[1] Plaintiffs' counsel began the deposition by asking whether Mr. Garcia understood that making a false statement under oath

---

[1] The general problems of discovery excesses and abuses are not new. *See Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 559 (2007); *Intel Corp. V. Advanced Micro Devices, Inc.*, 542 U.S. 241, 268 (2004)(Scalia, J., concurring); *Carvalho v. Reid*, 182 F.3d 898 (2nd Cir. 1999)("The discovery phase of the lawsuit was riddled with problems.")' *Northlake Mktg. & Supply, Inc. V. Glaverbel, S.A.,* 1996 WL 674019 at *2 (N.D.Ill. 1996)("If Northlake does not obtain all of the discovery that it seeks, the trial will proceed in the same manner that lawsuits were conducted during the centuries before the current excesses in discovery became the fashion."); *Wartluft v. Milton Hershey Sch. & Sch. Tr.*, 2017 WL 4698102 at *1 (M.D.Pa. 2017); *Elliott v. Mission Trust Services, LLC*, 2015 WL 1567901 (N.D.Ill. 2015). The problems have been the object of scholarly concern for years. *See, e.g.,* The Brookings Institution, Justice For All: Reducing Costs and Delay in Civil Litigation, Report of a Task Force 6-7 (1989)(lawyers surveyed estimated that 60% of litigation costs in a typical federal case are attributable to discovery and agreed that high litigation costs are often attributable to abuse of the discovery process); Federal Judicial Center, T. Willging, J. Shapard, D. Stienstra, & D. Miletich, Discovery and Disclosure Practice Problems, and Proposals for Change 1-2, 4, 8, 14-16 (Tables 3-5)(1997); William W. Schwarzer, *The Federal Rules, the Adversary Process, and Discovery Reform*, 50 U.Pitt.L.Rev. 703, 704, 705, 715 (1989); Wayne Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change*, 31 Vand.L.Rev. 1295-96, 1304, 1310 (1987); John Grady, *Trial Lawyers, Litigators and Clients' Costs*, 4 LITIGATION 5 (Spring 1978).

constituted perjury. [Dkt. #248-2 at 9]. That "question," *in the setting of this case*, wasn't necessary or proper.² It wasn't a "question" at all; it foreshadowed the conflict between counsel that was to come.

Plaintiffs' counsel then improperly objected a minute or so later when defense counsel asked if Mr. Garcia brought any documents with him in response to the subpoena. [Dkt. #248-2, at 10]. Defense counsel next asked to see Mr. Garcia's phone. [Dkt. #248-2, at 12]. The deposition then broke down for a while over whether defense counsel could ask whether plaintiffs' counsel had sent Mr. Garcia any texts. The fact of INSERT has not protected Presumably, this was designed as a necessary predicate to determining whether evidence of possible solicitation by counsel might exist. Plaintiffs' counsel blocked that line of questioning, first by saying it was beyond the scope of the deposition – it was not – and then by improperly asserting the attorney-client privilege. [Dkt. #248, at 12-16].

Things calmed down for a brief period until defense counsel brought up – and out – the settlement agreement Mr. Garcia signed in the wake of his earlier dispute with the Board of Education. [Dkt. #248-2, at 20]. Defense counsel then tried to ask just when Mr. Garcia had been under Mr. Soria's supervision; plaintiffs' counsel objected repeatedly that this was beyond the scope

---

² The "question" appears in depositions. *See, e.g., Allstate Ins. Co. V. Plambeck*, 2012 WL 1597308 at *3 (E.D.La., 2012). When asked at the start of a deposition it is claimed to be a device designed to cause the witness to focus on the obligation to be truthful. But in reality, it is also a device used to cause apprehension and fear. It certainly is not a necessary prerequisite to appropriate action by the court should the witness lie. *Freddie v. Marten Transport, Ltd*, 428 Fed.Appx. 801, 804 (10th Cir. 2011)(affirming absent advance warning where the plaintiff committed perjury during a deposition); *Garcia v. Berkshire Life Ins. Co. Of America*, 569 F.3d 1174, 1180 (10th Cir. 2009)("Although Ms. Garcia did not receive an explicit warning that dismisal would be a likely sanction for fabricating evidence, this is not a prerequisite to the iposition o fdismissal sanctions."); *Chavez v. City of Albuquerque*, 402 F.3d 1039 (10th Cir. 2005); *Schroeder v. Sw. Airlines*, 129 Fed.appx. 481, 485 (10th cir. 2005); *Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995)(affirming dismissal absent advance warning where the plaintiff perjured herself).

