# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BENNETT SAPIA, JOEL PASSMORE and ANNETTE HALL, | ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 7946 |
| v. | ) ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

The defendant has filed to a "Motion to Strike Plaintiffs' Rule 26(a)(2)(C) Disclosures and Bar Plaintiffs From Introducing Expert Testimony." [Dkt. #294]. The motion was prompted by plaintiffs' March 15th disclosure of what they termed "non-retained witnesses who are not required to provide a written report" under Fed.R.Civ.P. 26(a)(2). The four witnesses disclosed are Chicago Teachers Union Employees. Carol Caref would testify as to "the required process, metrics and components of the evaluation, remediation and due process systems for tenured teachers pre and post REACH including for SY 2011-12 and 2012-13, post SY 2013; CPS's layoff, ratings and rehire policies and practices; the use of 'Forced Rankings' and other evaluative-related processes and whether those processes conform to contractual or other requirements; and with respect to remedies for violations." Pavlyn Jankov would testify that "CPS had sufficient surplus to avoid Plaintiffs' layoffs and terminations; Plaintiffs' layoffs and terminations were not required or necessary due to alleged budgetary reasons; review of the deficit and surplus in FYs 2012 and 2013 demonstrates CPS had sufficient funds to increase and continue hiring and retain

positions and to avoid, inter alia, Plaintiffs' layoffs of at Dunbar and Kennedy." The disclosure provided no more information, no citation to evidence and no analysis or elaboration or explanation. In all contexts, naked conclusions are uninformative and thus unacceptable. *See HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 576 (1st Cir. 2014); *Vollmert v. Wisconsin Dept. Of Transp.*, 197 F.3d 293 (7th Cir. 1999).[1]

The disclosures state that damages witnesses, Lois Jones and Sandy McNamara, would testify respectively as to back pay and lost pension payments. No other information was included in the disclosures, making them essentially of no value as providers of information necessary for the defendant to be able to prepare either for depositions or trial. Like the purpose of all discovery, which is to aid in the quest for truth, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986); *Reid v. Silver*, 354 F.2d 600, 608 (7th Cir. 1965); *United States v. Meyer*, 398 F.2d 66, 71 (9th Cir. 1968); *Vnuk v. Berwick Hosp. Co.*, 2016 WL 907714, at *3 (M.D. Pa. 2016); *see also BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.,* 2018 WL 946396 (N.D. Ill. 2018)(and cases cited), the requirement that there be either an expert report or a required disclosure is to enable parties to adequately prepare for trial so that in the end truth may hopefully be achieved. That could not occur given the "disclosures" of the plaintiffs.

Plaintiffs claim that at a hearing before Judge Wood on March 5, 2019, defendant "agreed that damages expert testimony was appropriate." [Dkt. # 297, at 5]. Defendant certainly did not agree that a terse, uninformative disclosure was appropriate. [Dkt. #297-4, at 11]. Planning on filing for summary judgment on liability, the defendant then, immediately after that hearing, proposed deferring discovery on damages until after a ruling on that motion. [Dkt. #294, at 2; # 297, at 5].

---

[1] Even in the Social Security context, conclusions of an ALJ will not alone suffice to sustain a holding. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Joe R. v. Berryhill*, _F.3d_, 2019 WL 1413099, *2 (N.D.Ill. 2019).

Plaintiffs did not address deferment, but asked for a back pay stipulation. [Dkt. #294-1]. Then, on March 15th, plaintiffs served their disclosures.

Defendant challenged the plaintiffs' disclosures as inadequate in an email and phone call to plaintiffs' counsel on March 20th. Plaintiffs came back and asked for citations to authority supporting defendant's concerns, which defendant provided on March 21st. Plaintiffs spent five days mulling over the authority. One of plaintiffs' two attorneys informs us she had a serious illness at that time. Finally, defendant filed its instant motion on the 25th. Plaintiffs *then* tendered a stipulation to cooperate on damages and defer the two damages experts on March 29th. The defendant rejected it, but plaintiffs contend it renders the motion as to the damages experts moot. Clearly, without a stipulation from the defendant, it doesn't and, obviously, it ought to have been taken care of back when the defendants proposed it on March 6th, or at least prior to defendant having to file a motion seeking yet another court intervention in this lengthy discovery war. Still, it's not clear why the defendant rejected what it originally proposed; perhaps in a somewhat understandable fit of pique. Plaintiffs also tendered an amended disclosure on that day. It didn't add much to the original.