of the deposition. [Dkt. #248-2, at 22-24]. No one called chambers, and the objection was improper. The whole thing broke down and the attorneys went off the record to argue just twenty minutes into the proceedings. [Dkt. #248-2, at 26-28]. From there, things continued in the same vein. There were questions about Mr. Garcia's laptops and objections. [Dkt. #248-2, at 30]. There were questions about Mr. Garcia's computers and objections. [Dkt. #248-2, at 31]. No one called the court as they were instructed to do. *See, e.g,* Dkt. #217.

Finally, the deposition got around to when Mr. Garcia met plaintiffs' counsel, which was in January 2017, when he emailed her some documents relating to his dispute with mr. Soria. [Dkt. #248-2, at 33-34]. Later, Mr. Garcia contradicted himself – confusingly – and said he "did not produce any documents for [plaintiffs' counsel],... did not e-mail any documents to [plaintiffs' counsel],... had no understanding what the documents were for." [Dkt. #248-2, at 45-46]. So he didn't send any documents but, at the same time, he didn't know what the documents were for.

Mr. Garcia wanted to talk to her about his difficulties with Mr. Soria, but didn't seek legal advice at that time. His case was over. [Dkt. #248-2, at 40]. Plaintiffs' counsel, for her part, was interested in the Board's disciplinary policies. [Dkt. #248-2, at 44-45]. When she asked him if he would provide a witness statement about the "unsatisfactory rating policy" in the instant case, he agreed to if she would represent him. As he testified at a limited deposition on this matter, plaintiffs' counsel asked him for a statement, and he asked her firm "to represent him." [Dkt. #248-2, at 62-64]. He said he was afraid of retaliation and if he was going to provide a statement, he would need legal representation. [Dkt. #248-2, at 48-49, 61]. He claimed he felt retaliated against just by being deposed [Dkt. #248-2, at 50], although that's generally (if not invariably) part and parcel of providing a sworn Declaration, *see, e.g., Tellabs Operations, Inc. V. Fujitsu Ltd.*, 283 F.R.D. 374,

4

379 (N.D.Ill. 2012), and Mr. Garcia knew that going in, or at least he was charged with that knowledge. And the lawyers certainly knew it, or should have. [Dkt. #248-2, at 52]. He knew his statement would be used to help the teacher who was being dismissed. [Dkt. #248-2, at 62].

Further difficulties arose when defense counsel began to ask about Mr. Garcia writing to plaintiffs' counsel to accept her legal representation in July 2018. Plaintiffs' counsel argued incorrectly that the timing was privileged and instructed Mr. Garcia not to answer. Another argument ensued. [Dkt. #248-2, at 65-72]. Of course, no one called the court. Defense counsel tried to find out about the process of putting together Mr. Garcia's Declaration and asked if plaintiffs' counsel sent him a draft Declaration for his signature. Mr. Garcia first said, no. Then he said, "[i]f she did, it would be a communication between she [sic] and I [sic]." [Dkt. #248-2, at 72]. Finally, after denying that she did, he claimed that she did, "approximately after July 5th." [Dkt. #248-2, at 72].

But that Declaration was amended before the end of that month. When defense counsel asked how many conversations Mr. Garcia had with plaintiffs' counsel between the original and the amended Declaration, plaintiffs' counsel again objected. [Dkt. #248-2, at 79]. Defense counsel quite rightly pointed out that she had not asked about the content of the conversations, but plaintiffs' counsel oddly, but predictably, switched grounds, saying "[i]t doesn't matter" because it was outside the scope of the deposition. [Dkt. #248-2, at 79]. She characterized that as a violation of the July 24th court Order. [Dkt. #248-2, at 81]. Thereafter, her objections, near constant, turned to arguing that anything that happened after the formation of the claimed attorney-client relationship was privileged. [Dkt. #248-2, at 82-83, 87]. Of course that wasn't accurate.[3]

---

[3] Merely because a communication passes from lawyer to client or *vis-a-versa* does not make the fact of its communication privileged. Indeed, that fact does not even make an otherwise non-privileged
(continued...)