Federal Rules of Civil Procedure 26(a)(2) divides witnesses and required disclosures into two categories. Under Rule 26(a)(2)(B), disclosures of witnesses who were "retained or specially employed to provide expert testimony in the case" must be accompanied by a thorough written report. Other witness disclosures fall under Rule 26(a)(2)(C), and these need only include the subject matter of the witness's testimony and a summary of facts and opinions upon which they will testify. *See Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cir.2004) ("Only those witnesses 'retained or specially employed to provide expert testimony' must submit an expert report complying with Rule 26(a)(2)(B)."). But the distinction between the two types of witnesses – "already an employee" and "hired just for this case" – is not as facile as the plaintiffs' disclosures assumed.

The wording of Fed.R.Civ.P. 26(a)(2)(B) tracks that of Fed.R.Civ.P. 26(b)(4)(D), or *vice versa*, so analyses of cases considering that rule have some value here. The phrase "specially employed" means that the scope is broader than simply outside experts and includes experts already on staff, specially charged with rendering an opinion on a case. *See Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 385 (N.D. Ill. 2012). *See also In re Shell Oil Refinery,* 132 F.R.D. 437, 441–42 (E.D.La.1990) ("Which hat [employees/experts] wear depends on whether their knowledge was gained in the course of their special employment as members of the investigation team or in the course of their regular duties."); *Marine Petroleum Co. v. Champlin Petroleum Co.*, 641 F.2d 984, 993 (D.C.Cir.1979) ("The rule's tacit acknowledgment of the necessity of meticulous preparation has equal force whether the expert is one originally and exclusively retained for anticipated litigation or one whose employment responsibilities are expanded to encompass consultation and advice in expectation of litigation."); *Seiffer v. Topsy's Intern., Inc.*, 69 F.R.D. 69, 72 (D.Kan.1975) (where partner in defendant accounting firm was requested by law firm to assist in possible litigation arising out of accounting firm's audits by reviewing the work, had not been involved in the audits, and reported his findings in writing to the law firm, he was not merely a "general employee"); *In re Sinking of Barge Ranger I Cas. Near Galveston, Tex. on May 10, 1979*, 92 F.R.D. 486, 489 n. 5 (S.D.Tex.1981) (following *Seiffer*).

The cases make clear that the requirement of a detailed report turns on how the witness is related to the lawsuit and how he or she gained the knowledge about which they will testify. For example, a treating physician is not specially retained, but if they are "offered to provide expert testimony as to the cause of the plaintiffs' injury, but [] did not make that determination in the course of providing treatment, [they] should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus required to submit an expert report in accordance with Rule

26(a)(2)." *Meyers v. National Railroad Passenger Corp.*, 619 F.3d 729, 734–35 (7th Cir.2010). The question is whether the witness forms the opinion in the normal course of his work or he was asked to form it in connection with specific litigation. *See Mlsna v. Union Pac. R.R. Co.*, 2019 WL 316743, at *2 (W.D. Wis. Jan. 24, 2019); *Smith v. Shicker*, 2018 WL 6067249, at *4 (N.D. Ill. Nov. 20, 2018); *S.E.C. & Exch. Comm'n v. Nutmeg Grp., LLC*, 2017 WL 4925503, at *5 (N.D. Ill. Oct. 31, 2017).