5

At that point, defense counsel wanted to stop the deposition because she believed she had proved that Mr. Garcia and plaintiffs' counsel had never formed an attorney-client relationship. [Dkt. #248-2, at 91]. She then wanted to call me about it but plaintiffs' counsel astonishingly refused to participate in the phone call, despite my prior urgings to counsel to call if they had concerns about any issue that arose during the depositions. Plaintiffs' counsel insisted the court wouldn't be deciding the issue in a phone call. [Dkt. #248-2, at 91]. But that self-serving prediction did not justify the refusal even to place a phone call to the court to discuss the issue – a call invited and urged by the court Order.

Based on the deposition testimony, an attorney-client relationship existed and there was no solicitation on plaintiffs' counsel's part. Mr. Garcia had had run-ins with the Board before, and while he might have had thin skin with regard to what constitutes retaliation, he is entitled, at least as a general matter, to representation of his choosing. And given the vitriol on display at his limited deposition, having representation was a good idea. But that does not mean that there are not concerns about plaintiffs' counsel's representation of both witness and plaintiff. There most assuredly are. For one, there is the change in Mr. Garcia's story, under plaintiffs' counsel's supervision, of course – from the July 6th version to the July 26th version. In the original, Mr. Garcia swore that Mr. Soria instructed him about using the unsatisfactory rating to get rid of teachers in 2011 or early 2012. [Dkt.

---

³(...continued)
communication privileged. Whether the privilege exists is a fact-intensive inquiry, *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000), and cannot be solved by simply looking to the identity of the sender or recipient of a communication. *In re: Subpoena Upon Najame Law PA*, 2016 WL 3125055 at *3 (N.D.Ill. 2016). As is repeatedly said, the lawyer-client relationship, itself, "does not create 'a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct of indirect, upon the relationship of the attorney with his client.'" *In re Walsh*, 623 F.2d 489, 494 (7th Cir. 1980). *See also Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003); *Motorola Sols., Inc. V. Hytera Commc'ns Corp.*, 2018 WL 1804350 at *4 (N.D.Ill. 2018).

#206-9]. Three weeks later, his story was that this actually began 'in about 2014." [Dkt. #249-1]. But the plaintiffs' layoffs all were completed before that: Sapia in 2012-13, Passmore in 2012-13, Hall in 2012-13. Yet, plaintiff employed Mr. Garcia's earlier, Declaration to obtain from Judge Coleman permission for a fourth attempt at pleading a case. [Dkt. #206]. That Third Amended Complaint was filed on July 20th with the original Declaration attached. [Dkt. #212].[4]

Defendants raised their solicitation and tampering concerns before me on the 24th. Mr. Garcia changed his story on the 26th. Of course, attorneys routinely draft statements for witnesses. And such statements, if unsupported by any evidence, are of limited real value as they tend to be (understandably) partisan.[5] *See, e.g., Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003); *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000); *Jones v. Jones*, 217 F.2d 239, 242 (7th Cir. 1954); *FTC v. Advocate Health Care Network*, 162 F.Supp.3d 666 (N.D.Ill. 2016)(Statements by lawyer in affidavit ultimately shown to be untrue). But all of this will generally be beyond the scope of a discovery decision, and it is a matter for a motion from defendants before judge Wood,

---

[4] Three months later, once Mr. Garcia had testified at his deposition, the defendant filed a motion to strike the original Declaration and all allegations supported by it given that the dates in that document were wrong. [Dkt. #234, at 6-8]. The defendant also asked Judge Wood to bar the plaintiffs from filing an amended Declaration and testifying in this case, although the reasons for that are not clear. [Dkt. #234, at 6-9]. In response, plaintiff sought leave from Judge Wood to file the amended Declaration changing the date. [Dkt. #237]. Judge Wood denied the defendant's motion to strike without prejudice and granted plaintiffs' motion to substitute the amended Declaration. [Dkt. #244]. So, it would seem, the amended Declaration is now part of the record in support of the Third Amended Complaint even though the time frame in that Declaration is after the events alleged in the Third Amended Complaint.