Here, plaintiffs claim that Ms. Caref and Mr. Jankov had "ground-level involvement [whatever that may mean] in the events giving rise to the litigation." [Dkt. # 297, at 9]. They state that "[Ms.] Caref, Director of Research for the CTU has participated in the drafting, negotiation, enforcement and/or interpretation of the teacher evaluation and due process provisions at issue in this case", while "[Mr.] Jankov, a research analyst with the CTU, prior to this case performed analysis on the CPS Budget, including the 2012- 13 layoffs." [Dkt. #297, at 9]. Further, plaintiffs maintain that their witnesses' knowledge is derived from their employment with the CTU and not from working on this case, saying that:

> Ms. Caref wrote and/or implemented the very performance and evaluation policies in issue and has been involved since 2010 on the ground level when CPS initially passed its illegal policy to terminate alleged unsatisfactory teachers under the guise of layoffs. Pavlyn Jankov works with and interprets CPS's budget as part of his job.

[Dkt. # 297, at 10].

As we intimated early on, even after amendment – and response brief – the information plaintiffs provide is vague and uninformative at best. So, with a little additional information from plaintiffs, it sounds like Ms. Caref wrote or at least contributed to the writing of the performance and evaluation policies at issue here, perhaps as part of collective bargaining give and take. And it also sounds as though she will be testifying as to an ultimate issue in the case under Fed.R.Evid. 704.

In other words, it is as if she drafted terms of a contract and wants to testify that those terms were breached. That's not involvement in the actual event at issue. It's difficult to see how that is "ground-level" involvement – a carefully chosen, but uninformative phrase in the context of this case – in the defendant's implementation of a policy under – or in violation of – those terms. She had to have been asked, *specially*, and later on, to compare the evaluations of the plaintiffs with the terms she helped draw up. She is formulating an opinion for the purpose of this litigation, in the aftermath of what happened, as opposed to having been involved on the "ground-level" – to use the plaintiffs' phrase – during the events.

The result is similar in regard to Mr. Jankov. Again, decision-making here is hamstrung by the vague information plaintiffs have purposefully provided. But, if interpreting CPS's budget is Mr. Jankov's job, determining whether the Board is playing fair with staffing decisions, to what end? Where else would such work come in handy than in disputes between the Union and CPS, which would be in arbitration or court? As such, Mr. Jankov certainly looks like an in-house expert who was either specially tasked to say the Board didn't play fair on this occasion or was regularly tasked to do so. In either case, he falls under Fed.R.Civ.P. 26(a)(2)(B).

So, the disclosures for those two witnesses are inadequate, and the question becomes, as Lenin asked, what is to be done? Plaintiffs chose to make their disclosures at the deadline, which is fine, but it isn't terribly wise, as it doesn't allow for controversies, mistakes, or foul-ups. *See Sapia v. Bd. of Educ. of City of Chicago*, 2019 WL 661468, at *1 (N.D. Ill. Feb. 19, 2019)("Leaving everything to the last minute while knowing about a deadline for seven months can and should have serious consequences."). Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence ... unless such failure was substantially justified or harmless."

Fed.R.Civ.P. 37(c)(1). *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 972 (7th Cir. 2015); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, No. 12 C 3233, 2016 WL 7034074, at *2 (N.D. Ill. Dec. 2, 2016). It is neither in this case.

Plaintiffs ask that the court exercise its discretion to find their failure here was substantially justified allow them seven days to file expert reports for the two witnesses. *See Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D. Ill. 2006)("Judges have vast discretion in supervising discovery and in declining to impose discovery sanctions and exclude evidence."). There is, after all, a viable dispute over whether the witnesses properly fall under 26(a)(2)(B) or 26(a)(2)(C), owing to the vaguery of the rule, and it is a close call. Accordingly, plaintiffs shall – as they offer – tender reports for Ms. Caref and Mr. Jankov in seven days. In preparing and submitting those reports, plaintiffs should be aware that, in terms of discretion flowing in their favor, they have now used up their get-out-of-jail-free card. The date for completion of deposition of plaintiffs' expert witnesses is extended to May 15. There will be no further extensions of the schedule set forth herein.

As for the damages witnesses, whose disclosures were also clearly inadequate, designation and reports will be deferred until after Judge Wood rules on summary judgment motions.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/10/19