[5] *See, e.g., Philips medical Systems Intern. B.V. v. Bruetman*, 8 F.3d 600, 606 (7th Cir. 1993)(Posner, J.)(Consistent with the role of an advocate in our adversary system, it is assumed that counsel "is supposed to give the evidence a partisan slant."); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1148 (7th Cir. 1993); *Smith v. Robbins*, 528 U.S. 259, 293 (2000)(Souter, J., dissenting)("a partisan scrutiny of the record and assessment of potential issues, goes to the irreducible core of the lawyer's obligation to a litigant in an adversary system...."); *Sommerfield v. City of Chicago*, 613 F.Supp.2d 1004, 1007 (N.D.Ill. 2009). But there are limits to partisanship.

or for argument at trial after the jury hears the relevant evidence.

Still, it cannot be said, certainly not without more factual development from defendants, that the simultaneous representation of a party and a non-party witness is prohibited. *See, e.g., Adkisson v. Jacobs Eng'g Grp., Inc.*, 2016 WL 6534273 at *4 (E.D.Tenn. 2016)("...representing nonparty witnesses in such circumstances is 'ethically permitted... subject to [certain] limitations,...."); *Mid-State Aftermarket Body Parts, Inc. V. MQVP, Inc.*, 2009 WL 1211440 at *3 (E.D. Ark. 2009)(refusing to disqualify attorney where there was no evidence of attorney influencing witness to testify untruthfully or to withhold evidence); *ChemFree Corp. V. J. Walter, Inc.*, 2008 WL 5234252 at *2 (N.D.Ga. 2008)("It is not facially improper to simultaneously represent a party in a case and also to represent a non-adversarial, fact witness in that case."); *Buillen v. City of Chicago*, 956 F.Supp. 1416, 1426-27 (N.D.Ill. 1997)(allowing the city's attorneys also to represent nonparty paramedic witnesses so long as the attorneys fully informed the clients of the pros and cons of joint representation, and holding that there was no violation of Model Rule 1.7 because no actual conflict had materialized); *Bonner v. Guccione*, 1997 WL 91070 at *2 (S.D.N.Y. 1997)(holding that "plaintiff has been unable to cite any civil case holding it to be improper for an attorney to represent both a defendant and its non-party employees"); *Ritchie v. Gano*, 2008 WL 4178152 at *10 (S.D.N.Y. 2008)(refusing to endorse a blanket rule which would preclude conflicts when an attorney represents both a party and a non-party in the same litigation but finding no conflict based on the facts of the case). Cases on this subject are decided on facts and, as defendants conceded at the hearing on this matter, they don't have any facts warranting prohibition of the dual representation

in this case.[6] [Dkt. #248-1, at 10-11].

Whether the practice in any given case is wise is, however, another matter. "No matter how pure a lawyer's motives might be, whenever a lawyer for a party solicits a nonparty witness to be his client, the appearance will be given, whether justified or not, that the lawyer is trying to influence the witness's testimony." *Mid-State*, 2009 WL 1211440, at *5. The situation, rightfully so, will bring extra scrutiny to any claims of attorney-client privilege plaintiffs' counsel might assert as to Mr. Garcia. *See Mid-State*, 2009 WL 1211440, at *5 ("If a lawyer for a party to a case could solicit nonparty witnesses to be his clients, he could effectively prohibit opposing counsel from communicating with witnesses except through him, and if that were permitted litigation could turn into an unseemly scramble by lawyers for the parties to solicit nonparty witnesses as their clients."). This is especially the case here, where plaintiffs' counsel has taken the view that all communications between her and Mr. Garcia are beyond discovery. Of course, they are not, as the very definition of the privilege demonstrates.

Contrary to defendants' apparent stance in its motion, the privilege attaches to any request to a lawyer or the giving of any legal advice by a lawyer to a client, not just legal advice for litigation. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621 (7th Cir. 2010)("Of course, the attorney-client privilege protects not only the attorney-client relationship in imminent or ongoing litigation but also the broader attorney-client relationship outside the litigation context."). As for assertion of the attorney client privilege, that matter requires the proponent to demonstrate the applicability of the privilege on a document-by-document, item-by-item basis. That is fundamental.

---

[6] This is not to say that dual representation is necessarily a wise tactic or to conclude *a priori* that a jury would not consider the dual representation in assessing the credibility of the witness who is being represented by the same lawyer as a party.

Both sides are on the wrong track here, as is clear from the defendants' motion and from plaintiffs' counsel's comments at Mr. Garcia's deposition. A party can't get a protective order barring another party from asserting the privilege in any instance anymore than a party can make a blanket claim of the privilege as to all communications and documents. The party seeking discovery who is thwarted by a claim of privilege must file a properly supported motion to compel, after a *good faith* Local Rule 37.2 conference. This is the required procedure, even though Local Rule 37.2 has not always been faithfully adhered to in this case.

It is also basic that the existence of an attorney-client relationship does not make all communications between client and attorney privileged. *See* cases cited *supra*. So, plaintiffs' counsel was wrong at Mr. Garcia's deposition when she claimed the privilege applied to whether she responded to Mr. Garcia's request for legal representation. [Dkt. #248-2, at 68-69]. "The privilege does not foreclose inquiry into the fact of representation itself or the dates upon which services are rendered as long as the substance of the attorney-client relationship is shielded from disclosure." *Condon v. Petacque*, 90 F.R.D. 53, 54 (N.D.Ill. 1981). *See also United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013)(intake form and fee agreement not privileged). And, it would not necessarily apply to all communications after Mr. Garcia hired counsel. [Dkt. #248-2, at 69-72, 82-83]. "[T]he attorney-client relationship does not create a cloak of protection draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *In re Subpoenaed Grand Jury Witness*, 171 F.3d 511, 513 (7th Cir. 1999)(quotations omitted). Again, claims of privilege must be made on a communication-by-communication basis and the party claiming privilege must establish all elements as to each communication. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 2000). "The privilege only

protects disclosure of communications; it does not protect disclosure of the underlying facts by those who also communication with the attorney...." *Upjohn Co. v. United States*, 449 U.S. 383,395 (1981).

In the end, given the broad assertions made at the deposition, plaintiffs' counsel are reminded that;

> A witness is not the property of either party to a suit and simply because one party may have conferred with a witness and even paid him for his expert advice does not render him incompetent to testify for the other party. The attorney-client privilege protects only communications and is not a wholesale bar to a witness' [sic] accessibility, ...Because the privilege protects only the attorney-client communication itself, opposing counsel is free to question a member of the control group about the underlying facts which were communicated.

*Favala v. Cumberland Eng'g Co., a Div. Of John Brown, Inc.*, 17 F.3d 987, 990 (7th Cir. 1994)(citations and quotations omitted).

While the amended Declaration seems to have little to do with the Third Amended Complaint – whether it does or does not is a matter for Judge Wood and she has already allowed it, albeit without prejudice to further challenges – the parties have taken up this cause with all the vigor of a substantive issue. As I indicted in my original order, Mr. Garcia is now subject to deposition as to facts, which, as discussed above, are never protected by the attorney-client privilege. *See also Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*, 2015 WL 3561439 (N.D.Ill. 2015). And as this Order clearly indicates, there is no blanket attorney-client privilege protecting him from inquiry into those facts; plaintiffs' counsel will have to prove the privilege applies, element-by-element, piece of testimony-by-piece of testimony.

Presumably, all this consternation will somehow lead to the defendant filing another motion to strike the Declaration before Judge Wood. But Judge Wood already knew the Declaration was changed and that the change arguably put it outside the relevant time frame. Obviously, she had other cause beyond Mr. Garcia's snippet of testimony to allow plaintiffs' Third Amended Complaint to be filed. Before the parties attempt to spin themselves and the court off into a satellite discovery dispute over a peripheral matter – especially at this late date – they would do well to refocus themselves on the substance of this case. Mr. Garcia and his vacillating recollection of dates may not be worth the candle. In any event, "all 'good' things must come to an end," *United States v. Brown*, 209 F.3d 1020, 1022 (7th Cir. 2000) – including discovery. *Syntel Sterling Best Shores Mauritius Ltd v. TriZetto Group, Inc.*, _F.R.D._, 2018 WL 5729292 (S.D.N.Y. 2018). The time is almost at hand for the parties to turn to expert discovery and then pursue at trial their respective theories – unless, of course, the parties can persuade the district court that summary judgment should be appropriately entered in their favor.

The defendants' motion for protective order [Dkt. #209] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/11/19